

FILED & ENTERED

SEP 12 2013

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY gae          DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re | Case No. 2:13-bk-14135-RK |
| **ART AND ARCHITECTURE BOOKS OF THE 21ST CENTURY,** | Chapter 11 |
| Debtor. | |
| | **SEPARATE STATEMENT OF DECISION ON DEBTOR'S MOTION TO ASSUME MASTER LEASE ON PREMISES AT 5500 WILSHIRE BOULEVARD, LOS ANGELES, CALIFORNIA** |

  The contested matter of the motion of debtor to assume the Master Lease (NNN), 5500 Wilshire Blvd., Los Angeles  ("Lease" or "lease") on the premises located at 5500 Wilshire Boulevard, Los Angeles, California, was tried before the undersigned United States Bankruptcy Judge on August 19, 28, and 30, and September 4 and 10, 2013.  (A copy of the Lease was received into evidence as Trial Exhibit 1.)

  The court has jurisdiction over the motion under 28 U.S.C. § 1334.  The motion is a core proceeding under 28 U.S.C. §§ 157(a) and (b)(2)(A) and (M).  Venue is proper in this judicial district pursuant to 28 U.S.C. § 1409(a).

1     In this separate statement of decision, the court provides additional explanation of

2  its reasoning for its decision on the motion.  At the court's request, the parties separately

3  submitted proposed findings of fact and conclusions of law, which the court has

4  considered and adopted in part.  The court has separately issued findings of fact and

5  conclusions of law as required by Fed. R. Bankr. P. 7052, and this separate statement of

6  decision also sets forth additional findings of fact and conclusions of law.

7     By the motion, the debtor seeks to assume the lease.  Debtor as a debtor-in-

8  possession is permitted, with court approval, to "assume or reject any executory contract

9  or unexpired lease of the debtor" pursuant to 11 U.S.C. § 365(a); *see also, In re Windmill*

10 *Farms, Inc.,* 841 F.2d 1467, 1469 (9th Cir. 1988); 11 U.S.C. § 1107 (a debtor-in-

11 possession generally has the rights, powers, functions and duties of a trustee in a

12 Chapter 11 bankruptcy case).  Debtor contends that it may assume the Lease as an

13 executory contract pursuant to 11 U.S.C. § 365(c)(1) or (3).  However, debtor as a

14 debtor-in-possession may not assume an executory contract or unexpired lease if

15 applicable law excuses a party from accepting performance from the debtor and such

16 party does not consent to such assumption; or an unexpired nonresidential lease which

17 has been terminated under applicable nonbankruptcy law prior to the bankruptcy.  11

18 U.S.C. § 365(c)(1) and (3); *In re Windmill Farms, Inc.,* 841 F.2d at 1469.  The landlord

19 opposes the motion, contending that debtor cannot assume the lease because it was

20 terminated under applicable state law and therefore, non-assumable, and that

21 alternatively, debtor cannot assume the lease because it cannot provide adequate

22 assurance of future performance under the lease.

23    Thus, the two main issues in this contested matter of the motion to assume lease

24 are: (1) whether the lease was terminated; and (2) whether debtor can provide adequate

25 assurance of future performance.

26    Whether debtor may assume the lease depends on whether the lease was

27 previously terminated under applicable state law.  *In re Windmill Farms, Inc.,* 841 F.2d at

28 1469.  The landlord contends that pursuant to its statutory remedy of unlawful detainer

and its contractual remedy under the lease, the lease terminated under California law, the

law applicable to the lease, when it instituted unlawful detainer proceedings in the

Superior Court of California on December 20, 2012 after giving debtor a proper notice to

pay rent or quit on December 3 or 4, 2012 (the relevant date of the notice to pay rent or

quit is a hotly disputed legal issue).  Lease, §§ 22.1, 23.1 and 23.4; California Code of

Civil Procedure, §§ 1161 and 1161.1.  The landlord further contends that if the lease was

validly terminated, the debtor cannot obtain relief from forfeiture under California law

because it waived a right to obtain such relief in the lease, and alternatively, it does not

qualify for such relief if there was no waiver.  See California Code of Civil Procedure,

§ 1179.  Debtor contends that the lease was not terminated because no proper notice to

pay rent or quit was issued to support a valid lease termination when the unlawful

detainer proceedings were brought.  If the lease was validly terminated, debtor

alternatively contends that the waiver of any right to relief from forfeiture is unenforceable

as a matter of public policy and that it has demonstrated hardship to warrant relief from

forfeiture.

California Civil Code, § 1951.2(a) provides that "if [a lessee's or tenant's] right to

possession is terminated by the lessor because of a breach of the lease, the lease

terminates."  *See also, In re Windmill Farms, Inc.,* 841 F.2d at 1470; California Code of

Civil Procedure, §§ 1161 and 1161.1.  Under the subject lease agreement, to terminate

debtor's tenancy under the lease for nonpayment of rent, the landlord has both a

statutory remedy for unlawful detainer and a contractual remedy for termination pursuant

to the terms of the lease.  Lease, §§ 22.1, 23.1 and 23.4; California Code of Civil

Procedure, §§ 1161 and 1161.1; *see also, Schulman v. Vera,* 108 Cal.App.3d 552, 561-

564 (1980).

Under the statutory remedy of unlawful detainer in California Code of Civil

Procedure,  § 1161 or 1161.1, a landlord can terminate a commercial tenancy for

nonpayment of rent  by giving a proper three-day notice to pay rent or quit and instituting

a unlawful detainer action if the rent is not paid by the expiration of the notice period.

*See, In re Windmill Farms, Inc.,* 841 F.2d at 1470-1471.  A tenant is "guilty of unlawful detainer" when he continues in possession without the landlord's permission after default in the payment of rent and three days' notice has been served upon the tenant by the landlord.  California Code of Civil Procedure, § 1161(2).  As the Ninth Circuit observed in *Windmill Farms*, under the California unlawful detainer statutes, California Code of Civil Procedure, §§ 1161 and 1174, "upon the expiration of three days after the lessor has given the lessee the notice required by section 1161(2), if the lessee has failed to pay the rent in default, the lessor has terminated the lessee's right to possession."   841 F.2d at 1470-1471.  However, the statutory remedy of unlawful detainer requires strict compliance with its procedures because the proceedings are summary in nature, and substantial compliance is not sufficient.  *Kwok v. Bergren*, 130 Cal. App.3d 596, 599-600 (1982); *see also, Schulman v. Vera,* 108 Cal.App.3d at 563-564; 7 Miller and Starr, *California Real Estate,* § 19:214 (3rd ed. 2004 and 2012-2013 Supp.).  The basis for an unlawful detainer action "may be either breach of contract or tortious possession of property." 7 Miller and Starr, *California Real Estate,* § 19:214 at 664 and n. 10, *citing, Fragomeno v. Insurance Co. of the West,* 207 Cal.App.3d 822, 831 (1989), *disapproved on other grounds, Vanderberg v. Superior Court,* 21 Cal.4th 815 (1999).

The court determines that landlord's statutory "three-day notice" under California Code of Civil Procedure, § 1161(2), to pay rent or quit (a copy of the statutory notice to pay rent or quit, which was ten days rather than three days, was received into evidence as Exhibit 7; this notice will be referred to herein as the "statutory notice to pay rent or quit") was defective because it was issued or given before there was any default on the part of the debtor as the tenant of the lease, regardless of whether there was a so-called big "D" or little "d" default.   *See, Stoltenberg v. Harveston*, 1 Cal. 2d 264, 268 (1934).  The court does not draw any distinction between a big "D" default or a little "d" default because the parties negotiated terms as to what would constitute a default under the lease.  Lease, § 22.1.  The parties do not dispute that under the lease, monthly rent owed by the debtor as the tenant to the landlord is due on the first business day of the month.

1   Lease, §§ 5.1 and 31.9.  For the month of December 2012, this due date of rent under

2   these provisions for December 2012 was December 3, 2013.  *Id.*  The parties agree that

3   the first business day of December 2012 was Monday, December 3, 2012 and that the

4   rent due date under Lease, §§ 5.1 and 31.9, for December 2012 was that day.  There is

5   no dispute that the landlord's statutory notice to pay rent or quit incorrectly stated that the

6   due date was Saturday, December 1, 2012, which was not a business day.[1]  There is

7   also no dispute that the landlord's statutory notice to pay rent or quit was signed by the

8   landlord's agent, Bradley Van Auken, dated December 3, 2013, and that the notice was

9   actually issued on December 3, 2012.  There is no dispute that the landlord's statutory

10  notice to pay rent or quit was addressed to the debtor as tenant, and represented:

11  "TENANT has defaulted in the payment of rental charges due under the LEASE."  Trial

12  Exhibit 7.   Furthermore, there is no dispute the notice was sent out by the landlord from

13  its Ohio office on that day as evidenced by the Federal Express pickup of the notice at

14  7:32 p.m. Eastern Time on that day, and that the notice to pay rent or quit was delivered

15  by Federal Express to debtor on December 4, 2012.  There is no dispute that the debtor

16  did not pay the rent for December 2012 on December 3, 2012 or any time thereafter.

17        The parties dispute the legal effect of the landlord's notice to pay rent or quit.

18  Debtor argues that the landlord's notice to pay rent or quit was defective under either

19  meaning of little "d" default or big "D" Default ("default" meaning the failure by Debtor to

20  make any payment of rent by the nominal due date, December 3, 2012, and "Default"

21  meaning the failure by Debtor to make any payment of rent where such failure continues

22  for ten days after written notice from the landlord).  Lease, §§ 5.1, 22.1, 31.9; *see also,*

23  *Stoltenberg v. Harveston*, 1 Cal. 2d at 268 (describing a rent due date in a lease before

24  the date a default could be declared by the landlord as a "nominal due date"); *see also,*

25

26  [1] The landlord reasonably argues that the incorrect statement of the due date is not material, citing
    *Carrasco v. Tseheridis*, No. E052158, 2011 WL 6141042 (Cal. App. 4th Dist., Dec. 9, 2011), and the court
27  does not disagree.  Debtor conceded as much at closing argument.

28

1    *AERC Desmond Tower, LLC's Trial Brief in Support of its Objection to Motion to Assume*

2    *Master Lease ("Landlord's Trial Brief"),* filed on August 14, 2013, at 17-18 (setting forth

3    the landlord's little "d" default argument that it had the right to terminate the lease).   Thus,

4    debtor argues the notice was premature since it was issued on December 3, 2012, before

5    the rent was past due based on the due date under Lease, §§ 5.1 and 31.9, and before

6    there was any "Default" under Lease, § 22.1, and alternatively, the notice was premature

7    and issued before there was any "Default" after ten days written notice that rent payment

8    was not received when due pursuant to Lease, § 22.1(c).   *See Debtor's Trial Brief in*

9    *Support of Motion of Debtor to Assume Master Lease,* filed on August 14, 2013, at 16-23;

10   *accord, Trial Brief of Official Committee of Unsecured Creditors,* filed on August 14, 2013,

11   at 7-11.

12        The landlord argues that its statutory notice to pay rent or quit was effective as a

13   notice to quit under California Code of Civil Procedure, § 1161(2), and was not premature

14   because the notice was given by Federal Express delivery on debtor on December 4,

15   2012 pursuant to Lease, § 31.10, after the rent due date of December 3, 2012 under

16   Lease, §§ 5.1 and 31.9.   *See Landlord's Trial Brief* at 17-18.   The landlord alternatively

17   argues that it was permitted to give notice to quit within 10 days if rent was not paid at

18   any time permitted under the Lease, §22.1.   The landlord further argues that the statutory

19   notice to pay rent or quit was not premature because it was issued at the close of the

20   business day on the rent due date and it was physically impossible for the debtor to

21   tender timely payment of the rent, even if debtor had attempted to pay rent by the due

22   date of December 3, 2012, which it had not.

23        However, admittedly, the landlord put the notice to pay rent or quit in the Federal

24   Express pickup box at 6:30 p.m. Eastern Time on December 3, 2012, which was before

25   the close of the business day Pacific Time (i.e., 3:30 p.m.) where the property and debtor

26   are located.   Moreover, the landlord issued its statutory notice to pay rent or quit,

27   declaring debtor to be in default, on the rent due date under Lease, § 5.1 and 31.9, of

28   December 3, 2012, even before the rent was in default.   Although the landlord's statutory

1   notice to pay rent or quit represented that "TENANT has defaulted in the payment of

2   rental charges due under the LEASE," this representation was not true when the

3   landlord's agent, Mr. Van Auken, signed it and when the landlord sent it out by putting it

4   into the Federal Express pickup box on December 3, 2012.  Evidently, this was an

5   anticipatory declaration by the landlord of the tenant's breach or default under the lease.

6          Moreover, the declaration of default by the landlord in its statutory notice to pay

7   rent or quit dated December 3, 2012 was not factually or legally correct when it was

8   made, or even when it was delivered on the following day, December 4, 2012. [2] As held

9   by the California Supreme Court in *Stoltenberg v. Harveston*, if the parties contracted for

10  a notice period before a default may be declared, the landlord must wait until the end of

11  the notice period to issue the statutory notice to pay rent or quit and declare an intent to

12  terminate the lease.  1 Cal. 2d at 268. [3]  Here, under the facts of this case, the first day

13  debtor was under any legal obligation to pay the December rent was December 3, 2012,

14

15

---

16   [2]   As the court stated at trial, it may be bad public policy to enforce a statutory notice to pay rent or quit to
     effectuate a lease forfeiture which contains statements by the landlord's agent which were not true when
17   they were made.

18   [3]   In *Stoltenberg v. Harveston*, the California Supreme Court noted that the parties contracted in a written
     lease for the payment of rent monthly in advance on the 1st day of each month.  1 Cal.2d at 267-268.  The
19   California Supreme Court further noted that the lease provided, "No default shall be declared by reason of
     any provision herein for failure to pay rent upon the day herein specified until five days have elapsed after
20   the same may have become due and payable, and permission is hereby granted the lessees to pay the
     same at any time within the five days after the same may have become due and payable hereunder." *Id.*
21   The court observed that under the lease, no rent was paid by the tenants on May 1, 1932, the day when a
     monthly payment of rent became "due and payable," or at any time thereafter. *Id.*  The landlord served
22   written notice on the tenants to pay rent or quit on May 7, 1932. *Id.*  Although the tenants contended notice
     of default was given prematurely because May 1, 1932 was a Sunday and therefore a holiday, and the five-
23   day period mentioned in the lease did not begin to run until the next day, May 2, 1932, and did not end until
     May 7, 1932, the court held notice was not premature under the lease. *Id.* at 267-268.  The court
24   reasoned that based on the terms of the lease, the tenants were not in default if they paid rent within five
     days after the first day of the month, which was the nominal day of payment of rent, and thus the first day
25   tenants were under any legal obligation to pay the rent was May 6, 1932. *Id.*  Not having been paid on that
     day, the tenants were thus in default under the terms of the lease and the notice given by the landlord the
26   following day was not premature. *Id.*  The significance of *Stoltenberg,* for the purposes of this case, is that
     the California Supreme Court looked at the express terms of the lease to determine when there was a
27   default in the payment of rent in order for a default to be declared in a statutory notice to proceed with
     unlawful detainer. *Id.*

28

1  the nominal day of payment, and the landlord issued the notice before the close of the

2  business day on that date.  Lease, §§ 5.1 and 31.9.

3      The express terms of the Lease, § 22.1, defined what constituted a "Default" under

4  the Lease.  With respect to "Default" for nonpayment of rent, the Lease provided in

5  § 22.1:  "22.1.  Tenant's Default.  The occurrence of any one or more of the following

6  events shall constitute a "Default" under this Lease by Tenant: . . . c.  the failure by

7  Tenant to make any payment of Rent, Additional Rent or any other payment required to

8  be made by Tenant hereunder, where such failure continues for ten (10) days after

9  written notice hereof from the Landlord that such payment was not received when due."

10 Moreover, the parties agreed that the exclusive notice for "Default" for rent nonpayment

11 was under this provision, § 22.1:  "Any notice sent by Landlord pursuant to this Section

12 22.1 shall be in lieu of, and not in addition to, any notice required under any applicable

13 Law."  *Cf.,* Lease, § 23.4 (rights and remedies of the landlord are cumulative and may

14 include any one or all remedies which may be provided by law or in equity, whether or not

15 stated in the lease).

16     Under § 22.1 of the Lease,  a "Default" only occurs ten days after the landlord

17 gives written notice that rent was not received when due.  As "Default" is a defined term

18 agreed to by the parties as a matter of contract in § 22.1 of the Lease, the landlord's

19 statutory notice to pay rent or quit is premature because it was issued prior to December

20 13, 2012, or ten days after any written notice of nonpayment of rent pursuant to § 22.1.

21 *Stoltenberg v. Harveston*, 1 Cal. 2d at 268.  By contract, the landlord cannot declare a

22 default without a "Default."  *Id.; see also,* Lease, § 22.1(b); California Code of Civil

23 Procedure, § 1161(2).  There is no statutory unlawful detainer remedy without a proper

24 notice to pay rent or quit based upon an actual breach of the lease contract, which was

25 not the case when the notice to pay rent or quit was issued or delivered here.   There was

26 no breach of the lease contract for nonpayment of rent until there was a "Default" under

27 § 22.1 of the Lease as agreed to by the parties, so the landlord's statutory notice to pay

28 rent or quit was premature, whether issued on December 3, 2012 or delivered on

December 4, 2012, because there could have been no "Default" until December 14, 2012 ("Default" for rent nonpayment could only occur only "where such failure [to pay rent] continues for ten (10) days after written notice thereof from Landlord that such payment was not received when due").   At trial, Mr. Van Auken admitted that at the time the landlord served the notice to quit, there was no big "D" default under the lease, although he did not concede that the landlord commenced termination proceedings before a big "D" default.  *Trial Testimony of Bradley Van Auken,* August 30, 2013, at 4:02 p.m.  Thus, the landlord cannot rely upon the statutory notice to quit or pay rent dated December 3, 2012 either to enforce its statutory remedy for unlawful detainer or its contractual remedies under the lease to terminate the lease.

The landlord argues that despite the lack of a contractual "Default" by debtor under § 22.1 of the Lease, it can rely upon the statutory remedy for unlawful detainer pursuant to California Code of Civil Procedure, § 1161(2) based on a little "d" default.  *See Landlord's Trial Brief* at 17-18.  The landlord argues that because debtor did not pay rent by the nominal rent due date of December 3, 2012, there was a little "d" default in the payment of rent within the meaning of California Code of Civil Procedure, § 1161(2).  The landlord's little "d" argument is undercut by the reference to little "d" in that code provision which is modified by the phrase, "pursuant to the lease or agreement under which the property is held," and thus, any default within the meaning of § 1161(2) must be considered in reference to the terms of the lease or agreement between the parties. Thus, the analysis of little "d" default is the same as big "D" Default, i.e., there was no breach of the lease, or default with little "d" or big "D" when the statutory notice to pay rent or quit was issued on December 3, 2012 or delivered on December 4, 2012.  When asked about this language, "pursuant to the lease or agreement under which the property is held," in context of the phrase relied upon by the landlord, "after default in the payment of rent," the landlord discounted the importance of the modifying language as merely relating to the issue of whether the debtor continued in unlawful possession after a default in rent payment, which in its view did not concern the validity of the notice.

1    However, this argument itself undercuts the landlord's argument based on a little "d"

2    default since there is no other reference to little "d" default by the landlord in the statute or

3    elsewhere in support of its little "d" argument.

4            The landlord heavily relies upon the decision in *Fifth and Broadway Partnership v.*

5    *Kimny, Inc.,* 102 Cal.App.3d 195 (1980) to argue that the landlord had both contractual

6    and statutory remedies to terminate the lease in this case.  In *Fifth and Broadway*

7    *Partnership,* the California court of appeal held that under the terms of the lease, the

8    landlord had at its option to declare a forfeiture after 90 days after notice of a default or to

9    exercise its statutory remedy to regain possession of the premises through unlawful

10   detainer.  102 Cal.App.3d at 199-203, *citing inter alia,* Article XI of the Master Lease,

11   Forfeiture for Default.  In commenting on the terms of the lease, the court in *Fifth and*

12   *Broadway Partnership* stated: "The master lease seems to contemplate that upon the

13   lessee's breach of any of its covenants plaintiff may either (1) give the lessee 90 days'

14   notice of such default and at the end of that period declare the lease terminated, or (2)

15   commence a proceeding in unlawful detainer (See fn. 3 [footnote quoting California Code

16   of Civil Procedure, § 1161(2), omitted])."  *Id.* at 201.  The court further stated: "In other

17   words, termination of the lease by giving the 90-day notice specified therein is optional;

18   plaintiff may forego that remedy and instead institute unlawful detainer proceedings

19   pursuant to statute."  *Id.*  Thus, as the court observed, "Plaintiff chose the latter course

20   and gave a three-day statutory notice to pay rent or quit the premises."  *Id.*  Accordingly,

21   the court in *Fifth and Broadway Partnership* upheld the landlord's pursuit of the statutory

22   remedy of unlawful detainer over the optional contractual forfeiture remedy: "Therefore,

23   plaintiff's failure to give the 90-day notice pursuant to the lease does not bar the present

24   action or render it premature."  *Id.*   The landlord argues that it simply exercised its

25   statutory remedy of unlawful detainer to declare a forfeiture after rent was expected not to

26   be paid by the due date of December 3, 2012 and giving a 10-day notice to pay rent or

27   quit under the literal terms of the unlawful detainer statute, California Code of Civil

28   Procedure, § 1161(2), and consistent with its purpose.  *See Fifth and Broadway*

*Partnership v. Kimny, Inc.,* 102 Cal.App.3d at 203 ("The purpose of an unlawful detainer action is to restore to the landlord possession of his property when a tenant fails to pay the rent.")(citation omitted).  As the court in *Fifth and Broadway Partnership* further noted, "An unlawful detainer action is not based on contract; it is a statutory proceeding and is governed solely by the provisions of the statute creating it."  *Id.* at 200 (citations omitted).

Debtor argues that *Fifth and Broadway Partnership* is distinguishable because the court in that case "determined that the 90-day post-default notice provision set forth in the lease was only optional, and not mandatory, and therefore, the landlord had the choice of termination procedures after default," but "this conclusion was not based on an interpretation of CCP § 1161, but rather an interpretation of the lease and the specific requirements therein."  *Debtor's Objections to Landlord's Proposed Finding[s] and Conclusions of Law,* filed on September 9, 2013, at 8.  Debtor further argues: "In *Fifth and Broadway,* the lease did not have the type of mandatory pre-Default notice requirements and lock-step approach to commencement of termination remedies that is present here."  *Id.*

While an unlawful detainer action is statutory in nature and not based on contract, as noted in *Fifth and Broadway Partnership,* it is governed by the statute creating it, which does refer to the terms of the contract in construing its operation.  California Code of Civil Procedure, § 1161(2) (referring to "after default in the payment of rent, pursuant to the lease or agreement under which the property is so held").  In this regard, the court considers the character of a lease as having a dual nature of "a conveyance of an estate in the land and a contract between the lessor (landlord) and the lessee (tenant) for possession and use of the property in consideration of rent," but with "the modern tendency to construe [a lease] and its obligations according to the rules of interpretation and performance of contracts generally."  12 Witkin, *Summary of California Law,* Real Property, § 518 at 593-594 (10th ed. 2005 and 2013 Supp.), *citing inter alia, Medico-Dental Building Co. of Los Angeles v. Horton & Converse,* 21 Cal.2d 411, 418 (1942).  In *Medico-Dental Building Co. of Los Angeles,* the California Supreme Court stated:

> While it is true that a lease is primarily a conveyance in that it transfers an estate to the lessee, it also presents the aspect of a contract.  This dual character serves to create two distinct sets of rights and obligations---one comprising those growing out of the relation of landlord and tenant, and said to be based on the privity of estate, and the other comprising those growing out of the express stipulations of the lease, and so said to be based on privity of contract.  Those features of the lease which are strictly contractual in nature should be construed according to the rules for the interpretation of contracts generally and in conformity with the fundamental principle that the intentions of the parties should be given effect as far as possible.  In line with this concept is the authoritative observation in 32 Am.Jur. § 144, p. 145, that "covenants and stipulations on the part of the lessor and lessee are to be construed to be dependent upon each other or independent of each other, according to the intention of the parties and the good sense of the case, and technical words should give way to such intention."

21 Cal.2d at 418-419 (citations and some internal quotation marks omitted).  The

California courts, including the cases cited by the parties and by the court in the case,

including *Fifth and Broadway Partnership v. Kimny, Schulman v. Vera,* and *Stoltenberg v.

Harveston,* have construed the provisions of the subject leases in applying the unlawful

detainer statutes, currently California Code of Civil Procedure, § 1161 *et seq.*  In its

analysis in this case, the court construes the terms of the specific lease, here, the Master

Lease between the parties, in applying the unlawful detainer statute, California Code of

Civil Procedure, § 1161(2).  While the unlawful detainer remedy is statutory and not

contractual, this does not mean that the express terms of the lease, or contract, are

ignored; rather, the express terms of the lease must be considered in determining

whether a tenant is "guilty of unlawful detainer," i.e., continuing to possess the premises

where there has been a default in the rent, pursuant to the lease.  California Code of Civil

Procedure, § 1161(2).  Thus, the court agrees with debtor that the landlord is construing

the unlawful detainer statute out of context by ignoring the language of the statute

referring to default under the lease, which is specifically defined by the lease as agreed to

by the parties, and defining "default" without reference to the lease.

　　　　*Fifth and Broadway Partnership* is distinguishable because there was no reference

to how "default" was defined by the lease in that case whereas default was specifically

defined by the lease in this case.  102 Cal.App.3d at 199-203 and n. 2.  The landlord

1   argues that there was a default in the payment in rent under California Code of Civil

2   Procedure,  § 1161, because the rent was not paid by the nominal due date under the

3   lease, but there was no default in payment of rent as the parties had agreed to define that

4   term in their lease.  Lease, §§ 5.1, 22.1(b) and 31.9, *Trial Exhibit 1.*  Thus, the court

5   concludes that the landlord's statutory remedy of unlawful detainer does not hold up

6   because the landlord issued or served a premature statutory notice to pay rent or quit,

7   which is not in strict compliance with the unlawful detainer statute, which requires strict

8   compliance.  *See, e.g., Kwok v. Bergren,* 130 Cal.App.3d at 600 (strict compliance with

9   unlawful detainer procedures required); *cf., In re Windmill Farms, Inc.,* 841 F.2d at 1471

10  ("under California law a lease terminates for nonpayment of rent at least by the time the

11  lessor files an unlawful detainer action, <u>provided that a proper three-days notice to pay</u>

12  <u>rent or quit has been given</u> . . . .") (emphasis added).

13      The landlord could have cured this procedural defect of notice by simply issuing

14  another statutory notice to pay rent or quit or a contractual notice of termination of lease,

15  which did not have the procedural defects of the December 3, 2012 notice, but did not.

16  Instead, the landlord filed an unlawful detainer action based on the defective notice to

17  pay rent or quit.  See Friedman, Garcia and Hagarty, *California Practice Guide: Landlord-*

18  *Tenant,* ¶ 7.111.1 (2013) (Practice pointer: " . . . Commencing an unlawful detainer

19  without curing the defective first notice will lead to inevitable delays and may substantially

20  compromi8se the landlord's right to gain repossession (tenant might, in the interim, 'cure'

21  the rent default, though long after the first three-day period.").  Therefore, the court

22  concludes that there was no valid termination of the lease under the statutory remedy of

23  unlawful detainer and that the landlord's arguments in opposition to the motion fail.

24      The court also determines that there was no valid termination of the lease under

25  the contractual remedy pursuant to § 23.1 of the Lease.  That provision states, "In the

26  event of any such Default . . . Landlord shall have the immediate option to terminate this

27  Lease and all rights of Tenant thereunder."  Lease, § 23.1.  The landlord argues that the

28  December notice to quit also operated to terminate the lease as it gave notice of its

13

1  intention to terminate the lease for nonpayment of rent within ten days.  *Landlord's*

2  *Proposed Findings of Fact and Conclusions of Law,* lodged on September 9, 2013, at 18.

3  Debtor argues that the landlord did not meet the "predicate requirement in Article 23 [of

4  the Lease] that such [termination] rights only be exercised '[i]n the event of any such

5  'Default.'"  *Debtor's Objections to Landlord's Proposed Findings of Fact and Conclusions*

6  *of Law,* filed on September 9, 2013, at 7.  The court agrees with Debtor that the landlord

7  has not shown that it followed the pre-Default notice requirements of the Lease, § 22.1

8  and 23.1, in order to exercise its termination rights under the lease.  As discussed

9  previously, the December 3, 2012 notice to pay rent or quit was premature and therefore

10  cannot serve as a termination of the lease because a "Default" under the terms of the

11  lease had not yet occurred.

12      Because the court determines that the lease was not validly terminated for want of

13  a proper statutory notice to pay rent or quit as required by California Code of Civil

14  Procedure, 1161(2) or pursuant to the terms of the lease, there is no need for debtor to

15  establish entitlement to relief from forfeiture under California Code of Civil Procedure, §

16  1179, to seek to assume the lease pursuant to 11 U.S.C. § 365(a).  Moreover, because

17  the lease has not been terminated, the court determines that debtor is not liable for any

18  holdover rent or damages from "holding over" under the Lease, §21.2.   Thus, the court

19  determines that debtor may assume the lease if it cures the arrearages and provides

20  adequate assurance of future performance as required by 11 U.S.C. § 365.

21      The landlord argues that the motion should be denied because debtor cannot

22  provide adequate assurance of future performance because the debtor has chronically

23  failed to pay rent on time since the inception of the lease and its financial condition is

24  unstable and precarious.  The landlord's arguments are not without force and make a

25  reasonable case for denial based on adequate assurance; however, the court finds that

26  debtor has shown by the preponderance of the evidence that it can provide adequate

27  assurance of future performance to assume the lease.

28

The term 'adequate assurance' of future performance was intended to be given a practical, pragmatic construction.  *See, In Re Evelyn Byrnes, Inc.*, 32 B.R. 825, 828-829 (Bankr. S.D.N.Y. 1983).  The focus is on the debtor's ability to satisfy the financial obligations imposed by the lease.  *See id.*  Debtor's monthly operating reports show that debtor's post-petition revenues are in excess of the amounts generated prior to the petition date, and are sufficient to enable debtor to pay its obligations to the landlord under the Master Lease as they become due.  *Trial Exhibits 11-15.*  Debtor has offered credible evidence that its subtenant rental revenue could fund a substantial portion of its future rent obligations to the landlord under the Master Lease, especially if Wells Fargo Bank subleases space on the premises from Debtor.  Furthermore, debtor has obtained a loan commitment in the sum of $1,575,000 from Wilson Administrative Services Ltd. for the purpose of funding the debtor's assumption of the Master Lease and the assumption of debtor's other real property lease located in Beverly Hills, California (i.e., there are sufficient funds from this source to cure the arrearages on the Master Lease and to provide additional funds (approximately $400,000) as additional adequate assurance of future performance under the Master Lease).  Debtor has also offered credible evidence that the inventory of debtor's owned art work and consigned art work (excluding posters) may have a value in excess of $39 million, also supporting a finding debtor can provide adequate assurance.  *Trial Exhibits 51 and 52; Trial Testimony of Douglas Chrismas; Direct Valuation Testimony of Douglas Chrismas.*  These circumstances indicate that debtor has available resources to perform its rent obligations under the Master Lease in the future.  While debtor has had problems in not paying rent by the nominal date of payment of rent under the lease on the first business day of the month (prompting the landlord to issue rent overdue notices and to bring the premature unlawful detainer action), and in making proper payment of rent (such as tendering checks drawn without sufficient funds in its account), as well as having cash flow issues in the past (e.g., resorting to "pawn shop" financing, bank account statements showing checks drawn without sufficient fund balances at the time of issuance, issuing check stop payment

1  orders without notifying the payee), the court is satisfied that the debtor has offered

2  sufficient evidence of adequate assurance of future performance under the lease by its

3  current financial resources and inventory as well as its postpetition performance under

4  the lease.  *See Direct Testimony of Shirley Holst; Trial Testimony of Shirley Holst; Direct*

5  *Testimony of Bradley Van Auken by Declaration; Trial Testimony of Bradley Van Auken;*

6  *Direct Testimony of Dr. Barbara Luna by Declaration; Trial Testimony of Dr. Barbara*

7  *Luna; Trial Testimony of Gary Mendelson.*

8       Thus, the court determines that debtor may assume the lease pursuant to 11

9  U.S.C. § 365 and the motion to assume the lease should be granted.

10       However, as debtor argues, a guaranty is not required to show adequate

11  assurance of future performance.  *Debtor's Trial Brief* at 31, *citing In re Natco Industries,*

12  *Inc.,* 54 B.R. 436, 440 (Bankr. S.D.N.Y. 1985) and *In re Sunrise Restaurants, Inc.,* 135

13  B.R. 135 B.R. 149 (Bankr. M.D. Fla. 1991).  Nevertheless, there is no guaranty that

14  debtor may not default on the Master Lease in the future, and if that happens, there is no

15  guaranty that the landlord may not succeed in a future attempt to regain possession of

16  the lease premises based on a proper exercise of its contractual and statutory remedies

17  as lessor.  While there may be some "lingering doubts" of future performance, the debtor

18  would be wise to continues its good postpetition performance under the Master Lease

19  and fully comply with the terms of the lease to avoid any defaults with a capital "D", but

20  not engage in risky or dubious financial behavior, such as issuing checks on bank

21  accounts without sufficient funds or issuing stop payment orders on checks without

22  notifying the payee, particularly if the payee is the landlord.

23      *///*

24      *///*

25      *///*

1

2          This memorandum decision constitutes additional findings of fact and conclusions

3     of law of the court in granting the motion.

4          IT IS SO ORDERED.

5

6                                          ###

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24     Date: September 12, 2013

25                                          Robert Kwan
                                           United States Bankruptcy Judge

26

27

28

# NOTICE OF ENTERED ORDER AND SERVICE LIST

Notice is given by the court that a judgment or order entitled (*specify*) **SEPARATE STATEMENT OF DECISION ON DEBTOR'S MOTION TO ASSUME MASTER LEASE ON PREMISES AT 5500 WILSHIRE BOULEVARD, LOS ANGELES, CALIFORNIA** was entered on the date indicated as "Entered" on the first page of this judgment or order and will be served in the manner indicated below:

**I. SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s), the foregoing document was served on the following person(s) by the court via NEF and hyperlink to the judgment or order. As of **September 12, 2013**, the following person(s) are currently on the Electronic Mail Notice List for this bankruptcy case or adversary proceeding to receive NEF transmission at the email address(es) indicated below:

- Jason Balitzer    jbalitzer@sulmeyerlaw.com
- Ron Bender    rb@lnbyb.com
- Bruce Bennett    bbennett@jonesday.com
- Carol Chow    CChow@Stutman.com
- Marina Fineman    mfineman@stutman.com
- Michael F Frank    mfrankatty@aol.com
- Thomas M Geher    tmg@jmbm.com, we1@jmbm.com;fc3@jmbm.com
- Eric D Goldberg    egoldberg@stutman.com
- Asa S Hami    ahami@sulmeyerlaw.com
- Asa S Hami    ahami@sulmeyerlaw.com
- Mary D Lane    mal@msk.com, mec@msk.com
- Daniel A Lev    dlev@sulmeyerlaw.com, asokolowski@sulmeyerlaw.com
- Daniel A Lev    dlev@sulmeyerlaw.com, asokolowski@sulmeyerlaw.com
- Sidney P Levinson    slevinson@jonesday.com, kfloyd@ecf.inforuptcy.com;kfloyd@jonesday.com
- Alvin Mar    alvin.mar@usdoj.gov
- Krikor J Meshefejian    kjm@lnbrb.com
- Alan I Nahmias    anahmias@mbnlawyers.com, jdale@mirmanbubman.com
- Alan I Nahmias    anahmias@mbnlawyers.com, jdale@mirmanbubman.com
- Christine M Pajak    cpajak@stutman.com
- Christine M Pajak    cpajak@stutman.com
- Danielle A Pham    dpham@stutman.com, daniellepham@gmail.com
- Danielle A Pham    dpham@stutman.com, daniellepham@gmail.com
- Kurt Ramlo    kr@lnbyb.com, marla@lnbyb.com
- Christopher O Rivas    crivas@reedsmith.com
- Victor A Sahn    vsahn@sulmeyerlaw.com, agonzalez@sulmeyerlaw.com,asokolowski@sulmeyerlaw.com
- Victor A Sahn    vsahn@sulmeyerlaw.com, agonzalez@sulmeyerlaw.com,asokolowski@sulmeyerlaw.com
- Michael C Schneidereit    mschneidereit@jonesday.com, jhchase@jonesday.com
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov
- Steven Werth    swerth@sulmeyerlaw.com, asokolowski@sulmeyerlaw.com;slee@sulmeyerlaw.com
- Beth Ann R Young    bry@lnbyb.com

**II. SERVED BY THE COURT VIA U.S. MAIL:** A copy of this notice and a true copy of this judgment or order was sent by U.S. Mail, first class, postage prepaid, to the following person(s) and/or entity(ies) at the address(es) indicated below:

*Debtor*
**Art and Architecture Books of the 21st Century**
5514 Wilshire Blvd
Los Angeles, CA 90036

1

**III. TO BE SERVED BY THE LODGING PARTY**: Within 72 hours after receipt of a copy of this judgment or order which bears an "Entered" stamp, the party lodging the judgment or order will serve a complete copy bearing an "Entered" stamp by U.S. Mail, overnight mail, facsimile transmission or email and file a proof of service of the entered order on the following person(s) and/or entity(ies) at the address(es), facsimile transmission number(s) and/or email address(es) indicated below:

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28