```
 1                  UNITED STATES BANKRUPTCY COURT
 2                  CENTRAL DISTRICT OF CALIFORNIA
 3                             --oOo--
 4  In Re:                           )   Case No. 2:13-bk-14135-RK
                                     )
 5  ART AND ARCHITECTURE BOOKS       )   Chapter 11
    OF THE 21ST CENTURY,             )
 6                                   )   Los Angeles, California
             Debtor.                 )   Friday, April 25, 2014
 7  _____)   1:30 p.m.

 8                                       CONT'D STATUS CONFERENCE RE:
                                         AS-BUILT SURVEY ISSUE
 9
10             TRANSCRIPT OF PROCEEDINGS
           BEFORE THE HONORABLE ROBERT KWAN
11           UNITED STATES BANKRUPTCY JUDGE

12  APPEARANCES:

13  For the Landlord:              SIDNEY P. LEVINSON, ESQ.
                                   MICHAEL C. SCHNEIDEREIT, ESQ.
14                                 Jones Day
                                   555 South Flower Street
15                                 50th Floor
                                   Los Angeles, California 90071
16                                 (213) 243-2475

17  For the Debtor AERC            KURT E. RAMLO, ESQ.
      Desmond's Tower, LLC:        Levene, Neale, Bender, Yoo &
18                                   Brill, LLP
                                   10250 Constellation Boulevard
19                                 Suite 1700
                                   Los Angeles, California 90067
20                                 (310) 229-1234

21

22

23

24
    Proceedings recorded by electronic sound recording;
25  transcript produced by transcription service.
```

*Briggs Reporting Company, Inc.*

ii

| | | |
|---|---|---|
| 1 | Court Recorder: | Hannah Gae |
| 2 | | United States Bankruptcy Court |
| | | Edward R. Roybal Federal Building |
| 3 | | 255 East Temple Street |
| | | Los Angeles, California  90012 |
| 4 | | |
| | Transcriber: | Briggs Reporting Company, Inc. |
| 5 | | 4455 Morena Boulevard |
| | | Suite 104 |
| 6 | | San Diego, California 92117 |
| | | (310) 410-4151 |

```
                                                                1
 1     LOS ANGELES, CALIFORNIA  FRIDAY, APRIL 25, 2014 1:30 PM
 2                           --oOo--
 3       (Call to order of the Court.)
 4           THE COURT:  The Court will now call its 1:30
 5  calendar.  Item number two, the continued status conference
 6  regarding the as-built survey issue, Art and Architecture
 7  Books of the 21st Century.
 8           Appearances.
 9           MR. LEVINSON:  Your Honor, Sid Levinson and
10  Michael Schneidereit for the landlord.  Mr. Schneidereit
11  will be handling the status conference.
12           THE COURT:  Thank you.
13           Other appearances?
14           MR. RAMLO:  Your Honor, Kurt Ramlo on behalf of
15  the debtor.
16           THE COURT:  All right.  Who wants to go first?
17           MR. SCHNEIDEREIT:  We can go first, your Honor.
18           Good afternoon.  This is Michael Schneidereit from
19  Jones Day.
20           I've been in touch with the surveyor and also with
21  debtor's counsel, Mr. Ramlo.  And we've come to an agreement
22  that the survey will go ahead using the manually targeted
23  labor process for the debtor's gallery spaces on the week of
24  May 5th.
25           The debtor's counsel requested that the gallery
```

2

1 spaces not be surveyed on May 7th because Mr. Christmas
2 (phonetic) will be in court for a continued hearing.
3        So I spoke to the surveyor about that, and they
4 believe that that will not present a problem.
5        THE COURT:  Thank you, Mr. Schneidereit.
6        Mr. Ramlo?
7        MR. RAMLO:  I have nothing to add, your Honor.
8        THE COURT:  Does the landlord or any party -- do
9 we need to have further discussions on the matter?  Do you
10 need a written order?  Do you need any stipulation?
11        MR. SCHNEIDEREIT:  Your Honor --
12        THE COURT:  Yes.
13        MR. SCHNEIDEREIT:  -- one thing that I think we
14 still need to address is the fees for the survey.  We
15 presented a declaration of -- well, initially Jude Hako was
16 the surveyor and then also Scott Aron (phonetic).
17        And Mr. Aron who is CEO of the surveyor -- there
18 are details in his declaration -- that even though the
19 manual survey may present additional complications and may
20 take additional time, which he can't confirm until he
21 actually sees the spaces that need to be manually surveyed,
22 that he's agreed to limit his fees to the previously stated
23 amount of $8,115, which includes the travel component.
24        THE COURT:  We have a breakdown from I believe Mr.
25 Aron.  That was filed -- in his declaration that was filed

3

1  on April 22, 2014, which was on Tuesday, and as you recall
2  we had a hearing on Wednesday.
3            And I don't know if the debtor has had a
4  meaningful opportunity to respond to Mr. Aron's declaration
5  with this breakdown.
6            Mr. Ramlo, you have not filed -- on behalf of the
7  debtor has not filed any objection or any comments regarding
8  the breakdown.
9            Were you on behalf of the debtor intending to file
10 something so the Court can get the debtor's position
11 regarding the surveyor's claim -- well, the claim on behalf
12 of the surveyor by the landlord?
13           MR. RAMLO:  Your Honor, this is Kurt Ramlo.
14           I'm more than happy to do that, but I again
15 thought that it may be more productive to address the fees
16 issue after the survey has been completed.
17           THE COURT:  Well, as I understood it, the landlord
18 placed a priority on having the survey done as soon as
19 possible and that was my understanding from the comments at
20 Wednesday's hearing as well as prior hearings on the matter.
21           And the debtor did not agree to the requested
22 amount of $3500, as I recall, and wanted to see a breakdown.
23 And I do recall your request that, Mr. Ramlo, you wanted to
24 be able to see what actually happened in the survey and then
25 we were struggling with scheduling the survey.

4

1       So it seems to me that Mr. Ramlo's suggestion of
2  we wait until after the survey is done so we know exactly
3  what the cost are then have a breakdown and go over that
4  after it's done, I think that makes sense.
5       Mr. Schneidereit?
6       MR. SCHNEIDEREIT:  Yes.  Your Honor, this is
7  Michael Schneidereit.  That does make sense.  I was just --
8  the breakdown hasn't changed since it was filed by Mr. Hako
9  on April 4th in his declaration.
10      And my understanding, your Honor, is this is going
11 to be the fee, that the surveyors agree to this fee.  It's
12 not going to be based on the amount of hours the surveyor is
13 here.  He's willing to cap his fees in the interest of
14 getting this resolved at the 8,115 amount.
15      MR. LEVINSON:  In other words, your Honor, this is
16 what we have to pay.  This is what we've been told.  That's
17 not going to change.
18      This will be money that the landlord has to
19 expend.  This is basically their charged cost and the travel
20 for the delays that resulted from it not going forward in
21 February.
22      THE COURT:  Mr. Ramlo?
23      MR. RAMLO:  Well, your Honor, we did raise a
24 number of points in our most recent filing on this matter.
25 And I did not think that the paperwork had addressed all of

5

1 the concerns that the debtor had raised.  And some of those
2 concerns were based on the general notion that we don't know
3 how much got done the first time that the surveyor visited,
4 notwithstanding a lack of agreement on that visit.  And how
5 that will mesh with how long it takes the surveyor to
6 complete this survey now.
7        So we haven't had a chance to have, I believe, a
8 full argument on the issues that the debtor has raised, and
9 I again think that the completion of the survey makes that
10 argument more relevant.
11        And as a preview on one portion of the amount, the
12 debtor tells me that in investigating the laser and the like
13 in these matters, that it's been informed that there are
14 multiple companies here in Southern California that do 3D
15 laser surveys and the debtor has raised the issue of whether
16 they could have used a local surveyor to save the travel
17 costs.
18        Now, that issue would probably be better presented
19 to the Court once I've had a chance to talk to counsel for
20 the landlord about it, because frankly, I'm not sure if the
21 particular kind of survey that's been done in 3D here is
22 exactly the same kind of 3D surveys that these other
23 providers in Southern California do.
24        And so I think putting this off for another day
25 will give me a chance to discuss that with counsel as well.

1         THE COURT:  Well, I was going to suggest that we
2  revisit this after the survey is done, because I want to
3  make sure that the survey is concluded, that there are no
4  problems with the conduct of the survey and we can talk
5  about those issues afterwards.
6         But both sides have to understand that you're
7  going to run more in attorneys' fees litigating this matter,
8  right?  I expect the litigation costs are going to exceed
9  the cost that are being claimed, the $6500, although I
10 understand that there may be a claim by one side or the
11 other regarding attorneys' fees in general regarding the
12 whole lease anyway.
13        So I would suggest that in order for fairness to
14 the debtor tenant, that you be given the opportunity to
15 review the breakdown.  And we'll talk about it after the
16 survey is concluded.
17        So the survey is expected to be concluded on May
18 9th.  I'll set a hearing after that.
19        So when should this hearing be set?  I know we
20 have a hearing on the 7th, but that is in the middle of the
21 survey being conducted.
22        Do you have a time frame you're suggesting, Mr.
23 Ramlo, on behalf of the debtor, when we should reconvene to
24 discuss costs?
25        MR. RAMLO:  Your Honor, assuming the survey is

7

1  concluded by May 9th, and we could have the following week
2  to evaluate what's been done and where we are, perhaps a
3  further hearing during the week of May 19th would be
4  appropriate.
5          THE COURT:  Mr. Schneidereit?
6          MR. SCHNEIDEREIT:  Yes, your Honor.  That's fine
7  with us.
8          THE COURT:  All right.  Well, actually, May 19th
9  I'm going to be out of town the first three days and then I
10 have a trial on the day -- so it's going to have to be
11 Memorial Day week.
12         So which day of that week, the following week,
13 Tuesday or Wednesday?
14         MR. RAMLO:  This is Kurt Ramlo.  Either day works
15 for me, your Honor.
16         THE COURT:  Mr. Schneidereit?
17         MR. SCHNEIDEREIT:  One second, your Honor.
18         Wednesday works best for me.
19         THE COURT:  All right.  What time, Mr.
20 Schneidereit, is better for you?
21         MR. SCHNEIDEREIT:  Any time.  Whatever works for
22 you.
23         THE COURT:  How much time do you think you'll need
24 to argue this?  Half an hour, an hour?
25         MR. SCHNEIDEREIT:  I don't think any more than

```
                                                                    8
 1  half an hour, your Honor.
 2          THE COURT:  Mr. Ramlo?
 3          MR. RAMLO:  I agree, your Honor.
 4          THE COURT:  10:30 on May 28th.  May 28, 2014 at
 5  10:30 a.m.
 6          Hopefully, the parties will report the survey's
 7  concluded and then the Court will hold argument regarding
 8  the costs issue.
 9          Notice waived?
10          MR. RAMLO:  Noticed waived, your Honor.
11          THE COURT:  Mr. Schneidereit?
12          MR. SCHNEIDEREIT:  Noticed waived, your Honor.
13          THE COURT:  Anything further?
14          MR. RAMLO:  No, your Honor.
15          THE COURT:  All right.  Thank you very much.
16          MR. RAMLO:  Thank you, your Honor.  Have a good
17  day.
18          MR. SCHNEIDEREIT:  Thank you, your Honor.
19          THE COURT:  Thank you.
20       (Proceedings concluded.)
21
22
23
24
25
```

```
                                                                 9
 1         I certify that the foregoing is a correct
 2  transcript from the electronic sound recording of the
 3  proceedings in the above-entitled matter.
 4  /s/ Holly Martens_____        5-6-14_____
    Transcriber                       Date
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

*Briggs Reporting Company, Inc.*