FILED & ENTERED

SEP 08 2014

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY gae       DEPUTY CLERK

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

LOS ANGELES DIVISION

| | |
|---|---|
| In re<br><br>ART AND ARCHITECTURE BOOKS OF THE 21ST CENTURY,<br><br>Debtor. | Case No. 2:13-bk-14135-RK<br><br>Chapter 11<br><br>ORDER ON LANDLORD'S REQUEST FOR COSTS RELATING TO "AS-BUILT" SURVEY |

Pending before the court is AERC Desmond's Tower, LLC's ("Landlord") request for costs relating to the performance of an "as-built" survey of Art and Architecture Books of the 21st Century, dba Ace Gallery's ("Debtor"), leased premises located at 5500 Wilshire Boulevard, Los Angeles, California, as made part of its motion for immediate payment of rent pending assumption or rejection of the lease pursuant to 11 U.S.C. § 365(d)(3). While the parties disagree whether this particular cost request was part of the original motion, it was raised in the Landlord's reply to Debtor's opposition in the motion, and the request was set for hearing on April 2, 2014 pursuant to its scheduling order filed on March 19, 2014. Further hearings on the request were held on April 8, 11, 23, and 25, and May 28, 2014.

At the initial hearing on April 2, 2014, the court orally granted Landlord's request for access to conduct the "as built" survey pursuant to Section 24 of the Master Lease on grounds that its original request for such access to Debtor's lease premises was for a commercially reasonable purpose. The express terms of Section 24 of the Lease provide:

> Landlord and its employees and agents shall ***at all reasonable times have the right to enter the Premises to inspect the same for a commercially reasonable purpose, to supply any service specifically required to be provided by Landlord under this Lease***, to exhibit the Premises to prospective lenders or purchasers (or during the last year of the Term subject to extensions of the Term pursuant to the terms of Rider No. 1 to this Lease) to prospective tenants), to post notices of non-responsibility; and/or to alter, improve or repair the Premises or any other portion of the Building or Property in accordance with the provisions set forth in this Lease, all without being deemed guilty of or liable for any breach of Landlord's covenant of quiet enjoyment or any eviction of Tenant, and without abatement of Rent. In exercising such entry rights into any portion of the Premises where Tenant is exhibiting artwork, Landlord shall use reasonable efforts to minimize, to the extent reasonably practicable, the interference with Tenant's business, and ***shall provide Tenant with reasonable advance written notices of at least three (3) business days of such entry (except in emergency situations and for scheduled services), the timing and duration of such entry shall be reasonable and mutually agreed***, and Tenant shall have right to have any such entry be accompanied by a representative of Tenant. For each of the foregoing purposes, Landlord shall at all times have and retain a key with which to unlock all of the doors in, upon and about the Premises, excluding Tenant's vaults and safes, and Landlord shall have the means which Landlord may deem proper to open said doors in an emergency in order to obtain entry to the Premises. Any entry to the Premises obtained by Landlord by any of said means or otherwise shall not under any circumstances be construed or deemed to be a forcible or unlawful entry into, or a detainer of, the Premises, or an eviction of tenant from the Premises or any portion thereof, or grounds for any abatement or reduction of Rent or any other damages. Notwithstanding anything contrary in the foregoing, ***Landlord's right to access Tenant's art storage rooms shall be subject to Landlord providing notice as required by this Article 24, and Tenant's approval, which Tenant shall not unreasonably withhold provided that Landlord has a legitimate business purpose for such entry.***

Lease § 24 (emphasis added).  The court was and is persuaded that Landlord's written request for entry (or access) to the leased premises had complied with the notice requirement of advance written notice of at least three (3) business days and there was a commercially reasonable purpose for such entry (i.e. landlord's repair obligations, a service required to be provided by landlord under section 8.1 of the Lease to repair, maintain and replace the foundation and structural elements of the building, etc.), to enable landlord to identify specific structural columns, beams, and load bearing walls that require seismic assessment, and to perform core sampling that would enable landlord to determine the seismic constraints of the building.  *Supplemental Declaration of Sidney P. Levinson* and Exhibits A-D attached thereto (Docket No. 478).  Debtor breached Section 24 of the Lease by unreasonably refusing to grant access to the premises to Landlord's representative, Mr. Fisher, the surveyor contractor, on February 17, 2014.  *Declaration of William Brian Fisher* (Docket No. 481).  Accordingly, Landlord's request for access was granted.

Thereafter, the court held further hearings to discuss the scheduling of Landlord's survey of the premises, Debtor's concerns regarding the effect on Landlord's intended use of infrared light survey equipment on artwork situated on the premises, and Landlord's claim of costs resulting from Debtor's refusal to grant reasonable access to the premises.

After the court's ruling the survey was completed the week of May 5, 2014. *Supplemental Declaration of Scott Aaron* (Docket No. 619) at ¶ 3.  At the final hearing on the request on May 28, 2014, the court heard argument from the parties on Landlord's request for costs resulting from Debtor's breach of Section 24 of the Lease regarding the "as built" survey, and the court took the matter under submission.

Having reviewed Landlord's breakdown for the asserted costs relating to the "as built" survey and other substantiation it offered and Debtor's papers in opposition, and pursuant to Section 23.3 of the Master Lease, the court hereby grants in part and denies in part Landlord's request for costs.

3

The express terms of Section 23.3 of the Lease provide:

> Except as specifically provided otherwise in this Lease, all covenants and agreements by Tenant under this Lease shall be performed by Tenant at Tenant's sole cost and expense and without any abatement or offset of Rent. In the event of any Default by Tenant, Landlord may, without waiving or releasing Tenant from any of Tenant's obligations following any applicable required notice set forth in this Lease, (WHICH NOTICE SHALL STATE IN BOLD-FACED ALL CAPITAL LETTERS, THAT TENANT'S FAILURE TO PERFORM WITHIN THIRTY (30) DAYS OR SUCH SHORTER PERIOD AS IS REASONABLE GIVEN THE NATURE OF TENANT'S DEFAULT) make such payment or perform such other act as required to cure such Default on behalf of Tenant. **All reasonable sums so paid by Landlord and all necessary incidental reasonable costs incurred by Landlord in performing such other acts** shall be payable by Tenant to Landlord within thirty (30) days after demand therefor as Additional Rent.

Lease, § 23.3 (emphasis added). Thus, under the Lease, the court may only grant "all reasonable sums" paid by Landlord and "all necessary incidental reasonable costs" it incurred relating to the Default of Debtor with respect to the breach of Section 24 regarding its denial of reasonable access to the premises to Landlord's surveyor. Accordingly, the court grants Landlord's request for costs under Section 23.3, but not the entire amount, as Landlord has not met its burden of showing that its claim for reimbursement of travel costs for an out-of-state surveyor was reasonable. In this regard, the court determines that Landlord had not made a sufficient showing that travel costs for an out-of-town surveyor were reasonable on grounds that a local surveyor could not perform the work. Although the Declaration of Lyle Hutson, Landlord's architect, purports to detail Landlord's efforts to contact a local surveyor to perform the scanning work for the survey, the court observes that the declaration lacks sufficient detail, such as the names of the two local surveyors, or the amount of fees quoted by such surveyors, and thereby undercuts Landlord's argument that a local surveyor could not perform the work. *Declaration of Lyle Hutson, Regarding "As-Built" Survey* (Docket No. 620) at ¶ 5.

When Landlord notified Debtor of its request for access to conduct the "as built" survey, it indicated that it would need four days access to conduct the survey. The court

notes that the parties agreed that the survey could be conducted manually without using infrared scanning equipment, and therefore, the court awards to Landlord costs for conducting the redone "as built" survey based on the alternative manual scanning survey of $1,500 per day for four days, and $500 for data integration into previous work, for a total award of costs of $6,500, as described in the Supplemental Declaration of Scott Aaron.[1]  *Supplemental Declaration of Scott Aaron* (Docket No. 619) at 2.  No allowance is made for claimed travel costs.

IT IS HEREBY ORDERED that Landlord's request for costs resulting from Debtor's breach of Section 24 of the Lease relating to the denial of reasonable access to the leased premises for the "as-built" survey is granted in the amount of **$6,500**.  Debtor is ordered to pay this amount to Landlord in care of its counsel of record, Jones Day, within thirty (30) days of demand as Additional Rent due under Section 23.3 of the Lease and 11 U.S.C. § 365(d)(3).

IT IS SO ORDERED.

###

Date: September 8, 2014

_____
Robert Kwan
United States Bankruptcy Judge

---

[1] The contractor agreed to charge the same price for the work charged for the aborted first attempt to conduct the survey, though the actual survey took more than four days and the alternative process required an additional surveyor, which according to the contractor resulted in additional travel costs.  *Supplemental Declaration of Scott Aaron* (Docket No. 619) at 2.