FILED & ENTERED

NOV 26 2014

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY bakchell  DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re | Case No. 2:13-bk-14135-RK |
| ART AND ARCHITECTURE BOOKS OF THE 21st CENTURY, | Chapter 11 |
| Debtor. | MEMORANDUM DECISION ON MOTION OF AERC DESMOND'S TOWER LLC TO: (1) COMPEL IMMEDIATE PAYMENT BY DEBTOR OF OUTSTANDING OBLIGATIONS TO LANDLORD PURSUANT TO 11 U.S.C. § 365(d)(3); (2) MODIFY ADEQUATE PROTECTION ORDER BASED ON DEBTOR'S CONTEMPT OF COURT AND OTHER DEVELOPMENTS SUBSEQUENT TO ITS ENTRY |

The contested matter of the motion of AERC Desmond's Tower, LLC ("Landlord") to: (1) compel immediate payment by Art and Architecture Books of the 21st Century ("Debtor") of outstanding obligations to Landlord under the Master Lease pursuant to 11 U.S.C. § 365(d)(3); (2) modify adequate protection order based on debtor's contempt of court and other developments subsequent to its entry, came on for hearing before the undersigned United States Bankruptcy Judge on February 19, April 2, May 7 and 14, October 14 and November 18, 2014.  The motion is opposed by Debtor and the Official

1  Committee of Unsecured Creditors ("Committee") in this case.  Appearances were made

2  as noted on the record.

3       The court has jurisdiction over the instant motion under 28 U.S.C. § 1334.  The

4  motion is a core proceeding under 28 U.S.C. §§ 157(a) and (b)(2)(A) and (M).  Venue is

5  proper in this judicial district pursuant to 28 U.S.C. § 1409(a).  As discussed herein, the

6  court determines that Landlord is entitled to immediate payment of outstanding

7  obligations arising postpetition as required under 11 U.S.C. § 365(d)(3) and under the

8  terms of the Master Lease and that the motion should be granted.[1]

9  **I.  Termination of the Master Lease Does Not Preclude Application of 11 U.S.C**

10      **§ 365(d)(3)**

11       In the case at bar, the District Court on Landlord's appeal of this court's ruling on

12  Debtor's motion to assume the Lease held that the Lease was terminated before the

13  commencement of the bankruptcy case when Debtor filed its voluntary petition for relief

14  under Chapter 11 of the Bankruptcy Code, 11 U.S.C., and remanded to this court to

15  determine whether Debtor would be entitled to relief from forfeiture under applicable state

16  law, and thus could nevertheless assume the Lease pursuant to 11 U.S.C. § 365.  *Exhibit*

17  *18 to Request for Judicial Notice in Support of Motion to: (1) Compel Immediate Payment*

18  *by Debtor of Outstanding Obligations to Landlord Pursuant to 11 U.S.C. § 365(d)(3); (2)*

19  *Modify Adequate Protection Order Based on Debtor's Contempt of Court and Other*

20  *Developments Subsequent to its Entry,* ECF 443.  Landlord filed the instant motion to

21  compel immediate payment of outstanding obligations under the Lease pursuant to 11

22  U.S.C. § 365(d)(3) for the time period pending assumption or rejection of the lease, i.e.,

23  the period between the petition date and the date when the this court on remand ruled on

24  Debtor's request for relief from forfeiture.  Subsequently, this court has now denied relief

25  from forfeiture in its memorandum decision on Debtor's request for relief from forfeiture in

26

27  [1] The court makes no ruling as to the propriety of the additional requests contained in the *Supplement to Motion* filed by Landlord November 18, 2014. ECF 756. Due to their very recent filing, those additional requests may be subject to a supplemental motion pursuant to 11 U.S.C. § 365(d)(3).

28

furtherance of its motion to assume the master lease, and there is no longer an unexpired

lease.  As discussed herein, this court should still rule on the instant motion pursuant to

11 U.S.C. § 365(d)(3) in the context of it being brought before the court's determination

on relief from forfeiture, i.e. during the period pending assumption or rejection of the

lease.  Accordingly, as discussed herein, the pre-petition termination of the Lease does

not preclude application of 11 U.S.C. § 365(d)(3), and the court may still rule on

Landlord's motion for immediate payment.

### a.  Assumability of a Lease for Purposes of § 365(d)(3)

A bankruptcy trustee, or a debtor-in-possession exercising the rights, powers and

duties of a trustee under 11 U.S.C. § 1107, may assume or assign certain contracts or

leases, but their ability to assume leases is limited by 11 U.S.C.  § 365(c)(3), which states

that "[t]he trustee may not assume or assign any executory contract or unexpired lease of

the debtor, whether or not such contract or lease prohibits or restricts assignment of

rights or delegation of duties, if…such lease is of nonresidential real property and has

been terminated under applicable nonbankruptcy law prior to the order for relief."   11

U.S.C. § 365(d)(3).  In construing 11 U.S.C. § 365(c)(3), the Ninth Circuit in *In re Windmill*

*Farms, Inc.*,  841 F.2d 1467 (9th Cir. 1988) has stated:

> Assumability of a lease by a trustee in bankruptcy, in the context of a
> lease termination claim, involves a two-part test. The first part of the
> test is to determine whether the lease terminated before the petition
> in bankruptcy was filed.  We have already discussed this. The
> second part of the test requires the court to "determine whether the
> termination could have been reversed under a state anti-forfeiture
> provision or other *applicable state law*."

841 F.2d at 1472 (citation omitted) (italics in original).

The determination of the two-part test of *Windmill Farms* has been completed in

this case.  The District Court has determined the first part by holding that the lease

terminated pre-petition. This court has now determined the second part by holding that

the termination could not have been reversed under state law as Debtor had waived its

rights to seek relief from forfeiture of the lease.

3

This apparently presents an unusual situation, as both parties now appear to seek the opposite of their previous litigating positions in the case.  Debtor had argued in its Lease Assumption Motion that it was entitled to relief from forfeiture, and thus, that the lease was assumable, and now argues that the lease should be deemed expired before the petition date and never assumable afterwards from the date of pre-petition termination for purposes of 11 U.S.C. § 365(d)(3).  Landlord, which in the Lease Assumption Motion had argued that Debtor waived its right to relief from forfeiture, and thus that the lease was not assumable, now argues that the lease is to be deemed rejected as of the date this court entered an order determining that Debtor had waived its right to relief from forfeiture, thus implicitly arguing that the lease was capable of assumption or rejection for purposes of 11 U.S.C. § 365(d)(3).  This apparent turnabout in litigating positions is probably explainable by the effect of the text in 11 U.S.C. § 365(d)(3), which provides in pertinent part: "The trustee shall timely perform all the obligations of the debtor, except those specified in section 365(b)(2), arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title."  11 U.S.C. § 365(d)(3).  Essentially this means that during the applicable option period for assuming or rejecting a lease, the trustee of the bankruptcy estate (or a debtor-in-possession) must timely perform all of a nonresidential tenant's post-filing obligations as they become due.  11 U.S.C. § 365(d)(3); *see also,* 11 U.S.C. § 1107 (such obligation also applies to a debtor-in-possession in a Chapter 11 reorganization case); *In re Cukierman*, 265 F.3d 846, 849 (9th Cir. 2001).

Debtor disagrees with this construction of 11 U.S.C. § 365(d)(3), citing to *In re Orvco, Inc.*, 95 B.R. 724, 726-727 (9th Cir. BAP 1989), and characterizing its holding as "once [the] lease is rejected, § 365(d)(3) no longer applies to pre-rejection period." *Debtor's Second Supplemental Brief in Response to Court's Order for Further Hearing,* ECF 689 at 4:20.  It is unclear where in the *Orvco* opinion this proposition is supported, but to the extent that it was the holding in *Orvco*, it was contradicted and overruled at

least implicitly by the Ninth Circuit in *In re Cukierman*, 265 F.3d at 851, which held that 11 U.S.C. § 365(d)(3) requires a trustee or debtor-in-possession to perform all obligations under an unexpired lease of nonresidential real property "pending the assumption or rejection of the lease."

Furthermore, as held in *Cukierman,* any obligation of a trustee or debtor-in-possession under a non-residential lease of real property, whether or not related to debtor's use of the property, enjoys the administrative status and right to prompt performance conferred by 11 U.S.C. § 365(d)(3), pending the assumption or rejection of a lease. *In re Cukierman*, 265 F.3d at 850. Also, as held by the Ninth Circuit in *Cukierman* and other cases, 11 U.S.C. § 365(d)(3) requires the payment of rent in the *amount required by the lease* (not some other "fair value" amount based on the estate's actual use and occupancy of the premises), *plus* all other obligations of the tenant debtor under the lease (e.g., common area maintenance charges). 11 U.S.C. § 363(d)(3); *In re Cukierman,* 265 F.3d at 850-851; *In re LPM Corp.*, 300 F.3d 1134, 1137 (9th Cir. 2002); *In re Pacific Atlantic Trading Co.*, 27 F.3d 401, 404-405 (9th Cir. 1994). This means in this case that if 11 U.S.C. § 365(d)(3) applies, Landlord could seek, as it does, administrative priority treatment of: (1) holdover rent as provided for in the lease; (2) late charges provided for in Section 5.3 of the Master Lease; (3) attorneys' fees under Section 16.2 in the lease; (4) replacement parking costs; and (5) subtenant rents.

**b. Expiration and Termination are Not Synonyms in the Bankruptcy Code**

In opposing the motion, Debtor, joined by the Committee, seeks to avoid the application of 11 U.S.C. § 365(d)(3) in this case, and argues that the lease should be deemed expired as of the petition date. According to Debtor, if the lease is deemed expired as of the petition date, 11 U.S.C. § 365(d)(3) will no longer be in effect, as that section only applies to "unexpired leases." *Debtor's Second Supplemental Brief in Response to Court's Order for Further Hearing,* ECF 689 at 4:110-11. The parties have spent a significant amount of time in their respective papers discussing the difference between "expired" and "terminated" as those terms are used to describe non-residential

leases under the Bankruptcy Code.  Debtor has argued that the lease should be deemed

expired as of the petition date, citing *Windmill Farms* for the proposition that a "California

lease is expired and non-assumable if before petition date it is terminated and no longer

subject to relief from forfeiture."  *Debtor's Second Supplemental Brief in Response to

Court's Order for Further Hearing,* ECF 689 at 4:12-14.  It is not clear that *Windmill

Farms* supports this statement.  As noted above, *Windmill Farms* sets forth a two-part

test to determine if a debtor can assume a lease.  But termination is not synonymous with

expiration.  This is made clear from the express language of 11 U.S.C. § 365(c)(3), which

says that the trustee may not assume an "unexpired lease" if that lease was "terminated

under applicable nonbankruptcy law.   In other words, a trustee or debtor-in-possession

may never assume an expired lease, but the debtor may assume an unexpired lease so

long as that lease was not terminated.

Another implication of the text of 11 U.S.C. § 365(c)(3) is that a lease may be

simultaneously "unexpired" and "terminated."  *See Super Nova 330 LLC v. Gazes*, 693

F.3d 138, 142 (2d Cir. 2012) ("a lease that has been 'terminated' pre-petition can

nonetheless be 'unexpired' for purposes of Section 365(d)(3) if state law permits

reinstatement of the lease.") (*citing In re Stoltz*, 197 F.3d 625, 629 (2d Cir. 1999). Section

365(c)(3) states that the trustee (or debtor-in-possession) may not assume an "unexpired

lease. . . if . . . such lease is of nonresidential real property and has been terminated

under applicable nonbankruptcy law prior to the order for relief."  11 U.S.C. § 365(c)(3).

Here, "such lease" refers to an "unexpired lease of the debtor."  *Id.*  Thus, the court

concludes that the Bankruptcy Code in the language of 11 U.S.C. § 365(d)(3) specifically

provides for the possibility that an unexpired lease may also be a terminated lease.

Landlord cites to *In re Morgan*, 181 B.R. 579 (Bankr. N.D. Ala. 1994), construing

Sections 365 and 1322(b)(7) of the Bankruptcy Code, 11 U.S.C., which offers a well-

reasoned explanation of the differences between the terms of "expired" and "terminated"

used in another provision of the Bankruptcy Code in 11 U.S.C. § 365(b)(1).  *Landlord's

Supplemental Brief Re: (1) Order for Futher Hearing entered September 22, 2014; and*

*(2) Order Setting Hearing On Competing Forms of Judgment, entered September 25, 2014,* ECF 688 at 6:9-7:23.  Although the court in *In re Morgan* examined the assumption of residential leases pursuant to § 1322(b)(7)subject to the restrictions of § 365(b)(1), the court agrees with *Morgan*'s plain meaning analysis of the words "expire" and "terminate," and its analysis based on the language of the Bankruptcy Code, specifically determining that § 365(c)(3) would be unnecessary if "expired" and "terminated" were synonymous. 181 B.R. at 583-584; *contra, In re Moore,* 290 B.R. 851, 873-882 (Bankr. N.D. Ala. 2003) (disagreeing with *Morgan,* holding that "expired" and "terminated" are synonymous as used in the Bankruptcy Code); *see also In re Boll Weevil, Inc.*, 202 B.R. 762, 764 (Bankr. S.D. Cal. 1996) (stating that "Bankruptcy law makes no distinction between the words "terminated" and "expired" with respect to leases.")

As in *Morgan,* the court considers it helpful in its statutory analysis to examine the definitions of the words "expiration" or "expire" and "termination" or "terminate."  *See In re Morgan,* 181 B.R. at 583-584.  As defined in Black's Law Dictionary, the word "expire" means:  "1. (Of an official document) to be no longer legally effective; to become null at a time fixed beforehand.  2. (Of a period of time during which someone holds a position of authority) to come to an end <the president's term of office has expired> . . . ."  *Black's Law Dictionary* at 700 (10th ed. 2014).  The Merriam-Webster Online Dictionary defines "expire" to mean "to end; *to no longer be valid after a period of time*; to die."  *Merriam-Webster Online Dictionary,* http://www.merriam-webster.com/dictionary/expire (2014) (emphasis added).  The court in *Morgan* cited Webster's II New Riverside University Dictionary for a definition of "expire," defining it to mean "to come to an end."   181 B.R. at 583, *quoting, Webster's II New Riverside Dictionary* at 454 (1988).  As noted by the court in *Morgan,* "[t]he word expire, including all of its derivatives, is an intransitive verb" and "[a]s such, it expresses an action or state which is limited to a subject, and does not require a direct object to complete its meaning."  181 B.R. at 583; *see also,* M*erriam-*

1    *Webster Online Dictionary,* http://www.merriam-webster.com/dictionary/expire.[2]    The

2    *Morgan* court further noted: "For example, 'The lease has not expired,' or 'The unexpired

3    lease may be assumed.'"    *Id.*

4         Black's Law Dictionary defines the word "terminate" to mean "1. To put an end to;

5    to bring to an end.  2.  To end; to conclude."  *Black's Law Dictionary* at 1700.  Similarly,

6    the Merriam-Webster Online Dictionary defines "terminate" to mean "to bring to an end:

7    CLOSE *<terminate* a marriage by divorce><*terminate* a transmission line>.  *Merriam-*

8    *Webster Online Dictionary,* http://www.merriam-webster.com/dictionary/terminate. The

9    court in *Morgan* cited Webster's II New Riverside University Dictionary for a definition of

10   "terminate," which means "to bring to an end."   181 B.R. at 583, *quoting, Webster's II*

11   *New Riverside Dictionary* at 1194 (1908).  As noted by the court in *Morgan* with respect

12   to the word "terminate" in comparison to the word "expire,"  "[i]n contrast, the word

13   'terminate' is a transitive verb, which expresses an action between a subject and an

14   object and requires a direct object to complete its meaning." 181 B.R. at 584. On the

15   other hand "[t]he word expire, including all of its derivatives, is an intransitive verb" and

16   "[a]s such, it expresses an action or state which is limited to a subject, and does not

17   require a direct object to complete its meaning."  *Id.*; see also, *Merriam-Webster Online*

18   *Dictionary,* http://www.merriam-webster.com/dictionary/terminate.[3]

19        The *Morgan* court draws a distinction between these words, expire and terminate,

20   and concludes that they are not precisely synonymous for purposes of the Bankruptcy

21   Code because to hold otherwise would render provisions of the Code superfluous.  181 B

22

---

23   [2]  The Merriam-Webster Online Dictionary in its definition of "terminate" states that the word "terminate" as
     a verb has an intransitive form, which is similar to "expire," including, to extend only to a limit (as a point
24   or line), to form an ending and to come to an end in time.  However, the court agrees with the court in
     *Morgan* that the dominant form of the word "terminate" as a verb is its transitive form, which is the form
25   recognized in Black's Law Dictionary as discussed above, i.e., to bring to an end.  *In re Morgan,* 181 B.R.
     at 583-584; *Black's Law Dictionary* at 1700.

26   [3]  The Merriam-Webster Online Dictionary in its definition of "expire" states that the word "expire" as a verb
     has a transitive form, but for definitions not relevant here - to obsolete, to breathe from or as if from the
27   lungs or to emit.  However, the relevant definition of "expire" here, i.e., to come to an end, is only in the
     intransitive form

28

.R. at 583.  Similar to the position taken by Debtor and the Committee in the case at bar, in *Morgan,* a party, a lessor seeking relief from the automatic stay, had argued that "a lease *expires* once it has been *terminated* under state law."  *Id.*  As the court in *Morgan* noted in addressing this contention, "[i]f Movant is correct and the words 'expired' and 'terminated' are precisely synonymous, then section 365(c)(3) would be unnecessary since by definition a lease 'terminated under applicable nonbankruptcy law' could not be an 'unexpired lease.'"  *Id., citing,* 11 U.S.C. § 365(c)(3).  Moreover, as the *Morgan* court stated: "For the same reason, the word 'expiration' in section 541(b)(2)('a lease of nonresidential real property that has terminated at the expiration of the stated term of such lease,') and section 362(b)(10)('a lease of nonresidential real property that has been terminated by the expiration of the lease,') would be superfluous."  *Id., citing,* 11 U.S.C. §§ 541(b)(2) and 362(b)(10).  Based on its examination of various dictionary definitions of the words "expire" and "terminate" as well as provisions of the Bankruptcy Code, the court in *Morgan* observed:

> The fact is that, while both terms denote an ending or cessation, they otherwise have distinct meanings.  To "expire" means "to come to an end," while the word "terminate" means "to bring to an end."

*Id., citing, Webster's II New Riverside University Dictionary* at 454 and 1194 (1988).

Derivatives of the words "expire" and "terminate" in the words "expiration" and "termination" reinforce this interpretation.  *In re Morgan,* 181 B.R. at 584.  The word "expiration" means "[t]he ending of a fixed period of time; esp. a formal termination on a closing date <expiration of the insurance policy>---Also termed *expiry*."  Black's Law Dictionary at 700; *see also, In re Morgan,* 181 B.R. at 584 (examining substantially identical definition in prior version of Black's Law Dictionary).  Black's Law Dictionary defines "termination" to mean:  "1. The act of ending something; EXTINGUISHMENT <termination of the partnership by winding up its affairs> . . . 2.  The end of something in time or existence; conclusion or discontinuance <the insurance policy's termination left the doctor without liability coverage> . . . ."  *Black's Law Dictionary* at 1700; *see also, In re Morgan,* 181 B.R. at 584 (examining substantially identical definition in prior version of

9

Black's Law Dictionary).   All of these definitions, both in a lay dictionary and in Black's

Law Dictionary, accord with general intuitions about the meanings of these words – to

"terminate" means to actively cause something to end while to "expire" means that

something has ended in its natural course.  *In re Morgan,* 181 B.R. at 583-584.  The

analysis of the words "expire" and "terminate" and their derivatives in *Morgan* is correct

and is supported by the implicit holdings of Ninth Circuit precedent in *Windmill Farms* and

*Cukierman* - that under 11 U.S.C. § 365 a trustee or debtor-in-possession may seek relief

from forfeiture in order to assume an unexpired lease that has been terminated under

state law.  Such assumption would not be possible if termination and expiration were

precisely synonymous.   As the court in *Morgan* observed, "[i]n common parlance, and

when used as terms of art as well, the word 'expired' denotes the natural or inevitable

end to a contract or lease, by lapse of time, while the word 'terminated' denotes the

unnatural or premature end to a contract or lease as the result of breach or forfeiture."

181 B.R. at 584.  To hold that these two words are interchangeable would frustrate the

purpose and effect of provisions of the Bankruptcy Code, such as § 365.  *Id.*  Thus,

based on the ordinary meanings of these words, the court concludes that the Master

Lease did not expire upon its termination and was not expired pre-petition, having not yet

reached the end date provided for in the Lease.

### c.  The Lease is Rejected upon Denial of the Lease Assumption Motion

As can be seen from the discussion above, the date of rejection of the lease is

determinative of the treatment of Landlord's claims under the lease.  11 U.S.C. § 365.

There is little clear guidance on the question of when is the date of rejection of a lease,

but decisions by the Ninth Circuit and other bankruptcy courts indicate that when a

trustee or debtor moves to assume a lease, the lease will be deemed rejected upon

denial of the motion.  For example, in *Cukierman,* the Ninth Circuit stated that the lease in

that case was rejected upon denial of the debtor's motion to assume.  *In re Cukierman*,

265 F.3d at 849 ("[debtor] moved to assume the lease, but the bankruptcy court denied

1   the motion in November 1993.  This amounted to a rejection of the lease, so the debtor's

2   obligations under the lease ceased at that point.")

3         Deeming a lease rejected upon denial of a debtor's motion to assume makes

4   sense given the underlying purpose of 11 U.S.C. § 365(d)(3) identified by the Ninth

5   Circuit in *In re Cukierman*.  In *Cukierman*, the Ninth Circuit quoted the legislative history

6   of § 365(d)(3) and determined that the purpose of § 365(d)(3) was to ensure "that

7   trustees promptly perform lease obligations."  *In re Cukierman*, 265 F.3d at 850-851.  To

8   deem the lease terminated and non-assumable pre-petition after denial of a lease

9   assumption motion would result in a "heads I win, tails you lose" proposition for a landlord

10  in facing a lease assumption motion in which either (1) the debtor succeeds in its lease

11  assumption motion; or (2) the lease assumption motion is denied, and the landlord's

12  claims are not accorded administrative priority status.  Such a result would contravene

13  the purpose of 11 U.S.C. § 365(d)(3) as identified by the Ninth Circuit in *Cukierman*, as

14  bankruptcy debtors would be able to delay performing lease obligations pending

15  resolution of a motion to assume, with the landlord left to render potentially

16  uncompensated services.  *Id.*  This is exactly the situation that *Cukierman* says that §

17  365(d)(3) was intended to remedy.  The Ninth Circuit in *Cukierman* specifically cited the

18  legislative history of § 365(d)(3) in a statement by Senator Hatch made in submitting the

19  conference report on the bill containing the language of § 365(d)(3), describing the

20  problem the statute is meant to address: "[T]he landlord is forced to provide current

21  services---the use of its property, utilities, security, and other services---without current

22  payment.  No other creditor is put in this position."  *In re Cukierman*, 265 F.3d at 851

23  (citing 130 Cong. Rec. S8887, 8895 (daily ed. June 29, 1984) (statement of Sen. Hatch),

24  reprinted in 1984 U.S.C.C.A.N. 576).  As summarized by the Ninth Circuit in *Cukierman*

25  regarding the purpose of 11 U.S.C. § 365(d)(3),

26        Congress made the provision for trustee compliance broad,
          extending it to cover all of the obligations under a lease.  A broad
27        interpretation of this provision is consistent with the purpose of §
          365(d)(3), which is to ensure immediate payment of lease obligations
28        so that the landlord is not left providing uncompensated services.

1  265 F.3d at 850-851.

2      Debtor and the Committee rely heavily on *In re Boll Weevil*, which is factually

3  similar to this case insofar as the debtor had a lease that terminated pre-petition and a

4  potential right to relief from forfeiture.  *In re Boll Weevil, Inc.*, 202 B.R. 762 (Bankr. S.D.

5  Cal. 1996).  The facts in *Boll Weevil* were that the debtor entered into a property lease

6  with a landlord.  *Id.* at 763.  Debtor also subleased the property to another party, and

7  after some time the sublessee and debtor as sublessor both failed to pay rent to the

8  landlord.  *Id.*  The landlord served a three-day notice to quit or pay rent, but again the

9  lessees failed to pay rent.  *Id.* at 764.  The landlord filed an unlawful detainer action, and

10  the debtor filed for bankruptcy before the unlawful detainer action went to trial in state

11  court.  *Id.*  The debtor received two extensions of time to assume or reject the lease, but

12  never actually moved to assume or reject the lease.  *Id.*  The landlord eventually obtained

13  relief from stay and continued its unlawful detainer action in state court.  *Id.*  The state

14  court ordered forfeiture of the lease and granted possession of the property to the

15  landlord. *Id.*  The bankruptcy court analyzed whether the landlord was entitled to a

16  §365(d)(3) claim from the petition date to the date the debtor was no longer able to obtain

17  relief from forfeiture under California Code of Civil Procedure § 1179 and ultimately held

18  that the landlord's claim for rent was not entitled to administrative priority because the

19  lease terminated under California law pre-petition.  *Id.* at 765.  In so holding, the court in

20  *Boll Weevil* stated, citing to *Robinson v. Chicago Housing Authority,* 54 F.3d 316, 320

21  (7th Cir.1995), that "[b]ankruptcy law makes no distinction between the words

22  'terminated' and 'expired' with respect to leases." Id. at 764.[4]  The *Boll Weevil* court cited

23  to *In re Windmill Farms* to show that state law governs whether a lease is "terminated" for

24  purposes of a lease assumption motion, but then went on to hold that "the date of

25  termination is governed by what actions are taken in state court."  *Id.* at 765.  But this

26  _____

27  [4]   In *Robinson*, the Seventh Circuit reached this conclusion with respect to a noncommercial residential
      lease, which is not the situation here involving a commercial nonresidential lease.

28

12

holding does not take into account the full impact of the decision in *Windmill Farms*,
which held that the bankruptcy court is required to determine if the lease termination
could be reversed under applicable state law.  *In re Windmill Farms, Inc.*, 841 F.2d at
1472.  The court recognizes that *Boll Weevil* does support the position of Debtor and the
Committee in arguing that Debtor does not have to pay rent as an administrative expense
claim for a lease terminated prepetition.

However, the court does not follow *Boll Weevil* because it is inconsistent with later
Ninth Circuit precedent, such as *Cukierman*, which hold that pursuant to 11 U.S.C. §
365(d)(3), a trustee or debtor-in-possession is obligated to pay rent as an administrative
expense for the post-petition period pending the assumption or rejection of a lease.  265
F.3d at 849.  As discussed above, the court concludes that *Boll Weevil* should not be
followed in part because it holds that bankruptcy law does not distinguish between
"expired" and "terminated" commercial leases, at least as they are discussed in 11 U.S.C.
§ 365(c)(3) and (d)(3), which is incorrect.  Moreover, regardless of the *Boll Weevil* court's
determination of the meaning of "terminated" and "expired" or its interpretation of
*Windmill Farms*,  that case is distinguishable factually because unlike here, the debtor did
not move to assume the lease and never attempted to obtain relief from forfeiture.  *See In
re Boll Weevil, Inc.,* 202 B.R. at 765.

As discussed above, the statutory purpose for 11 U.S.C. § 365(d)(3), as stated in
*Cukierman,* is to avoid forcing landlords to provide uncompensated services under a
lease which a debtor had not yet assumed or rejected.  265 F.3d at 850-851.  Here, until
the outcome of Debtor's motion to assume the lease is determined, Landlord is forced to
provide uncompensated services under the lease pending the assumption or rejection of
the lease, which is the situation covered by 11 U.S.C. § 365(d)(3).  *Id.*  Due to the
automatic stay, Landlord was not free to exercise its unfettered right under non-
bankruptcy state landlord tenant law to proceed in unlawful detainer in state court and
had to litigate its unlawful detainer claim before this court in connection with Debtor's
motion to assume the lease.  Thus, Landlord had to provide lease services to Debtor,

1   which it says was not fully compensated for as provided under the lease.  The statutory

2   purpose of § 365(d)(3) is best accomplished by determining that a lease is deemed

3   rejected upon denial of a motion to assume the lease.  In re Cukierman, 265 F.3d at 848.

4   In this case, the Master Lease was rejected upon the court's denial of Debtor's motion to

5   assume it.  Id.

6      **II.  Landlord Is Entitled to Immediate Payment of Outstanding Obligations**

7           **Arising Post-Petition as Required under 11 U.S.C. § 365(d)(3)**

8      **A.  Under 11 U.S.C. § 365(d)(3), Landlord Is Entitled to Payment of Holdover**

9           **Rent, Late Charges, Attorneys' Fees, and Replacement Parking Losses**

10          **Incurred by the Landlord, but Not Subtenant Rents**

11          The Ninth Circuit has held that any obligation of a debtor-in-possession under a

12  non-residential lease of real property, pending assumption or rejection of the lease,

13  whether or not related to debtor's use of the property, enjoys the administrative expense

14  status and right to prompt performance conferred by 11 U.S.C. § 365(d)(3).  *In re*

15  *Cukierman*, 265 F.3d at 850.  Section 365(d)(3) requires the payment of rent in the

16  *amount required by the lease* (not some other "fair value" amount based on the estate's

17  actual use and occupancy of the premises), *plus* all other obligations of the tenant debtor

18  under the lease (e.g., common area maintenance charges). 11 U.S.C. § 363(d)(3); *In re*

19  *Cukierman,* 265 F.3d at 850-851; *In re LPM Corp.*, 300 F.3d at 1137; *In re Pacific Atlantic*

20  *Trading Co.*, 27 F.3d at 404-405; Friedman, Garcia & Hagarty, *California Practice Guide:*

21  *Landlord-Tenant*, ¶ 10:253 (2014 online ed.).  Thus, a trustee or debtor-in-possession's

22  statutory obligation as tenant to timely perform its obligations under an unexpired

23  nonresidential lease extends to *all* obligations under the lease regardless of whether

24  those obligations are related to the debtor's use of the premises.  *In re Cukierman*, 265

25  F.3d at 850, *cited in* Friedman, Garcia & Hagarty*, California Practice Guide:  Landlord-*

26  *Tenant*, ¶ 10:253.  Debtor argues that Landlord's demand for immediate payment of

27  administrative rent is premature.  *Debtor's Opposition to Motion to Compel Immediate*

28  *Payments*, ECF 452 at 14.  But, as noted in the *Landlord's Motion to Compel Immediate*

*Payments*, 11 U.S.C. § 365(d)(3) as recognized in Ninth Circuit precedent of *Cukierman* requires the "immediate payment" of lease obligations pending assumption or rejection of a lease.  265 F.3d at 849-851.  As such, any argument by Debtor and the Committee that the payments due pursuant to 11 U.S.C. § 365(d)(3) need not be made immediately are unavailing.  *Id.*

In calling for "timely" payment, 11 U.S.C. § 365(d)(3) was intended to grant landlords preferential creditor treatment for their claims for payment of obligations under the lease while a determination of an assumption or rejection of a lease is pending.  *In re Cukierman, 265 F.3d at 846; In re Pacific Atlantic Trading Co.,* 27 F.3d at 403-404*;* Friedman, Garcia & Hagarty*, California Practice Guide:  Landlord-Tenant*, ¶ 10:261.  As such, a landlord's claim for pre-assumption/rejection payments is *automatically* entitled to "priority" status as against other administrative expense claimants.  *Id.* (citing *In re Pacific-Atlantic Trading Co.*, 27 F.3d at 404-405).  Thus, in determining Debtor's obligations under 11 U.S.C. § 365(d)(3), the court must decide whether such obligations include holdover rent, late charges, attorneys' fees, replacement parking losses as claimed by Landlord, or subtenant rents received by Debtor under the Lease as now claimed by Landlord in its motion.

1. <u>Debtor Is Obligated Under Section 21.2 of the Lease to Pay Holdover Rent</u>

Pending assumption or rejection of a lease, a debtor-in-possession must make rent payments at the *rate specified in the lease*, even if the fair market rental rate is lower.  11 U.S.C. § 365(d)(3); *see In re Pacific-Atlantic Trading Co.,* 27 F.3d at 402-403; *In re Cukierman*, 265 F.3d at 850.  Although 11 U.S.C. § 365 does not specify the consequences of the trustee's/debtor-in-possession's failure to perform postpetition obligations accruing under a lease pending assumption or rejection, case law has established that the lessor is entitled to an administrative claim at rate specified in the lease.  *In re Pacific-Atlantic Trading Co.*, 27 F.3d at 402-403.  The landlord's administrative expense claim is for the *full contract rental rate* (i.e., the rental rate stipulated in the lease).  *Id.* at 404; *see also,* Friedman, Garcia & Hagarty, *California*

*Practice Guide:  Landlord-Tenant*, ¶ 10:262.   Postpetition "rent" claims under § 365(d)(3) are entitled to administrative expense priority even if they exceed the reasonable value of the debtor tenant's actual use of the premises and are unrelated to the use and occupancy.   *Id.* at ¶ 10:261.

When the lease was terminated, Debtor became a tenant at sufferance.  *Colyear v. Tobiner,* 7 Cal. 2d 735, 742 (1936); Miller and Starr, *California Real Estate*, Tenancy at Sufferance, § 19:32 (3d ed. 2014 online ed.).  As Miller and Starr's *California Real Estate* observes*,*

> Tenancies at sufferance are not mentioned expressly in the Civil Code.  They arise when a tenant goes into possession lawfully, the right to remain in possession expires, and he or she continues to occupy the premises without the consent of the owner.

*Id., citing inter alia, Gartlan v, C.A. Hooper & Co.,* 177 Cal. 414, 425-426 (1918); *see also, id.,* Presumption of nature of holdover tenancy, §19:43 (a holdover tenant may become a tenant at will when the landlord acquiesces and consents to the holding over by accepting rent or otherwise, absent the agreement of the parties – here, in the lease, there is an express agreement for no consent to holdover).

In *Colyear v. Tobiner,* the California Supreme Court addressed whether a landlord can charge increased rent for a tenant holding over possession and held that in the absence of an agreement, only reasonable rental value for such tenant's use of the leased premises may be charged for the holdover period.  7 Cal. 2d at 742.  In discussing this point, the California Supreme Court stated:

> A tenant for a fixed term who holds over beyond the term after notice of increased rental, in the absence of express or implied assent thereto is not liable for the increased rent, but is a tenant at sufferance, who must pay the reasonable value of the use of such time as he holds over. [citations omitted] The tenancy at an increased rental cannot be imposed upon the lessee without his consent, but must rest upon agreement

*Id. Colyear* indicates that increased rent for a holdover tenant is not *per se* invalid or an unenforceable penalty, but is permissible by agreement or consent, and otherwise,

holdover rent should be reasonable value.  *Id.*   In the case at bar, the increased rental

rate for Debtor as a holdover tenant is by agreement as set forth in the lease.  Lease, §

21.2.

As discussed in Witkin's *Summary of California Law,* one California appellate court

has determined that a lease provision fixing a sum as holdover rent to be paid if the

tenant holds over after expiration of the lease is not treated as a penalty, though much

greater in amount than that previously specified.  1 Witkin, *Summary of California Law*

(10th ed. 2005 and 2013 Supp.), Contracts, § 520 at 99, *citing Vucinich v. Gordon,* 51

Cal. App. 2d 434, 437 (1942)).  In addressing the argument that holdover rent at an

increased rate was an unenforceable penalty, the court in *Vucinich* stated: "[The]

presence [of the holdover provision] in defendant's lease suggest no reason for holding

that the rental fixed for the season of the hold-over provided for a penalty."  *Id.* at 437.

The court in *Vucinich* reasoned that upon the termination of the lease, a tenant has no

further right to remain upon the property except as he might choose to do so as a tenant

and under the terms to which he had subscribed."  *Id.*  The holding in *Vucinich* reinforces

the point made in *Colyear* that holdover rent at a higher rate is not *per se* invalid, but may

be charged upon agreement of the parties as was the case here.

In the case at bar, Section 21.2 of the Lease provides:

> Tenant will not be permitted to hold over possession of the
> Premises after the expiration or earlier termination of the Term
> without the express consent of Landlord, which consent
> Landlord may withdraw in its sole and absolute discretion.  If
> Tenant holds over after the expiration or earlier termination of
> the Term with or without the express written consent of
> Landlord, then, in addition to all other remedies available to
> Landlord, Tenant shall become a tenant at sufferance only,
> upon the terms and conditions set forth in this Lease so far as
> applicable (including Tenant's obligation to pay all Additional
> Rent under this Lease), but at a Monthly Base Rent equal to
> one hundred fifty percent (150%) of the Monthly Base Rent
> applicable to the Premises immediately prior to the date of
> such expiration or earlier termination . . . "  Tenant shall be
> liable, and shall pay to Landlord within ten (10) days of
> demand, for all losses incurred by Landlord as a result of such
> holdover, and provided that Landlord has provided Tenant
> with no less than sixty (60) days prior notice that Landlord has
> a replacement tenant for the Building or any portion thereof,

> Tenant shall indemnify, defend and hold Landlord and the Landlord Parties harmless from and against all liabilities, damages, losses, claims, suits, costs and expenses (including reasonable attorneys' fees and costs) arising from or relating to any such holdover tenancy, including without limitation, any claim for damages made by a succeeding tenant accruing on the sixty-first (61st) day after Landlord provides such notice . . .

Lease, § 21.2.  As discussed in the court's prior memorandum decision on Debtor's motion to assume the lease, this lease was a commercial, nonresidential lease "'heavily negotiated by the Debtor and the Landlord, both of whom were represented by their respective experienced and sophisticated real estate counsel in connection with such negotiations' and 'numerous drafts of the lease were exchanged by the parties prior to its execution, which indicates the consensual nature of the provision in the lease for increased holdover rent.'"  *Memorandum Decision on Debtor's Request for Relief from Forfeiture and on Debtor's Motion to Assume the Master Lease on Premises at 5500 Wilshire Boulevard, Los Angeles, California,* entered on September 18, 2014, ECF 664 at 24, *citing inter alia,* Lease § 31.7 ("The parties hereto acknowledge and agree that each has participated in the negotiation and drafting of this Lease. . . .").

Landlord contends the outstanding incremental holdover rent as of May 6, 2014, is $981,000.  *Landlord's Proposed Findings of Fact and Conclusions of Law* ¶ 32.  Landlord computes this amount based on § 21.2 of the Lease.  Debtor does not object to this computation.  *See Debtor's Opposition to Motion to Compel Immediate Payments*, ECF 452 at 15-16.  While Debtor did not dispute Landlord's computation of holdover rent, it argues holdover rent is an unreasonable and unenforceable penalty set forth in the Lease which has no rational relationship to any actual damages sustained by Landlord. *Debtor's Proposed Findings of Fact and Conclusions of Law* ¶ 29.  Debtor further argues Landlord's demand for holdover rent arises from Debtor's failure to surrender possession of the Property after Landlord's early termination of the Lease, and thus, the holdover rent is a penalty resulting from a non-monetary default for not surrendering possession of the Property.  *Debtor's Proposed Findings of Fact and Conclusions of Law* ¶ 30.  Debtor also argues that holdover rent is not chargeable against the debtor pursuant to 11 U.S.C.

§ 365(d)(3), "because the only scenario where holdover rent may be charged (where the lease at issue has expired), is not governed by 11 U.S.C. § 365(d)(3), which merely requires payment of rent under the terms of the lease as unexpired."  *Debtor's Opposition to AERC Desmond's Tower, LLC's Motion to: (1) Compel Immediate Payment by Debtor of Outstanding Obligations to Landlord Pursuant to 11 U.S.C. § 365(d)(3); (2) Modify Adequate Protection Order Based on Debtor's Contempt of Court and Other Developments Subsequent to its Entry*, ECF 452 at 16 n. 6.  Debtor also contends that holdover rent and related charges are governed by 11 U.S.C. § 503(b)(1), not § 365(d)(3).  *Id.*

The court rejects Debtor's arguments because, as discussed above, this case concerns a terminated lease, which was unexpired at the time that Landlord's motion was filed.  The cases cited by Debtor and Creditors' Committee in support of the argument that holdover rent is governed by 11 U.S.C. § 503(b)(1) are inapposite because those cases involve post-rejection damages, and do not relate to the situation here where the holdover rent sought is postpetition and pre-rejection.  Debtor's arguments are also incorrect because they are contrary to the plain language of 11 U.S.C. §365(d)(3), in which "the 'notwithstanding section 503(b)(1)' proviso exempts the amount of lease obligations that a trustee must timely pay under § 365(d)(3) from § 503(b)(1)'s limitation of administrative expenses to the fair value of the debtor's use of the property."  *In re Cukierman*, 265 F.3d at 850.

In support of its argument that holdover rent is a penalty, Debtor relies heavily upon the cases of *In re RB Furniture, Inc.*, 141 B.R. 706 (Bankr. C.D. Cal. 1992) and *Harbor Island Holdings, LLC v. Kim,* 107 Cal. App. 4th 790 (2003).  However, *RB Furniture* is distinguishable from the case at bar because that case was not a holdover tenancy situation as it involved a post-petition default without a lease termination, whereas this case was a holdover situation involving a termination of a lease which occurred pre-petition.  In *RB Furniture,* the lessor and the debtor/tenant in that case agreed to renegotiate the lease and to abate past due rent, but the renegotiated lease

1   included a clause where a default and failure to cure by the debtor/tenant would result in

2   all of the abated rent coming due.  141 B.R. at 709.  The court determined that when the

3   debtor later defaulted and cured the default, the revived abated past due rent was a

4   penalty and was not required to be paid immediately pursuant to § 365(d)(3). *Id.* at 712.

5   The holdover rent provision in the Master Lease in this case materially differs from the

6   penalty provision in *RB Furniture* because the provision in *RB Furniture* required

7   significant payment by the tenant upon default, and did not allow the tenant to avoid the

8   effect of the provision by vacating the premises.  That is different from the case here,

9   where Debtor could avoid the increased holdover rent by vacating the Property.

10      *Harbor Island* is also distinguishable from the instant case because *Harbor Island*

11  also was not a holdover situation involving a tenant who stayed in possession after a

12  lease termination, but involved a lease amendment and extension with a penalty rate of

13  rent if the tenant defaulted on a contractual covenant to maintain and repair the premises.

14  107 Cal. App. 4th at 793-794.  In *Harbor Island,* the landlord and the tenant agreed to

15  amend the lease whereby the lease term was extended on condition that the tenant

16  agreed to increased rent under a two-tier system based on the tenant's performance of a

17  covenant to maintain and repair the premises, that is, for the extended term, the tenant

18  would be charged one rate for complying with the covenant and another rate for

19  noncompliance.  *Id.*  Under the lease amendment, he noncompliance rent for the

20  extended period was over three times the base rent of the original lease while the

21  compliance rent was only about 50% higher than the original base rent.  *Id.*   The way this

22  arrangement was structured was that the tenant would receive the compliance rental rate

23  by agreeing to the noncompliance rate, but would receive a "deferral" of the difference in

24  rates while in compliance, which would be "forgiven" if there was no covenant default.  *Id.*

25  The court in *Harbor Island* held that this was an unenforceable penalty to compel

26  performance of a contract covenant because the amount of liquidated damages fixed for

27  breach of the covenant bore no reasonable relationship to the landlord's damages for

28  breach.  107 Cal. App. 4th at 793-796.

Conceptually, *Harbor Island* and *RB Furniture* are similar because both forced the tenant to pay a large lump sum amount upon breach. That is the essence of a penalty. Although this sum was characterized as "rent," it functioned more as a penalty, and the courts in *Harbor Island* and *RB Furniture* recognized it as such.

This case is more similar to *Vucinich* than *Harbor Island* and *RB Furniture* because the purposes of the increased rent provisions are different. The holdover rent required under the Lease as in *Vucinich* is intended as payment for ongoing use of the property, not as a penalty or estimation of damages resulting from breach as in *Harbor Island*. There are no separate rates for the extended term based on breach or non-breach of lease covenants as in *Harbor Island*. Moreover, as in *Vucinich*, Debtor was at liberty to leave the premises in December 2012 following the termination of the Lease and would not have incurred the obligation to pay higher holdover rent for the months thereafter if it had vacated the premises. Thus, here, as in *Vucinich*, and consistent with *Colyear*, the holdover rent provision is not an unenforceable penalty.

Even assuming *arguendo* that the holdover rent provision in the lease is some form of liquidated damages as argued by Debtor and the Committee, the court notes that such a contractual provision is valid under California law as California Civil Code § 1671(b) provides, with exceptions not applicable here, that "a provision in a contract liquidating the damages for the breach of the contract is valid unless the parties seeking to invalidate the provision establishes that the provision was unreasonable under the circumstances existing at the time the contract was made." As the California Supreme Court has stated, "The amount set as liquidated damages 'must represent the result of a reasonable endeavor by the parties to estimate a fair average compensation for any loss that may be sustained.'" *Ridgley v. Topa Thrift & Loan Association*, 17 Cal.4th 970, 977 (1998)(citation omitted). Here, the holdover provision rent alleged to be a penalty is only 50% more than the Monthly Base Rent, which is reasonable in comparison to *Harbor Island Holdings*, where the amount of increased rent for breach of a lease covenant not relating to holdover was triple the standard rent. The reasonableness of the lease

provision for holdover rent of 50% increase over standard rate is further established by the fact that both parties have, at times, argued that the rental rate under the Lease is below fair market value.  *See Testimony of Douglas Chrismas, Trial Transcript,* August 19, 2013, ECF 332 at 190:11-15; *Memorandum of Points and Authorities in Support of Debtor's Request for Relief From Forfeiture in Furtherance of Debtor's Motion to Assume the Master Lease (NNN) Re 5500 Wilshire Boulevard, Los Angeles, California*, ECF 505 at 2:16; 6- 7; 12:25-13:1; *Landlord's Joint Opposition to Debtor's and Committee's Motions for an Order Granting Stay of Further Hearings on Remand Pending Appeals to the Ninth Circuit,* ECF 730 at 12:20-25.  If the rental rate under the lease is below fair market value, then a 50% increase is more likely to represent a "fair average compensation for any loss that may be sustained," and therefore would satisfy the reasonableness requirement of *Ridgley* to find that the provision is valid.

Section 21.2 of the Lease specifically applies following any expiration or earlier termination of the Lease where debtor holds over.  Because the agreement for holdover rent is part of the lease contract, pursuant to 11 U.S.C. § 365(d)(3), Debtor must make rent payments at the *rate specified in the lease* as held by the Ninth Circuit in *In re Pacific-Atlantic Trading Co.,* 27 F.3d at 402-403 and *In re Cukierman,* 265 F.3d at 850.

Citing *In re National Refractories & Minerals Corp.*, 297 B.R. 614 (Bankr. N.D. Cal. 2003), Debtor and the Committee finally argue that Landlord has no right to holdover rent, post-rejection, as an administrative expense claim. *Committee's Opposition to Motion to Compel Immediate Payments*, ECF 475 at 4-8.  However, the *National Refractories* case is inapplicable here because in that case the court carefully delineated between pre- and post-rejection claims, and awarded administrative expense priority status only to pre-rejection claims.  *Id.* at 620.  Here, Landlord's motion seeks holdover rent for post-petition and pre-rejection occupancy, not post-rejection, and following the law of the circuit in *In re Pacific Atlantic Trading Co.*, Landlord is entitled to an administrative expense claim for the full amount of rent during the pre-rejection period. 27 F.3d at 405; *accord, In re National Refractories & Minerals Corp., 297* B.R. at 617.

Therefore, the court determines that even assuming *arguendo* that the holdover rent provision is a liquidated damages provision, the provision for the payment of holdover rent in the Lease is not an unenforceable penalty, and that Debtor is obligated to pay holdover rent as part of its outstanding obligations due  pursuant to 11 U.S.C § 365(d)(3). Although Debtor argues that it cannot be considered a "holdover tenant" from the date of the entry of this court's Lease Assumption Order in September 2013 through January 6, 2014, the date of entry of the District Court Judgment, *Debtor's Proposed Findings of Fact and Conclusions of Law* ¶ 12, this court rejects Debtor's argument that the uncertainty over the lease termination issues precludes payment of its outstanding obligations under 11 U.S.C. § 365(d)(3).  If a termination is valid, the lease is terminated under California law when landlord, after complying with appropriate statutory notice requirements, files unlawful detainer action in state court; termination of lease does not occur only when there has been final judicial determination of validity of termination.  *See Matter of Escondido West Travelodge*, 52 B.R. 376, 379 (S.D. Cal. 1985).  Thus, the uncertainty over lease termination does not affect the outcome of whether holdover rent is due under the Lease from the date of the petition.

Lastly, this court notes that it has not been asked to decide whether amounts of holdover rent which Debtor is required to pay under 11 U.S.C. § 365(d)(3) is entitled to "super-priority" status, and thus does not express any opinion on such.  *See In re LPM Corp.*, 300 F.3d at 1137-1338. In addition, the parties in this case do not argue that there are not enough assets to pay all administrative claims, including any claim under 11 U.S.C. § 365(d)(3), and as such, this court does not need to go into an analysis of whether Landlord can compel immediate payment of outstanding obligations where a debtor is administratively insolvent.   Accordingly, the court holds that the holdover rent for the period after the petition date and prior to the deemed rejection of the Lease upon entry of the court's October 27, 2014, *Order and Judgment Denying Debtor's Request for Relief from Forfeiture and Denying Debtor's Motion to Assume the Master Lease on Premises at 5500 Wilshire Boulevard, Los Angeles, California* is outstanding under the

lease as claimed by Landlord and must be paid by debtor as a claim for immediate payment within the meaning of 11 U.S.C. § 365(d)(3).

>       2.  <u>Debtor Is Obligated Under Section 5.3 of the Lease to Pay Late Charges on Incremental Holdover Rent</u>

Section 5.3 of the Master Lease provides:  "If Landlord does not receive Rent or any other payment due from Tenant on this Due Date, then following ten (10) business days notice to Tenant (and Tenant's failure to pay within such ten (10) business days), Tenant shall pay to Landlord a late charge equal to six percent (6%) of such past due Rent or other payment . . . All interest, and any late charges imposed pursuant to this Section 5.3, shall be considered Additional Rent from Tenant to Landlord under the terms of this Lease."  Lease, § 5.3.

Landlord contends the outstanding late charges on incremental holdover rent as of May 6, 2014, is $58,860.  *Landlord's Proposed Findings of Fact and Conclusions of Law* ¶ 32.  Landlord has computed this amount based on § 5.3 of the Lease.  Debtor's position remains that Landlord is not entitled to any holdover rent from Debtor, any late charge, or any other penalties.  *Debtor's Supplemental Brief in Opposition to AERC Desmond's Tower, LLC's Motion to: (1) Compel Immediate Payment by Debtor of Outstanding Obligations to Landlord Pursuant to 11 U.S.C. § 365(d)(3); and (2) Modify Adequate Protection Order Based on Debtor's Contempt of Court and Other Developments Subsequent to its Entry*, ECF 479 at 5.  However, Debtor did not object to Landlord's computation of the holdover rent.  *See Debtor's Opposition to Motion to Compel Immediate Payments*, ECF 452 at 14-16.

Because, as discussed above, 11 U.S.C. § 365(d)(3) requires the payment of rent in the *amount required by the lease*, and late charges were contemplated in the Lease as provided in Section 5.3, Debtor must make late charge payments at the rate specified in the Lease.  *In re Cukierman*, 265 F.3d at 850-851.  Accordingly, late charges for the period after the petition date and prior to the deemed rejection of the Lease upon entry of the court's October 27, 2014, *Order and Judgment Denying Debtor's Request for Relief*

*from Forfeiture and Denying Debtor's Motion to Assume the Master Lease on Premises*

*at 5500 Wilshire Boulevard, Los Angeles, California* remain outstanding under the lease

and must be paid by debtor pursuant to 11 U.S.C. § 365(d)(3) as an administrative claim.

       3.  <u>Landlord Is Entitled to Payment of Attorneys' Fees Under Section 16.2 of</u>

          <u>the Lease</u>

11 U.S.C. § 365(d)(3) is not limited to the payment of rent – it also extends to most

other contractual obligations under a nonresidential real property lease,  e.g. repair

maintenance, taxes and attorney fees. *3 March, Ahart, & Shapiro, California Practice*

*Guide:  Bankruptcy*, ¶ 16:1130 (2013), citing*, In re Cukierman*, 265 F.3d at 852 (dictum

stating that 11 U.S.C. § 365(d)(3) may give Landlord the right to immediate payment of

attorney fees as administrative expense (but fees not granted under facts of case)).   As

such, the Ninth Circuit has recognized at least in dicta that attorneys' fees and expenses

may be subject to immediate payment under 11 U.S.C. § 365(d)(3). *In re Cukierman*,

265 F.3d at 852.  Although the Ninth Circuit in *Cukierman* did not ultimately reach the

question of attorneys' fees being part of a lease obligation requiring immediate payment

under 11 U.S.C. § 365(d)(3) because the contractual obligation to pay attorney's fees had

not yet arisen at the time the lease was rejected, this court in *In re Leather Factory Inc.*,

475 B.R. 710, 719-720 (Bankr. C.D. Cal. 2012) subsequently held that attorneys' fees

payable under a lease are subject to immediate payment under 11 U.S.C. § 365(d)(3).

*Id*. (holding that a landlord's attorneys' fees are entitled to payment under 11 U.S.C. §

365(d)(3)).

However, 11 U.S.C. § 365(d)(3) applies only to the trustee's or debtor-in-

possession's obligations arising under the lease until it is assumed or rejected. *See*

Friedman, Garcia & Hagarty*, California Practice Guide: Landlord-Tenant*, ¶ 10:261.

Thus, Landlord is entitled to treatment of its claims of attorney fees incurred in dealing

with the tenant debtor's failure to meet its pre-rejection obligations under the lease as a §

363(d)(3) claim only if the obligation to pay the landlord's attorneys' fees arises under the

terms of the lease at the time the lease is assumed or rejected. *Id.*

Section 16.2 of the Lease provides: "Tenant shall be liable for, and shall indemnify, defend, protect, and hold Landlord and the Landlord Parties harmless from and against, any and all claims, damages, judgments, suits, causes of action, losses, liabilities, and expenses, including without limitation, attorneys' fees and court costs . . . arising or resulting from . . . (b) any act or omission of Tenant . . . (d) any default by Tenant as to any obligations on Tenant's part to be performed under the terms of this Lease  or the terms of any contract or agreement to which tenant is a party or by which is bound, affecting the lease or the premises including without limitation a violation of section 20.7 . . ." Lease, § 16.2 (emphasis added).  Landlord contends that it paid attorneys' fees and costs to enforce the Lease through March 31, 2014 in the amount of $1,717,020.88.  *Landlord's Proposed Findings of Fact and Conclusions of Law* ¶ 32. Landlord explicitly represents that it is not seeking attorneys' fees under the prevailing party provisions of Section 31.5 of the Lease.  *Landlord's Proposed Findings of Fact and Conclusions of Law* ¶ 133 n. 33.  Debtor contends Landlord is not entitled to recover its attorneys' fees and costs pursuant to Section 16.2 of the Lease.  *Debtor's Proposed Findings of Fact and Conclusions of Law* ¶ 33.  Specifically, Debtor and the Committee have argued that this provision only applies to "third party claims" brought against the landlord.  *Supplemental Brief of Official Committee of Unsecured Creditors Regarding: (A) Debtor's Request for Relief from Forfeiture of master Lease with AERC's Desmond's Tower, LLC; and (B) AERC Desmond's Tower, LLC's "Motion to: (1) Compel Immediate Payment by Debtor of Outstanding Obligations to Landlord Pursuant to 11 U.S.C. § 365(d)(3); (2) Modify Adequate Protection Order Based on Debtor's Contempt of Court and Other Developments Subsequent to its Entry*, ECF 565 at 12-13.

The language of Section 16.2 of the Lease is not so limited by the express terms of the Lease, and this provision applies to "direct" claims, thus specifically providing for payment of damages resulting from the tenant's default, and by its terms, is not limited to "third party claims."  There is no language in Section 16.2 that limits Landlord's claims for attorneys' fees to third party claims only.  In contrast, Section 16.3, the provision in favor

of Debtor as tenant, appears to be limited to third party claims.  In interpreting the lease, the court must interpret the Lease as a contract in accordance with the rules of contractual interpretation under applicable California law.  Specifically, California Civil Code § 1638 provides: "The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity."  *See also, Pierce v. Merrill*, 128 Cal. 464, 472 (1900); *Apra v. Aureguy*, 55 Cal. 2d 827, 830 (1961); *1 Witkin, Summary of California Law, Contracts*, § 741 (Nature of Interpretation) (10th ed. 2005 and 2014 Supp.).  The language of these attorneys' fee provisions in the Lease here is clear and unambiguous in awarding attorneys' fees to Landlord in a broader range of situations than it would to Debtor.  While these provisions may seem imbalanced, they are not absurd and must be interpreted as they are written.  Furthermore, under California law, "indemnity" is not limited to third party claims, and can also apply to direct claims and losses resulting from a breach of contract.  *Zalkind v. Ceradyne, Inc.*, 194 Cal. App. 4th 1010, 1026 (2011).

All of the fees requested by Landlord in its motion were incurred and billed after the petition date and before the deemed rejection of the premises, and are thus recoverable as an obligation under the Lease pursuant to 11 U.S.C. § 365(d)(3). Accordingly, because the court determines that attorneys' fees incurred by Landlord on Debtor's default under the Lease are included in Debtor's outstanding obligations under 11 U.S.C. § 365(d)(3), the court must determine the reasonableness of the attorneys' fees sought by Landlord.

a.    Landlord's Requested Attorneys' Fees Are Reasonable Under California's "Lodestar" Analysis

California law applies here because the Master Lease is governed by California law. Master Lease § 31.2 ("This lease shall be governed by, and construed pursuant to, the laws of the state in which the Building is located.") The Supreme Court of California has stated that a trial court has broad authority to determine the amount of reasonable attorneys' fees under a contract.  *PLCM Group, Inc. v. Drexler*, 22 Cal.4th 1084, 1095

(2000).  A "fee setting inquiry in California ordinarily begins with the "lodestar," i.e. the

number of hours reasonably expended multiplied by the reasonable hourly rate." *Id*.   The

lodestar figure may be adjusted based on factors specific to the case.  *Id*.  The factors

considered can include "the nature of the litigation, its difficulty, the amount involved, the

skill required in its handling, the skill employed, the attention given, the success or failure,

and other circumstances in the case."  *Id*. at 1096, citing *Melnyk v. Robledo*, 64

Cal.App.3d 618, 623-624 (1976). Given the complexity of this case, which required

multiple supplemental briefings and hearings, as well as the obvious attention and skill

applied by all parties involved in this litigation, the court cannot apply a negative multiplier

to the lodestar in this case, especially considering the result achieved by Landlord's

counsel.  The court also takes into consideration, in determining whether to apply a

negative multiplier to the lodestar as applied to the entire request for fees, Landlord's

counterpoint that Debtor's counsel had incurred approximately $2 million in fees as of

March 18, 2014. *Landlord's Response to Debtor's Specific Objections*, ECF 554 at 4

(citing *Debtor's Disclosure Statement*, ECF 492 at 17).  Given the comparably high fees

incurred by Debtor's counsel and counsel for the Committee on the other side of this

litigation, it is difficult to say that Landlord's attorneys' fees are inherently unreasonable.

    This is not intended to be an approval of the amount of fees incurred by any of the

firms involved in this case.  In fact, the court is currently undertaking its independent

evaluation of the interim fee applications by the attorneys for Debtor and the Committee

(requesting $1,968,062.00 and $1,183,726.30 in fees, respectively), and is somewhat

astonished by the sheer amount of fees and costs that will ultimately paid out of the

property of the estate in this case. That being said, the court acknowledges that there are

significant money and property interests at stake in this case, and that both sides have

vigorously and ably litigated very difficult and thorny legal and evidentiary issues raised

by these disputes.

    Landlord seeks attorneys' fees in the amount of $1,717,020.88.  *Landlord's*

*Proposed Findings of Fact and Conclusions of Law* ¶ 32.  Landlord provided

substantiation of its claimed fees in the form of copies of invoices for post-petition

lodestar fees and expenses incurred by its counsel, the law firm of Jones Day, for the

period July 31, 2013 through December 31, 2013. *Declaration of Sidney P. Levinson in*

*Support of Motion to: (1) Compel Immediate Payment by Debtor of Outstanding*

*Obligations to Landlord Pursuant to 11 U.S.C. § 365(d)(3); (2) Modify Adequate*

*Protection Order Based on Debtor's Contempt of Court and Other Developments*

*Subsequent to its Entry* (the "Levinson Declaration"), ECF 441, Exhibit B. Landlord also

submitted copies of invoices for post-petition fees and expenses for the services of

Stutman, Treister & Glatt (the "Stutman Firm") through December 31, 2013, in the

amount of $876,491.27, and copies of invoices for post-petition fees and expenses for

the services of Elkins Kalt Weintraub Rebuen Gartside LLP from February 19, 2013

through December 31, 2013, in the total amount of $8,563.28. *Levinson Declaration,*

*ECF 441*, Exhibits C-D.

Pursuant to this court's scheduling order of April 4, 2014, Debtor and the Creditors'

Committee filed and served detailed objections to Landlord's requested attorneys' fees

and expenses. Landlord then filed and served a response to the objections. *Scheduling*

*Order on AERC Desmond's Tower, LLC's Motion to: (1) Compel Immediate Payment by*

*Debtor of Outstanding Obligations to Landlord Pursuant to 11 U.S.C. § 365(d)(3); (2)*

*Modify Adequate Protection Order Based on Debtor's Contempt of Court and Other*

*Developments Subsequent to its Entry*, ECF 518 (the "Scheduling Order").

Debtor in its objections argued that the aggregate amount of Landlord's attorneys'

fees incurred is on the whole unreasonable. *Debtor's Specific Objection to Landlord's*

*Request for Legal Fees*, ECF 529 at 3. Debtor contends the point of the objections was

not to challenge whether work was performed, or a task should have been completed in a

shorter period of time, or even whether an hourly rate is appropriate, but whether the

legal issues and circumstances warranted Landlord's expenditure of more than

$2,000,000 in attorneys' fees in opposition to Debtor's efforts at assumption of the Master

Lease. *Id*. Debtor also objects to certain categories of work performed on behalf of

Landlord not related to the Lease Assumption Motion.  *Id.* at 4.  Finally, Debtor objects to

Landlord's claimed fees on grounds that excessive time was incurred by non-attorneys

billing for purely administrative work, the invoices include time spent on landlord's

unrelated work (such as time spent objection to Debtor's DIP Financing Motion and

certain of Debtor's Motions to Extend the Exclusivity Dates), the invoices include time

relating to the parking dispute, and a number of entries which are unclear.  *Id.* at 7-8.  In

total, Debtor requests the court exclude from any fee award the aggregate sum of

$444,722.50.  *Id.* at 9.  The Creditors' Committee filed a joinder in support of debtor's

objections.  *Joinder of Official Committee of Unsecured Creditors in "Debtor's Specific*

*Objections to Landlord's Request for Legal Fees,"* ECF 531.

        In its reply to these objections, Landlord argues that Debtor is wholly to blame for

the attorneys' fees and expenses incurred by Landlord in enforcing its rights under the

Lease, the attorneys' fees and expenses incurred by Landlord are no greater in amount

than those incurred by Debtor and Committee, Landlord's claim for attorneys' fees are

reasonable under a lodestar analysis, Landlord is entitled to recover attorneys' fees for all

categories of work, and reasonable attorneys' fees also include paralegal services.

*Landlord's Response to Debtor's Specific Objections to Landlord's Request for Legal*

*Fees*, ECF 429 at 1-9.  Landlord subsequently provided further documentation to

substantiate its claim of attorneys' fees and expenses in the form of copies of invoices for

post-petition lodestar fees and expenses incurred by Jones Day for the period January 1,

2014 through March 31, 2014, in the total amount of $407,052.58.  Landlord asserts that

Jones Day agreed to limit or condition Debtor's obligations to pay certain of those

amounts, and that for the same period, Landlord has paid $273,240.23 to Jones Day on

account of such fees and expenses.  *Supplemental Declaration of Sidney P. Levinson in*

*Support of Landlord's Combined Brief Addressing Supplemental Issues on Remand and*

*Motion to: (1) Compel Immediate Payment by Debtor of Outstanding Obligations to*

*Landlord Pursuant to 11 U.S.C. § 365(d)(3); and (2) Modify Adequate Protection Order*

*Based on Debtor's Contempt of Court and Other Developments Subsequent to its Entry*,
ECF 567, Exhibit A.

      1.    "Administrative" Paralegal Work is Compensable

Debtor objects to some fees incurred by Jones Day for "administrative work." In
support of that objection, Debtor attaches Exhibit "1," which interposes objections to
specific billing entries based on the general objection that "administrative work" is not
compensable. *Debtor's Specific Objections*, ECF 529.  The court finds that Mr.
Levinson's testimony at trial on May 7, 2014, satisfactorily explains the nature and
purpose of such fees incurred for paralegal services which were necessary to support the
litigation and shows that the fees were generally reasonable and at lower cost compared
with attorney rates. *Transcript of Proceedings on May 7, 2014*, ECF 596 at 118-148.
The court also finds that fees incurred by paralegals here are not non-compensable
"overhead," but are necessary legal work. *See U.S. Trustee Guidelines for
Compensation*, 28 C.F.R. Part 58, Appendix (defining overhead to include "word
processing, proofreading, secretarial and other clerical services"); *In re Pacific Express,
Inc.*, 56 B.R. 859, 863 (Bankr. E.D. Cal. 1985).  As such, the court overrules Debtor's
objections to fees incurred by Jones Day for paralegal services, though the court
disallows some of these claimed fees as specified below.

      2.    All Fees Are Compensable, Not Only Those Related to the Lease
Assumption Motion

Debtor objects to all fees related to work not associated with the Lease
Assumption Motion.  Exhibit "2" interposes objections to specific billing entries based on
that objection.  Exhibit "4" similarly interposes specific objections to billing entries that are
related to the dispute over parking. *Debtor's Specific Objections*, ECF 529.

The court determines that Landlord's incurrence of attorneys' fees and expenses
to enforce its rights against Debtor upon its default under the Lease was within Landlord's
reasonable business judgment, and Debtor's argument that the aggregate amount of

1  Landlord's claimed professional fees and expenses are unreasonable *per se* should be

2  rejected.

3          Debtor's argument that categories of work not related to the Lease Assumption

4  Motion are not recoverable should also be rejected because the express language of

5  Section 16.2 of the Lease entitles landlord to recover "all . . . losses  . . . and expenses,

6  including, without limitation, attorneys' fees and court costs . . . arising or resulting from

7  … any default by Tenant."  Lease, § 16.2 (emphasis added).  Thus, Landlord is entitled

8  under the express terms of the Lease to recover fees of its legal professionals incurred

9  not just for responding to the Lease Assumption Motion, but for fees arising or resulting

10  from Debtor's default under the Lease, including such categories of work billed for

11  bringing its motion for relief from the automatic stay and in opposing Debtor's motion to

12  incur post-petition financing.

13          3.        Landlord Has Adequately Explained, or Withdrawn, Impermissibly Vague

14  Billing Entries

15          Debtor objects to some fees based on vague or unclear billing entry task

16  descriptions.  Exhibit "3" interposes objections to specific billing entries based on this

17  objection.  *Debtor's Specific Objections*, ECF 529.  The court finds that Mr. Levinson's

18  testimony at trial on May 7, 2014, satisfactorily explains the nature and purpose of such

19  fees incurred for any alleged unclear entries to show that the fees were generally

20  reasonable.  *Transcript of Proceedings on May 7, 2014*, ECF 596 at 118-148.  As such,

21  the court overrules Debtor's objections to fees incurred by Jones Day for allegedly

22  unclear invoice entries, though the court disallows some of these claimed fees as

23  specified below.

24          Landlord has withdrawn certain of its claimed fees based on billing entries

25  discussed at the hearing on May 7, 2014, which the court disallowed on the record.

26  *Transcript of Proceedings on May 7, 2014*, ECF 596 at 147:

27          a)        1.3 hours by MJ Haas for "Attention to litigation."  *Levinson Declaration* at

28  Ex. B pg. 24 of 250.

1      b)     1.5 hours by MC Schneidereit for "Research objection to bill of costs."

2 *Levinson Declaration* at Ex. B pg. 58 of 250.

3      c)     0.8 hours by MC Schneidereit for "Distribute designations" *Levinson*

4 *Declaration* at Ex. B pg. 17 of 250.

5      d)     0.3 hours by MC Schneidereit for "Review motion to dismiss" *Levinson*

6 *Declaration* at Ex. B pg. 69 of 250.

7      Because there is no indication on the billing invoices as to the hourly rate of MJ

8 Haas, a partner at the Jones Day law firm, the hourly rate of MJ Haas was estimated for

9 calculation purposes to be the sum of $900 per hour because the hourly rate of Mr.

10 Levinson is $900 per hour.  Thus, the court disallows the fees delineated above,

11 $1,170.00 for MJ Haas, and $1,820.00 for Mr. Schneidereit, for a deduction of the total

12 sum of $2,990.00, based on vague, insufficient description of the work performed.

13      4.     Fees Expended by the Stutman Firm are Compensable

14      Debtor objects to fees incurred by the Stutman, Treister & Glatt (the "Stutman

15 Firm"), both because Debtor argues Stutman's fees unrelated to the Lease Assumption

16 Motion are not compensable, and because it questions "whether the Landlord has even

17 paid the Stutman firm for any of the work outlined in Exhibit '5.'"  *Debtors Specific*

18 *Objections*, ECF 529 at 6:13-24.

19      With respect to Debtor's specific objections to the fees incurred by the Stutman

20 Firm, the court notes that Debtor objects to the majority of work performed by that firm on

21 the basis that its services were not related to the Lease Assumption Motion, and thus

22 contends the aggregate sum of $369,437.50 should be excluded from any award to

23 Landlord.  *Debtor's Specific Objection to Landlord's Request for Legal Fees*, ECF 529 at

24 6.  Debtor further argues that no award should be made because there is no showing that

25 Landlord has paid the Stutman Firm for any of the claimed work.  *Id*.  Landlord

26 satisfactorily addresses this concern in its response to debtor's objections, stating that

27 "Landlord has in fact paid all of Stutman's fees."  *Landlord's Response to Debtor's*

28 *Specific Objections to Landlord's Request for Legal Fees*, ECF 554 at 8-9.  Based on the

reasoning outlined above that Landlord is entitled to fees arising from Debtor's lease default, the court determines that Landlord may recover fees for work performed by the Stutman Firm on its behalf arising or resulting from Debtor's lease default, and not just for work relating to Debtor's Lease Assumption Motion.  Accordingly, the court overrules debtor's objections to the fees incurred by the Stutman Firm.

5.    Disallowed Fees

a)    Unnecessary Time Billed for Associates Attending Trial

The billing entries and time charged for associates attendance at trial appears to be duplicative and unnecessary because the court determines it was not reasonable or necessary to have two attorneys, both Mr. Levinson, a Jones Day partner, and an associate attorney, attend trial when only Mr. Levinson participated in proceedings and it appears that it was unnecessary to have two attorneys present where one, Mr. Levinson, was fully capable of handling the proceedings and the other's presence was duplicative. Thus, the court disallows the attorneys' fees relating to the associate's attendance at trial of 42.5 hours at the rate of $700 per hour, for a reduction of the total sum of $29,750.00.

b)    Negative Lodestar Multiplier for Associates

In setting the appropriate lodestar rate, the court must determine the "reasonable hourly rate." *PLCM Group, Inc. v. Drexler*, 22 Cal.4th at 1095.  The lodestar figure may be adjusted based on factors specific to the case.  *Id*.  The factors considered can include "the nature of the litigation, its difficulty, the amount involved, the skill required in its handling, the skill employed, the attention given, the success or failure, and other circumstances in the case."  *Id*. at 1096, *citing Melnyk v. Robledo*, 64 Cal.App.at 623-624.  The court finds that $700 per hour for an associate attorney is not reasonable in this case, given the nature of the work performed.  In making this finding, the court takes into account the substantial supervision of the associate, Mr. Schneidereit, undertaken by Mr. Levinson, the partner, particularly at trial.  The associate's work at trial, for example, consisted of note-taking and providing support for Mr. Levinson, who conducted the examination of witnesses and made the oral arguments on matters before the court.  This

was consistent with the overall pattern in this case that Mr. Levinson was primary counsel

for Landlord and handled all of the appearances on any matter of any consequence in

this case.  The associate on several occasions appeared for Landlord on his own in court

on very minor matters, but in such instances, Mr. Levinson generally appeared by

telephone and intervened and took over the argument when Landlord's position was in

jeopardy due to argument of opposing counsel and questions of the court, which

indicates to the court that his appearances to argue in court were more of a training

exercise rather than of a substantive nature.  This indicates to the court that for the most

part, Mr. Levinson could have handled the representation of Landlord by himself with

some litigation support from the associate and the paralegal.  Given the associate's

subordinate and supportive role in this case, the court finds that his appropriate billing

rate is $500 per hour, which is in line with the associate rates charged by Debtor and

Committee's counsel as prevailing market rate, and that it is not appropriate, particularly

in a fee-shifting situation as this one, to allow a premium rate of $700 per hour for his

services as an associate attorney in a junior role in the litigation and that therefore,

reasonable compensation at $500 per hour reflects the market rate for this attorney in

this court's judgment.  The court may rely on its own expertise and other factors in

determining the market rate for professionals in its jurisdiction.  *In re Narragansett*

*Clothing Co.*, 210 B.R. 493, 499 (1st Cir. BAP 1997) (citing cases); *see also, First Interim*

*Fee Application of Debtor*, ECF 723 at 451 (listing associate hourly rate at $430-465);

*First Interim Fee Application of Committee*, ECF 727, Exhibit 15 (listing associate hourly

rate at $460-490).

    After deducting the 42.5 hours incurred by the associate attending trial, and the

2.6 hours of unclear billing entries withdrawn by Mr. Levinson, the associate worked

560.9 hours on this case. Levinson Declaration, ECF 441 Ex. B at 4, 48, 57, 64, 77, 88,

104, and 112.  At $700 per hour this amounts to $392,630.00.  At $500 per hour this

amount is reduced to $280,450.00.  The difference is $112,180.00.  The fees awarded to

Landlord are therefore reduced by $112,180.00.

c)    Unnecessary Time Billed for Mr. Floyd Attending Trial

The fees for time charged for the trial attendance of Mr. Floyd, a Jones Day paralegal, also appear to the court to be unreasonable and unnecessary. Debtor specifically objected that "it was unnecessary to have a team of 7 or 8 people including this paralegal, four attorneys from Jones Day and two partners from Stutman who sat in the audience attend trial." *Debtor's Specific Objection to Landlord's Request for Legal Fees*, ECF 429, Exhibit 1 at page 29 of 250. The court agrees with Debtor's concern and objection about entourage trial attendance by Landlord's counsel and notes that although paralegal fees are awardable as contributions to the work product for which an attorney bills a client, the time billed by Mr. Floyd for attending trial did not contribute to any work product which could be reasonably charged to Debtor. Thus, the court disallows the fees relating to Mr. Floyd's attendance at trial of 29.0 hours at the rate of $275 per hour, for a deduction of the total sum of $7,975.00.

b.    Conclusion

For the foregoing reasons, the court determines that fees of $1,717,020.88 reduced by the specifically disallowed fees of $152,895.00, for a total of $1,564,125.88, to be reasonable fees incurred by Landlord through March 31, 2014 for purposes of 11 U.S.C. § 365(d)(3). The court has considered Debtor's specific objections and finds justifiable the remainder of the fees for services reflected on the billing entries for counsel for Landlord. Accordingly, the court concludes attorneys' fees of $1,564,125.88 must be paid by debtor under 11 U.S.C. § 365(d)(3) as an administrative claim for pre-rejection rent.

4.    Debtor is Obligated to Pay Landlord's Replacement Parking Costs and Reimburse Landlord for Debtor's Collection of Parking Proceeds

Landlord asserts an administrative expense claim for the *full amount of all other obligations* under the lease. *In re TreeSource Industries, Inc.,* 363 F.3d 994, 997-998 (9th Cir. 2004); *In re Cukierman*, 265 F.3d at 850; *see also,* Friedman, Garcia & Hagarty, *California Practice Guide:  Landlord-Tenant,* ¶ 10:262. If an unassumed and unexpired

lease requires the lessor to provide services and supplies incidental to the lease (e.g., janitorial services) and the lease is in default, the lessor need not provide the services or supplies unless the trustee or debtor-in-possession compensates the lessor for those services and supplies.  *See 3 March, Ahart, & Shapiro, California Practice Guide: Bankruptcy*, ¶ 16:1101, *citing* 11 U.S.C. § 365(b)(4); *In re Monarch Capital Corp.*, 163 B.R. 899, 907 (Bankr. D. Mass. 1994).  The requirement that the debtor-in-possession compensate a lessor for supplies and services if the lease is in default extends to lease of personal property as well as real property and to residential as well as nonresidential leases.  *3 March, Ahart, & Shapiro, California Practice Guide:  Bankruptcy*, ¶ 16:1103; see 11 U.S.C. § 365(b)(4).  Here, Exhibit C of the Master Lease, ¶ 11 provides: "If the Lease terminates for any reason whatsoever, Tenant's right to park in the parking facilities shall terminate concurrently herewith."  *Lease*, Exhibit C.

Landlord contends that it is entitled to reimbursement for replacement parking costs through April 30, 2014, in the amount of $260,220.76.  *Landlord's Proposed Findings of Fact and Conclusions of Law* ¶ 32; *Declaration of Lou Fatica in Support of Motion to Compel Immediate Payments,* ECF 442; *Supplemental Declaration of Lou Fatica re: Replacement Parking Costs*, ECF 568 at 1.  Landlord contends Debtor's collection of parking revenue is $117,463.19.  *Landlord's Proposed Findings of Fact and Conclusions of Law* ¶ 32.  Landlord asserts this amount has not been disputed by Debtor and must be paid by debtor to Landlord as compensation for Debtor's breach of the lease.  *Landlord's Proposed Findings of Fact and Conclusions of Law* ¶ 116.  In response, Debtor asserts that Landlord is not entitled to recover any costs associated with replacement parking, which is an obligation of Landlord under the Master Lease. *Debtor's Proposed Findings of Fact and Conclusions of Law* ¶ 34.

Debtor contends that the amount and adequacy of the replacement parking provided by Landlord is an issue, and requested Landlord to provide back-up documentation for costs incurred in providing Debtor with replacement parking, and copies of any complaints received from tenants of the Wilshire Property with respect to

the adequacy of the replacement parking provided by Landlord.  *Joint Status Report Pursuant to Order on AERC Desmond's Tower, LLC's Motion to: (1) Compel Immediate Payment by Debtor of Outstanding Obligations to Landlord Pursuant to 11 U.S.C. § 365(d)(3); (2) Modify Adequate Protection Order Based on Debtor's Contempt of Court and Other Developments Subsequent to its Entry and Setting Further Proceedings*, ECF 512 at 7.  Landlord argued that any alleged inadequacy with respect to the quality of the replacement parking provided by Landlord is irrelevant to determination of Debtor's obligation to reimburse Landlord for the costs actually incurred to provide such replacement parking.  *Id.* at 8.

Debtor is essentially arguing that should the court require it to pay replacement parking costs, it should not be held accountable for the full amount of those costs given the allegedly deficient nature of the replacement parking.  The court observes that based on the language of the Lease, if the Lease "terminates for any reason whatsoever, Tenant's right to park in the parking facilities shall terminate concurrently herewith." Lease, Exhibit C, ¶ 11.  Because as previously discussed, the Lease was terminated, and Landlord's obligation to provide replacement parking to Debtor also terminated concurrently.  Accordingly, Landlord's request for reimbursement of the costs actually incurred to provide such replacement parking should be granted.  The costs of replacement parking in the amount of $260,220.76, and reimbursement of Debtor's collection of parking proceeds in the amount of $117,463.19, should be included as tenant obligations to be paid immediately under 11 U.S.C. § 365(d)(3) to Landlord as an administrative expense, but may be used to offset Debtor's obligation to pay for replacement parking since that was the purpose of the revenue to defray the cost of providing parking to customers.

5. Debtor's Obligations Under 11 U.S.C. § 365(d)(3) Do Not Include Subtenant Rents

Landlord has an administrative expense claim for the *full amount of all other postpetition, pre-rejection obligations* under the lease.  *In re TreeSource Industries, Inc.,*

1  363 F.3d at 997-998; *In re Cukierman*, 265 F.3d at 850; *see also,* Friedman, Garcia &

2  Hagarty, *California Practice Guide:  Landlord-Tenant*, ¶ 10:262.  Section 20.5 of the

3  Lease expressly provides in relevant part:

> In the event of any Default (as defined in Section 22.1) by
> Tenant, Landlord may require that any Transferees remit
> directly to Landlord on a monthly basis, all monies due Tenant
> by said Transferee, and each sublease shall provide that if
> Landlord gives said sublessee written notice that Tenant is in
> default under this Lease, said sublessee will thereafter make
> all payments due under the sublease directly to or as directed
> by Landlord, which payments will be credited against any
> payments due under this Lease.  Tenant hereby irrevocably
> and unconditionally assigns to Landlord all rents and other
> sums payable under any sublease of the Premises; provided,
> however, that Landlord hereby grants Tenant a license to
> collect all such rents and other sums so long as no such
> Default exists under this Lease . . .

12  Lease, § 20.5.

13          Although Landlord argued in its initial motion that Debtor must turn over sub-rents

14  collected from its subtenants in the amount of $820,193.79, it did not include any

15  outstanding amount of subtenant rents in its proposed findings of fact and conclusions of

16  law.  *Motion to: (1) Compel Immediate Payment by Debtor of Outstanding Obligations to*

17  *Landlord Pursuant to 11 U.S.C. § 365(d)(3); (2) Modify Adequate Protection Order Based*

18  *on Debtor's Contempt of Court and Other Developments Subsequent to its Entry,* ECF

19  440 at 13; *Landlord's Proposed Findings of Fact and Conclusions of Law* ¶ 32.  However,

20  Landlord did argue in its proposed conclusions of law:

> Since Debtor's license to collect subrents existed only "so
> long as" no Default existed under the Lease – and given the
> law of the case that a "Default" occurred in December 2012 –
> it is clear that Debtor's license automatically expired upon
> such Default. *E.g., Hamilton v. Dixon*, 168 Cal. App. 3d 1004,
> 1007, 1013, 214 Cal. Rptr. 639 (1985), *rev'd on other*
> *grounds*, 40 Cal. 3d 488, 220 Cal. Rptr. 818 (1985) (holding
> that tenant's interest in a sublease terminated upon the
> landlord's termination of the Lease, and affirming order that
> landlord entitled to receive 12 months of rent deposited by
> subtenant with Court subsequent to termination of lease and
> prior to denial of petition for relief from forfeiture).
> Accordingly, Landlord is entitled to apply subtenant rents
> collected by Debtor against prepetition amounts due to
> landlord.

39

1

2    *Landlord's Proposed Findings of Fact and Conclusions of Law* ¶ 131.

3         Debtor contends that Landlord is thus claiming "it is entitled to 'double dip' and is

4    entitled to rent from both Debtor for the entire Mid-Wilshire property and to subtenant

5    rents for a portion of the Mid-Wilshire Property." *Debtor's Supplemental Brief in*

6    *Opposition to AERC Desmond's Tower, LLC's Motion to: (1) Compel Immediate Payment*

7    *by Debtor of Outstanding Obligations to Landlord Pursuant to 11 U.S.C. § 365(d)(3); (2)*

8    *Modify Adequate Protection Order Based on Debtor's Contempt of Court and Other*

9    *Developments Subsequent to its Entry*, ECF 479 at 8.  Because Landlord did not include

10   a request for subtenant rents in any amount in its proposed findings of fact and

11   conclusions of law, the court determines that Landlord has abandoned its request to

12   pursue an award of subtenant rents.  Moreover, the court determines that any award of

13   subtenant rents to Landlord, or any application of those subtenant rents against

14   prepetition amounts due to Landlord, would be a windfall, or "double dip" in the context of

15   this court awarding Landlord amounts for holdover rent, late charges, attorneys' fees, and

16   replacement parking because in effect, Debtor is being charged twice for the subleased

17   premises, that is, it is charged for these premises under the Master Lease and is not

18   compensated for the use of these premises by other parties who are using them rather

19   than it.   Either Debtor should be allowed to retain the subrents or be allowed an offset

20   against any payment of the rent on the Master Lease for the subtenants.   In any event,

21   at the hearing on November 18, 2014, counsel for Landlord clarified that Landlord is not

22   seeking the turnover, or payment, of subtenant rents paid to Debtor on top of the "full"

23   rent, including holdover rent, late charges and attorneys' fee reimbursement as claimed

24   in its motion.

25        Accordingly, the court determines Debtor is not required to pay any subtenant

26   rents in satisfaction of its obligations under 11 U.S.C. § 365(d)(3).

27        ///

28

40

### III. Landlord's Request to Modify Adequate Protection Order Based Should Be Denied.

Landlord argues based on Debtor's contempt of court, the Adequate Protection Order should be modified to provide that any further breach of its terms shall compel denial of the Assumption Motion and immediate surrender of the Wilshire Property by the Debtor. *Motion to: (1) Compel Immediate Payment by Debtor of Outstanding Obligations to Landlord Pursuant to 11 U.S.C. § 365(d)(3); (2) Modify Adequate Protection Order Based on Debtor's Contempt of Court and Other Developments Subsequent to its Entry*, ECF 440 at 18. Landlord further argues the Adequate Protection Order should be modified to require that any proceeds from the sale of Owned Inventory and parking be segregated and made subject to the lien on Owned Inventory in favor of landlord. *Id.* at 19.

Debtor argues that since it is not in contempt of any court order, it is improper to impose upon the debtor the requirement that any further breach of the terms of the Adequate Protection Stipulation or Debtor-in-Possession Financing Order shall compel denial or the Lease Assumption Motion and immediate surrender of the Mid-Wilshire Property. *Debtor's Supplemental Brief in Opposition to AERC Desmond's Tower, LLC's Motion to: (1) Compel Immediate Payment by Debtor of Outstanding Obligations to Landlord Pursuant to 11 U.S.C. § 365(d)(3); (2) Modify Adequate Protection Order Based on Debtor's Contempt of Court and Other Developments Subsequent to its Entry,* ECF 479 at 9.

Because the court has denied Debtor's request for relief from forfeiture and motion to assume lease, Landlord's request to modify the Adequate Protection Order such that any further violations by Debtor result in immediate surrender of the Lease, appears to be moot because the Lease is terminated and not assumable. However, these rulings unless stayed pending appeal apparently mean that Debtor as tenant under the Lease has no right to further possession, and Landlord is entitled to immediate possession of the premises.

### Conclusion

This memorandum decision constitutes the court's findings of fact and conclusions of law of the court in granting Landlord's motion to compel immediate payment of lease obligations pending assumption or rejection of the lease pursuant to 11 U.S.C. § 365(d)(3).  Accordingly, Landlord may be also entitled to amounts due for pre-rejection, postpetition lease obligations, which may not have been claimed in the moving papers from the date the original motion was filed through the date of entry of the final order denying Debtor's motion to assume the lease, the date of deemed rejection of the lease.

The court hereby orders counsel for Landlord to submit a proposed order consistent with this memorandum decision within 30 days of entry of this order.  If Landlord seeks other claims under 11 U.S.C. § 365(d)(3), Landlord should submit a proposed order supported by a further declaration(s) as to what the additional amounts are for holdover rent, late charges, attorneys' fees, replacement parking costs, and reimbursement of Debtor's collection of parking revenue, consistent with this decision.

IT IS SO ORDERED.

### ###

Date: November 26, 2014

_____
Robert Kwan
United States Bankruptcy Judge