1  RON BENDER (SBN 143364)
   BETH ANN R. YOUNG (SBN143945)
2  KURT RAMLO (SBN 166856)
   KRIKOR J. MESHEFEJIAN (SBN 255030)
3  LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
   10250 Constellation Boulevard, Suite 1700
4  Los Angeles, California 90067
   Telephone:  (310) 229-1234; Facsimile:  (310) 229-1244
5  Email: rb@lnbyb.com; bry@lnbyb.com; kr@lnbyb.com; kjm@lnbyb.com

6  Attorneys for Chapter 11 Debtor and Debtor in Possession

**FILED & ENTERED**

**MAY 29 2015**

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY milano    DEPUTY CLERK

7           UNITED STATES BANKRUPTCY COURT
            CENTRAL DISTRICT OF CALIFORNIA
8                 (LOS ANGELES DIVISION)

**CHANGES MADE BY COURT**

9  In re:                              Case No. **2:13-bk-14135-RK**

10 ART AND ARCHITECTURE BOOKS           Chapter 11
   OF THE 21ST CENTURY, dba ACE
11 GALLERY,                             **Order Authorizing Debtor to Exercise**
                                        **Purchase Option and Enter into Agreement**
12                                      **with Los Angeles County Metropolitan**
                                        **Transportation Authority for Purchase and**
13         Debtor and Debtor in Possession.  **Sale of Real Property Located at 9430 Wilshire**
                                        **Boulevard, Beverly Hills, California 90212 and**
14                                      **to Enter into Related Transactions Pursuant to**
                                        **11 U.S.C. §363; and Granting Related Relief**
15
                                        Dates of Hearing:   May 21 and 28, 2015
16                                      Time:  9:00 a.m.
                                        Place:  Courtroom 1675
17                                              255 East Temple Street
                                                Los Angeles, California 90012
18

19         On May 21, 2015 at 9:00 a.m. and May 28, 2015 at 9:00 a.m., in Courtroom 1675, located

20 in the Roybal Federal Building  at 255 East Temple Street, Los Angeles, California 90012, the

21 Court held a hearing (the "Sale Hearing") on the motion (the "Motion") filed by Art and

22 Architecture Books of the 21st Century, doing business as Ace Gallery, chapter 11 debtor and

23 debtor-in-possession in the above-entitled bankruptcy case (the "Debtor"), for entry of an order:

24         (1)    Authorizing the Debtor to exercise the option to purchase (the "Purchase

25 Option") for the real property and improvements thereon located at 9430 Wilshire

26 Boulevard, Beverly Hills, California 90212, with the legal description set forth on

27 Exhibit A, and as more particularly described in the APR as defined below and defined in

28 the APR as the Property (the "Property" or "Beverly Hills Property") and purchase the

                                        2

Property;

(2)     Authorizing the Debtor to enter into and execute and deliver that certain *Agreement for Purchase of Real Property and Joint Escrow Instructions* ("APR") and related agreements and documents attached or described therein or delivered or executed pursuant to the APR ("Transaction Documents") substantially in the forms filed herein by Debtor on May 26, 2015 and attached to the *Debtor's Submission of Transaction Documents and Draft Proposed Order in Support of [the Motion]* (ECF No. 1151) and *Debtor's Supplemental Submission of Transaction Documents and Draft Proposed Order in Support of [the Motion]* (ECF No. 1152), with such further changes as may be agreed to by Debtor and Buyer prior to their execution and delivery provided that they do not have a material adverse effect on the Debtor's estate herein and with the signed APR to be filed herein no later than May 29, 2015 provided that the Transaction Documents are approved by Buyer's Board of Directors on May 28, 2015, and authorizing all of the transactions set forth therein or contemplated thereby (the "Transactions"), including (a) the Debtor's exercise of the Purchase Option to purchase the Property from Landlord and Debtor's purchase of the Property from Landlord for the applicable purchase price (the "Exercise and Closing of the Purchase Option"); (b) sale of the Beverly Hills Property (the "Beverly Hills Property Sale") to the Los Angeles County Metropolitan Transportation Authority, a public agency existing under the laws of the State of California ("LACMTA", "MTA" or "Buyer") for the sum of $40,000,000, free and clear of interests pursuant to 11 U.S.C. § 363(f); and (c) the Debtor's entry into a lease of the Beverly Hills Property from the LACMTA following the closing of the Transactions ("New Lease Agreement") substantially in the form attached to the APR;

(3)     granting such other relief as set forth in the Motion and in a proposed order form of order to be submitted in advance of the Sale Hearing; and

(4)     granting such other relief as the Court deems just and proper.

Appearances were as noted on the record of the Court. Capitalized terms not otherwise defined have the same meaning ascribed to such terms in the Transaction Documents and, if not defined

9200419.v1

in the Transaction Documents, in the Motion.  The Court, having read and considered the Motion, the Transaction Documents, the supplement to the Motion, and all other pleadings and documents filed in support of the Motion and/or in opposition to the Motion, whether in writing or presented orally at the hearing on the Motion, with good cause appearing therefor:

**THE COURT HEREBY FINDS AND DETERMINES THAT:[1]**

**Jurisdiction, Final Order and Statutory Predicates**

A.    This Court has jurisdiction to hear and determine this matter pursuant to 28 U.S.C. §§ 157(b)(l) and 1334(a).  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N) and (O).  Venue is proper in this District and in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B.    The statutory predicates for the relief requested in the Motion are §§ 105(a) and 363 of the Bankruptcy Code, 11 U.S.C., and Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") 2002, 6004, and 9006.

C.    This Order constitutes a final order within the meaning of 28 U.S.C. § 158(a).

**Notice of the Motion**

D.    The notice of the Motion was served upon the following parties (the "Notice Parties"): (i) the U.S. Trustee; (ii) counsel to the Official Committee of Unsecured Creditors (the "Committee"); (iii) counsel to Wilson Administrative Services, Ltd.; (iv)  the Internal Revenue Service; (v) all parties that have requested or that are required to receive notice pursuant to Bankruptcy Rule 2002; (vi) all parties that are known or reasonably believed to have asserted any lien, encumbrance, claim or other interest in the Property; (vii) all governmental agencies that are an interested party with respect to the sale and transactions proposed thereunder; and (viii) all other known creditors of the Debtor.

---

[1]    The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and Fed. R. Civil P. 52, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  All findings of fact and conclusions of law announced by the Court at the Sale Hearing in relation to the Motion are hereby incorporated herein to the extent not inconsistent herewith.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

9200419.v1

E.    A separate *Notice of Sale of Estate Property* (ECF No. 1129, filed May 15, 2015) relating to the sale of the Beverly Hills Property was filed with the Court and posted on the Court's website.

F.    Notice of the Sale Hearing was reasonably calculated to provide all interested parties with appropriate and sufficient notice of the Exercise and Closing of the Purchase Option, the Beverly Hills Property Sale, and Sale Hearing, under all of the facts and circumstances of the present case.

G.    As evidenced by the affidavits of service previously filed with this Court, adequate and sufficient notice of the Motion, Sale Hearing, the Exercise and Closing of the Purchase Option, the Beverly Hills Property Sale, and the Transactions, has been provided in accordance with §§ 105(a) and 363 of the Bankruptcy Code, and Bankruptcy Rules 2002, 6004, and 9006. The notices described above were good, sufficient, and appropriate under the circumstances, and no other or further notice of the Motion, Sale Hearing, the Exercise and Closing of the Purchase Option, the Beverly Hills Property Sale, or the Transactions is or shall be required.

H.    The disclosures made by the Debtor concerning the Motion, Sale Hearing, the Exercise and Closing of the Purchase Option, the Beverly Hills Property Sale, and the Transactions were good, complete, and adequate.

I.    Buyer is not an "insider" of the Debtor, as that term is defined in section 101(31) of the Bankruptcy Code.

J.    A reasonable opportunity to object and be heard with respect to the Motion, Sale Hearing, the Exercise and Closing of the Purchase Option, the Beverly Hills Property Sale, the Transactions, and the relief requested therein has been afforded to all interested persons and entities, including the Notice Parties.

**Exercise and Closing of Purchase Option**

K.    On April 30, 2014, the Court entered an order (the "Settlement Order") approving the Beverly Hills Settlement Agreement with the Debtor's lessors, Culver Center Partners, LLC, a California limited liability company ("CCP"), and Culver Center Partners-West #1, LLC, a California limited liability company ("CCP West," together with CCP, the "Landlord"), among

9200419.v1

others.  The Purchase Option contained within the Beverly Hills Settlement Agreement provides that the Debtor or its assignee must provide the Landlord with at least thirty (30) days' notice of the Debtor's exercise of the Purchase Option ("Option Exercise Notice"), together with evidence of a deposit in the sum of $100,000 in the form of a cashier's check made payable to the escrow company (the "Option Deposit") delivered to Chicago Title, First American Title, or Commonwealth Lawyers Title (as selected jointly by Debtor and the CCP-West Parties, the "Escrow Company").  The Option Deposit will be applied to the purchase price if the Purchase Option closes.

L.    The Beverly Hills Settlement Agreement provides that the Loan Balance (as defined therein) must be paid to the CCP West Parties (as defined therein) in full from the proceeds of the sale through escrow.

M.    The Settlement Order authorized the Debtor to take all steps necessary to implement, consummate, and enforce the terms of the Settlement Agreement.

N.    On May 15, 2015, Chicago Title Company was selected as the Escrow Company.

O.    Also on May 15, 2015, in accordance with the Purchase Option and Settlement Order, the Debtor properly gave notice of the exercise of the Purchase Option by making the Option Deposit with the Escrow Company and by giving notice to the Landlord of the Option Deposit with the Escrow Company and of the Debtor's exercise of the Purchase Option.  Under the terms of the Purchase Option and the Option Exercise Notice, the Debtor may close its purchase of the Beverly Hills Property between June 15, 2015 and August 13, 2015.

P.    Under the Purchase Option, the Landlord is required to cause to be issued to the Debtor a standard (CLTA) coverage owner's policy of title insurance of Land America Lawyers Title Company, with liability, in the amount of the purchase price, insuring the title to the Property vested in the Debtor, free and clear, of all liens and encumbrances except:  (i) liens for current real estate taxes, including supplemental taxes, not yet due and payable, and (ii) any other exceptions acceptable to the Debtor.  Fidelity National Title Company is the successor to Land America Lawyers Title Company.

9200419.v1

Q.    Under the Purchase Option, the cost for the Debtor to close its purchase of the Beverly Hills Property is the sum of $18,575,000 if the Debtor closes such transaction by June 30, 2015 (the "Purchase Option Price").  The cost to the Debtor to exercise the Purchase Option will increase by $675,000 on July 1, 2015.

R.    Under the Purchase Option, the Landlord is required to pay all costs and expenses incurred to pay off and release the mortgage on the Beverly Hills Property including defeasance charges and/or yield maintenance charges or prepayment penalties and is responsible in such event for consummating any such defeasance transaction at its sole costs and expense.

S.    Subject only to the entry of this Order, the Debtor has (or at all relevant times had) (i) full corporate power and authority to execute and deliver the Option Exercise Notice, (ii) all corporate authority necessary to consummate the purchase of the Property under the terms of the Purchase Option, and (iii) taken all corporate action necessary to authorize and approve the exercise and closing of the Purchase Option.  Subject only to the entry of this Order (a) the Debtor's purchase of the Property has been duly and validly authorized by all necessary corporate action, and (b) no consents or approvals, other than those expressly provided for in the Purchase Option, are required for the Debtor to consummate the closing of the purchase of the Property under the terms of the Purchase Option.

T.    The Debtor is entitled to exercise the Purchase Option and shall become the sole and lawful owner of the Property when it consummates the Exercise and Closing of its Purchase Option authorized and ratified by this Order and the Debtor is entitled to contemporaneously sell the Property to the Buyer as further set forth herein and in paragraph GG below.

**Good Faith of Buyer**

U.    The Transaction Documents were all negotiated, proposed, and entered into by the Debtor and Buyer without collusion, and in good faith, and resulted from arm's-length bargaining positions.

V.    Neither the Debtor nor Buyer has engaged in any conduct that would cause or permit any of the Transaction Documents to be avoided under § 363(n) of the Bankruptcy Code. Specifically, Buyer has not acted in a collusive manner with any person and the Purchase Price

7

9200419.v1

1  pursuant to the Transaction Documents to be paid by Buyer for the Property was not controlled by

2  any agreement among bidders.

3          W.     Buyer has acted in good faith with respect to the Transactions and if all of the

4  conditions to Closing occur subject to the terms and provisions of the Transaction Documents

5  provided that they are hereafter approved by the Board of Directors of Buyer and thereafter

6  signed by the parties thereto, Buyer shall purchase the Property.  If the Closing occurs, Buyer

7  shall purchase the Property in good faith and shall be a good-faith buyer within the meaning of §

8  363(m) of the Bankruptcy Code, and is therefore entitled to all of the protections afforded by §

9  363(m), and otherwise has proceeded in good faith in all respects in connection with this

10 proceeding in that, among other things:  (i) Buyer recognized that the Debtor was free to deal with

11 any other party interested in acquiring the Property; (ii) Buyer in no way induced or caused the

12 chapter 11 filing by the Debtor; and (iii) all payments to be made by Buyer in connection with the

13 Beverly Hills Property Sale have been disclosed.

14 **Highest or Best Offer**

15         X.     The sale process conducted by the Debtor afforded a full, fair, and reasonable

16 opportunity for any person or entity to make an offer to purchase the Property.

17         Y.     The Transactions contemplated by the Transaction Documents, including without

18 limitation the purchase of the Property pursuant to the Purchase Option after all conditions set

19 forth in the Transaction Documents are satisfied, and the immediate re-sale of the Property to

20 Buyer (the "Beverly Hills Property Sale"), maximizes the value of the Purchase Option and

21 provides a better recovery for the Debtor's estate than would be provided by any other available

22 alternative.  The Debtor's determination that the Transactions constitute the highest or best offer

23 for the Property constitute a valid and sound exercise of the Debtor's business judgment.

24 **No Fraudulent Transfer or Successor Liability**

25         Z.     The consideration provided by Buyer pursuant to the Transaction Documents (i) is

26 fair and reasonable, (ii) is the highest or best offer for the Property, and (iii) constitutes

27 reasonably equivalent value and fair consideration (as those terms are defined in each of the

28 Uniform Fraudulent Transfer Act, and the Uniform Fraudulent Conveyance Act, as such uniform

9200419.v1

statements have been adopted in any given state, or any comparable state law statute, and § 548 of the Bankruptcy Code) under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia.  No other person or entity or group of entities has offered to purchase the Property for greater economic value to the Debtor's estate than Buyer.  Debtor has actively and competently marketed the Property to prospective purchasers and the Buyer has offered the best purchase price and has the best possibility of closing on the sale transactions contemplated by the Motion.   Approval of the Motion and the Transaction Documents and the consummation of the Transactions are in the best interests of the Debtor, its estate, creditors, and other parties in interest.

AA.    Upon their execution, the Transaction Documents will not be entered into for the purpose of hindering, delaying, or defrauding creditors under the Bankruptcy Code or under the laws of the United States, any state, territory, possession, or the District of Columbia.  Neither the Debtor nor Buyer is entering into the Transactions fraudulently for the purpose of statutory and common law fraudulent conveyance and fraudulent transfer claims.

BB.    Buyer is not a mere continuation of any of the Debtor or its estate and there is no continuity of enterprise between Buyer and the Debtor.  Buyer is not holding itself out to the public as a continuation of the Debtor or any of its business or other activities.  Buyer is not a successor to the Debtor or its estate and the Beverly Hills Property Sale does not amount to a consolidation, merger, or de facto merger of Buyer and the Debtor.

**Validity of Transfer**

CC.    Subject only to the entry of this Order, the Debtor has (or at all relevant times had) (i) full corporate power and authority to execute and deliver the Transaction Documents, (ii) all corporate authority necessary to consummate the Transactions, and (iii) taken all corporate action necessary to authorize and approve the Transaction Documents and the consummation of the Transactions.  Subject only to the entry of this Order (a) the Debtor's sale of the Property has been duly and validly authorized by all necessary corporate action, and (b) no consents or approvals, other than those expressly provided for in the Transaction Documents, are required for

9200419.v1

the Debtor to consummate the Beverly Hills Property Sale, the Transaction Documents, and the Transactions.

DD.    Pursuant to § 363(f) of the Bankruptcy Code, the transfer of the Property to Buyer will be, as of the "Closing Date" as defined in the Transaction Documents (the "MTA Closing Date"), a legal, valid, and effective transfer of the Property and fee simple title thereto, which transfer vests or will vest Buyer with all right, title, and interest of the Debtor to the Property free and clear of any Interests (as defined below) in such Property and fee simple title thereto relating to, accruing, or arising any time prior to the MTA Closing Date.

**Section 363(f) is Satisfied**

EE.    The conditions of § 363(f) of the Bankruptcy Code have been satisfied in full; therefore, the Debtor is authorized to and shall sell the Property free and clear of all Interests in the Property and the sale of the Property pursuant to the Transaction Documents and the Transactions shall be free and clear of all such Interests.  "Interests" are defined collectively as any and all obligations, interests, rights, pledges, liens (including, without limitation, mechanics', materialmens' and other consensual and non-consensual liens, and statutory liens), mortgages, deeds of trust, security interests, claims (including any "claim" as defined in § 101(5) of the Bankruptcy Code), liabilities, debt obligations, losses, penalties, leases, charges, offsets, contracts, options, rights of first refusal, rights of first offer, rights of first sale, rights of notice, easements, servitudes, proxies, voting trusts or agreements, transfer restrictions under any agreement, conditional sale or other title retention agreements, recoupment, hypothecations, demands, licenses, sublicenses, assignments, indentures, loan agreements, instruments, debts, rights of recovery, guaranties, contractual commitments, restrictions, labor and employment rights and claims, employee benefit agreements and obligations, collective bargaining agreements and obligations, pension rights and claims, claims based on reimbursement, contribution, indemnity, exoneration, products liability, tortious conduct, property damage, personal injury, alter-ego or taxes, claims based on pension plan contribution and related liabilities, environmental liabilities or obligations (including, without limitation, toxic tort claims), options to purchase, regulatory violations, decrees of any court or governmental entity, charges or any kind or nature, debts

10

9200419.v1

arising in any way in connection with any agreements, acts, or failures to act, reclamation claims, and obligation claims, in each case, of whatever kind, nature or description in, against or with respect to the Property, or the Seller, having arisen, existed, or accrued prior to and though the MTA Closing Date, whether direct or indirect, absolute or contingent, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, material or non-material, disputed or undisputed, known or unknown, matured or unmatured, liquidated or unliquidated, arising or imposed by agreement, understanding, law, equity, statute or otherwise, and whether arising prior to, on or after the commencement of the above-entitled Bankruptcy Case, including claims or liabilities otherwise arising under doctrines of successor liability, de facto merger or substantial continuity or liabilities or obligations under any law or order.

FF.    Buyer would not enter into the Transaction Documents and would not consummate the Transactions if the sale of the Property to Buyer were not free and clear of all such Interests. Buyer shall not be responsible for any Interests.

GG.    The Debtor is entitled to sell the Property to the Buyer free and clear of all Interests against the Debtor, its estate, or any of the Property because, in each case, one or more of the standards set forth in § 363(f)(1)-(5) of the Bankruptcy Code has been satisfied.  Those holders of Interests against the Debtor, its estate, or any of the Property who did not object, or who withdrew their objections, to the Beverly Hills Property Sale or the Motion are deemed to have consented pursuant to § 363(f)(2) of the Bankruptcy Code.  All other holders of Interests (except as otherwise provided herein) are adequately protected by having their Interests, if any, in each instance against the Debtor, its estate, or any of the Property, attach to the net proceeds of the Beverly Hills Property Sale ultimately attributable to the Property, in which such creditor or claimant alleges an Interest, in the same order of priority, with the same validity, force, and effect that such Interest had prior to the Beverly Hills Property Sale, without further order of the Court, subject to any claims and defenses the Debtor and its estate may possess with respect thereto.

11

**<u>Compelling Circumstances for an Immediate Sale</u>**

HH.    Good and sufficient reasons for approval of the Transaction Documents and the Transactions have been articulated.  The relief requested in the Motion is in the best interests of the Debtor, its estate, its creditors, and other parties in interest.  The Debtor has demonstrated both (i) good, sufficient, and sound business purposes and justifications and (ii) compelling circumstances for a sale other than in the ordinary course of business, pursuant to § 363(b) of the Bankruptcy Code before, and outside of, a plan of reorganization, in that, among other things, immediately entering into the Transaction Documents and consummation of the Transactions is necessary and appropriate to maximize the value of the Debtor's estate and the Transactions will provide the means for the Debtor to maximize distributions to creditors and fund a chapter 11 plan.

II.    Given all of the circumstances of this chapter 11 case and the adequacy and fair value of the Purchase Price under the Transaction Documents, the proposed sale of the Property to Buyer constitutes a reasonable and sound exercise of the Debtor's business judgment and should be approved.

JJ.    The Beverly Hills Property Sale does not constitute a *sub rosa* chapter 11 plan for which approval has been sought without the protections that a disclosure statement would afford.  The Beverly Hills Property Sale neither impermissibly restructures the rights of the Debtor's creditors nor impermissibly dictates the terms of a liquidating plan of reorganization for the Debtor.

KK.    The consummation of the Beverly Hills Property Sale is legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, §§ 105(a), 363(b), 363(f), and 363(m), and all of the applicable requirements of such sections have been complied with in respect of the Transactions.

LL.    The Debtor and Buyer have agreed to provide the Escrow Company with instructions, provided that all conditions to Closing have been satisfied or waived, to record the grant deed from Landlord and the grant deed to Buyer and that neither deed shall record nor shall funds be released unless both deeds are recorded.

12

9200419.v1

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED
THAT:**

1.      The relief requested in the Motion is granted and approved as set forth in this Order, the exercise and closing of the Purchase Option are approved, and the Transactions contemplated by the Transaction Documents are approved.  The APR and the other Transaction Documents including the New Lease Agreement are approved.  The Debtor is authorized to enter into, execute and deliver the Transaction Documents as provided in the APR and to perform Debtor's obligations under the Transaction Documents and consummate any Transactions contemplated thereby.

2.      All objections to the Motion or the relief requested therein that have not been withdrawn, waived, or settled as announced to the Court at the Sale Hearing or by stipulation filed with the Court, and all reservations of rights included therein, are hereby denied and overruled with prejudice.  Those parties which did not object or withdrew their objection(s) to the Motion are deemed to have consented pursuant to § 363(f)(2) of the Bankruptcy Code and Local Bankruptcy Rule 9013-1(h).

**Approval of the Exercise and Closing of the Purchase Option**

3.      The selection of Chicago Title Company as the Escrow Company complies with the terms of the Purchase Option, and is authorized by the Settlement Order and is hereby ratified and approved.

4.      The Debtor's making of the Option Deposit with the Escrow Company complies with the terms of the Purchase Option, and is authorized by the Settlement Order and is hereby ratified and approved.

5.      The Debtor's Option Exercise Notice complies with the terms of the Purchase Option.  The Debtor's giving of the Option Exercise Notice complies with the terms of the Purchase Option, and is authorized by the Settlement Order and is hereby ratified and approved. Under the terms of the Purchase Option and the Option Exercise Notice, the Debtor may close its purchase of the Beverly Hills Property between June 15, 2015 and August 13, 2015.

9200419.v1

**Purchase of the Property**

6.    Pursuant to §§ 105(a) and 363(b) of the Bankruptcy Code and the Settlement Order, the Debtor is authorized to acquire the Property through the Purchase Option, and such purchase shall constitute a legal, valid, binding, and effective transfer of the Beverly Hills Property and fee simple title thereto to the Debtor.

7.    In accordance with the Purchase Option, the Purchase of the Beverly Hills Property shall vest the Debtor with all right, title (which shall be good, clear, and marketable), and interest in and to the Property except for (a) liens for current real estate taxes, including supplemental taxes, not yet due and payable, and (b) any other exceptions acceptable to the Debtor.

8.    In accordance with the Settlement Order and this Order, the Debtor is authorized to take any and all actions necessary to consummate the purchase of the Beverly Hills Property, including any actions that otherwise would require further approval by shareholders or its board of directors without the need of obtaining such approvals.

9.    All persons and entities are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of the Debtor to consummate the purchase of the Beverly Hills Property, including, without limitation, to purchase the Property from the Landlord or its successors or assigns in accordance with the terms of the Purchase Option, the Exercise Option Notice, and this Order, or that would otherwise affect the consummation of the closing of the purchase of the Beverly Hills Property.

**Approval of the Transaction Documents with the Buyer**

10.    The Transaction Documents with the Buyer and all other ancillary documents, and all of the terms and conditions thereof, are hereby approved.

11.    Pursuant to § 363(b) and (f) of the Bankruptcy Code, the Debtor is authorized and empowered to take any and all actions necessary or appropriate to (a) consummate the sale of the Property to Buyer pursuant to and in accordance with the terms and conditions of the Transaction Documents, (b) close the Transactions, including without limitation the Beverly Hills Property Sale, if the conditions to Closing are satisfied, and (c) complete, execute and deliver, perform

14

under, consummate and implement the Transaction Documents together with all additional instruments and documents contemplated thereby or are reasonably necessary or desirable to implement the Transaction Documents and the Transactions or which are otherwise reasonably requested by Buyer.

12.     This Order shall be binding in all respects upon the Debtor, its estate, all creditors of, and holders of equity interests in, the Debtor, any holders of Interests in, against, or on all or any portion of the Property (whether known or unknown), the Landlord and all successors and assigns of the Landlord, Buyer and all successors and assigns of Buyer, the Property, and trustees, if any, subsequently appointed in the Debtor's chapter 11 case or upon a conversion of the Debtor's case to a chapter 7 case under the Bankruptcy Code (a "<u>Trustee</u>").  This Order and the Transaction Documents (conditioned upon the execution by Buyer and Seller of the Transaction Documents and satisfaction of the conditions to Closing pursuant thereto) shall inure to the benefit of the Debtor, its bankruptcy estate, Buyer, and the respective successors and assigns of each of the foregoing, including without limitation any Trustee or any person or entity appointed pursuant to any plan confirmed in the Bankruptcy Case with authority over the Debtor or any assets or property of the Debtor.  Notwithstanding the foregoing, any conditions, limitations, or restrictions or other provisions affecting the right to pursue entitlements for development of the Option Property or the assignment or transfer of the New Lease Agreement or Debtor's rights to exercise its Repurchase Option to purchase the Option Property from Buyer pursuant to the Transaction Documents including Buyer's right to require Buyer's reasonable consent as provided in the Transaction Documents shall be enforceable according to their terms notwithstanding any provisions of the Bankruptcy Code to the contrary including, but not limited to 11 U.S.C. §§ 363, 365(f), and 1123(a)(5)(B), (b)(2), (4) (to the extent, if any that they are applicable thereto).

**<u>Transfer of the Property</u>**

13.     Pursuant to §§ 105(a), 363(b), and 363(f) of the Bankruptcy Code, in exchange for the Purchase Price, the Debtor is authorized to transfer the Debtor's interest in the Property to Buyer and to convey the Property to Buyer on the MTA Closing Date, including, without limitation, by taking such actions as may be necessary to ensure Buyer has access to the Property,

15

and such transfer shall constitute a legal, valid, binding, and effective transfer of the Debtor's interest in the Property and shall vest Buyer with fee simple title to the Property and all right, title (which shall be good, clear and marketable) and otherwise as required by the Transaction Documents), and interest of the Debtor in and to the Property owned by the Debtor, and, upon the Debtor's receipt of the Purchase Price, shall be free and clear of all Interests, with all such Interests to attach to the net proceeds as set forth herein, with the same validity, force, and effect, and in the same order of priority, which such Interests now have against the Property, subject to any rights, claims, and defenses the Debtor or its estate, as applicable, may possess with respect thereto.  Upon the Closing, Buyer shall take title to and possession of the Property free and clear of any and all Interests, subject to the Debtor's lease back of the Property pursuant to the New Lease Agreement and the Transaction Documents.

14.    The Debtor is hereby authorized to take any and all actions necessary to consummate the Transactions, and to perform its obligations pursuant to the Transaction Documents in such forms in which they hereafter are finalized and executed and delivered, including any actions that otherwise would require further approval by shareholders or its board of directors without the need of obtaining such approvals.

15.    On the MTA Closing Date, this Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance, and transfer of the Debtor's interest in the Property to Buyer and fee simple title thereto.  Each and every federal, state, and local governmental agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the Transactions.

16.    A certified copy of this Order may be filed with the appropriate clerk and recorded with the recorder to act to cancel any liens and other encumbrances of record in accordance with the terms and provisions of this Order.

17.    If any person or entity which has filed statements or other documents or agreements evidencing liens on, or Interests in, all or any portion of the Property shall not have delivered to the Debtor prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens and

9200419.v1

easements, and any other documents necessary for the purpose of documenting the release of all liens or interests which the person or entity has or may assert with respect to all or any portion of the Property, the Debtor and Buyer are each hereby authorized, on behalf of the Debtor and each of the Debtor's creditors, to execute and file such statements, instruments, releases, and other documents on behalf of such person or entity with respect to the Property.  Notwithstanding the foregoing, the provisions of this Order authorizing the transfer of the Property to Buyer free and clear of all Interests of any kind or nature whatsoever shall be self-executing and notwithstanding the failure of the Debtor, Buyer, or any other party to execute, file, or obtain termination statements, instruments of satisfaction, release of liens and easements, and any other documents necessary for the purpose of documenting the release of all liens or interests with respect to all or any portion of the Property, all such Interests shall be deemed unconditionally released, discharged, terminated, divested, void, and unenforceable upon the occurrence of the Closing.

18.    This Order is and shall be effective as a determination that, on the MTA Closing Date, all Interests shall have been unconditionally released, discharged, and terminated, and that the conveyances described herein have been effected.  This Order is and shall be binding upon and govern the acts of all persons and entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease; and each of the foregoing persons and entities is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the Transactions.

**Prohibition of Actions Against Buyer**

19.    Buyer shall not have any liability or other obligation of the Debtor arising under or related to any of the Property.  Without limiting the generality of the foregoing, Buyer shall not be liable for any Interests against the Debtor or any of its predecessors or affiliates, and Buyer shall

17

have no successor or vicarious liabilities of any kind or character, including, but not limited to, under any theory of antitrust, environmental, successor or transferee liability, labor law, de facto merger, mere continuation, or substantial continuity, whether known or unknown as of the MTA Closing Date, now existing or hereafter arising, whether fixed or contingent, whether asserted or unasserted, whether legal or equitable, whether liquidated or unliquidated, including, but not limited to, liabilities on account of warranties, intercompany loans and receivables between the Debtor and any non-Debtor affiliate, liabilities relating to or arising from any environmental health and safety laws, and any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of any of the Property prior to the MTA Closing Date.

20.    All persons and entities, including, but not limited to, all debt security holders, equity security holders, governmental, tax and regulatory authorities, lenders, trade creditors, litigation claimants and other creditors, holding Interests against or in all or any portion of the Property (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, liquidated or unliquidated, senior or subordinate), arising under or out of, in connection with, or in any way relating to the Debtor, the Property, the operation of the Debtor's business prior to the MTA Closing Date or the transfer of the Property to Buyer, hereby are forever barred, estopped and permanently enjoined from asserting against Buyer, any of its affiliates, its successors or assigns, their property or the Property, such persons' or entities' Interests in and to the Property, including, without limitation, the following actions: (a) commencing or continuing in any manner any action or other proceeding against Buyer, any of its affiliates, successors, agents, assets or properties with respect to the Property; (b) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order against Buyer, any of its affiliates, successors, agents, assets or properties with respect to the Property; (c) creating, perfecting, or enforcing any lien or other Interests against Buyer, any of its affiliates, successors, agents, assets, or properties with respect to the Property; (d) asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due Buyer, any of its affiliates or its successors with respect to the Property; or (e) commencing or continuing any action, in any

18

manner or place with respect to the Property, that does not comply or is inconsistent with the provisions of this Order or other orders of the Court, or the agreements or actions contemplated or taken in respect thereof.   On the MTA Closing Date, or as soon as possible thereafter, each creditor is authorized and directed, and Buyer is hereby authorized, on behalf of the Debtor's creditors, to execute such documents and take all other actions as may be necessary to release Interests in or on the Property, if any, as provided for herein, as such Interests may have been recorded or may otherwise exist.

21.    In the event that the Closing and consummation of the Transactions occurs, all persons and entities are thereafter forever prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of the Debtor to consummate the Transactions, including, without limitation, to sell and transfer the Property to Buyer in accordance with the terms of the Transaction Documents and this Order, or that would otherwise affect the consummation of the Transactions.

**Other Provisions**

22.    In the event of a Closing, Buyer will have given substantial consideration under the Transaction Documents for the benefit of the Debtor, its estate, and creditors.   The consideration given by Buyer shall constitute valid and valuable consideration for the releases of any potential Interests pursuant to this Order, which releases shall be deemed to have been given in favor of Buyer by all holders of Interests against the Debtor or in the Property.   The consideration provided by Buyer for the Property under the Transaction Documents is fair and reasonable and accordingly the purchase may not be avoided under § 363(n) of the Bankruptcy Code.

23.    Provided that the Escrow Company has received instructions to record the grant deed from Landlord and the grant deed to the Buyer and that neither deed shall record nor shall funds be released unless both deeds are recorded, the Debtor is authorized to instruct Escrow Company to pay from escrow the Purchase Option Price and any ordinary and necessary closing costs.

9200419.v1

24.    After the Escrow Company's payment of (a) the Purchase Option Price; (b) the Loan Balance (to the CCP West Parties); (c) the postpetition secured loan of Wilson Administrative Services, Ltd.; (d) the Debtor's one-half share of the escrow fees relating to consummation of the Purchase Option; (e) the Debtor's customary share of the ordinary and necessary costs to consummate the Purchase Option in accordance therewith; and (f) the ordinary and necessary closing costs relating to the Transactions, there should be the remaining sum of approximately $17,500,000.00 (the "Sales Proceeds").  From the Sales Proceeds, the Escrow Company is directed to pay into the Trust Account held by Levene, Neale, Bender, Yoo & Brill L.L.P. ("Levene Neale") the sum of approximately $12,500,000 for the benefit of the Debtor and its estate.  Of the remaining balance of the Sales Proceeds in the sum of no greater than $5,054,000, the Escrow Company shall hold this sum as a reserve (the "AERC Reserve") for the benefit of AERC Desmond's Tower, LLC ("AERC") which shall be held and released subject to the terms and conditions of the *Stipulation Between AERC-Desmond Tower, LLC, Art and Architecture Books of the 21st Century, a California Corporation and the Official Committee of Unsecured Creditors of Art and Architecture Books of the 21st Century Regarding Payment of Allowed Administrative Claim of AERC-Desmond Tower, LLC under Section 365(d)(3) of the Bankruptcy Code, Payment of Chapter 11 Administrative Expenses of Art and Architecture Books of the 21st Century and Reservation of Rights*.

25.    Once deposited into the Trust Account held by Levene Neale, the Sale Proceeds can be distributed in accordance with the *Order Granting First Interim Applications for Approval of Fees and Reimbursement of Levene, Neale, Bender, Yoo & Brill L.L.P.; Crowe Horwath LLP and Sulmeyer Kupetz, APC* (ECF No. 831, entered January 5, 2015, the "Fee Order") and any further Order of this Court.

26.    The consideration provided by Buyer to the Debtor pursuant to the Transaction Documents for the Property constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act and under any other laws of the United States, any state, territory, possession, or the District of Columbia.

9200419.v1

27.     The Transactions are undertaken by Buyer without collusion and in good faith, as that term is defined in § 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Transactions shall not affect the validity of the Beverly Hills Property Sale, unless such authorization and the Beverly Hills Property Sale are duly stayed pending such appeal.  Notwithstanding the foregoing, however, neither this Order nor anything contained herein shall modify, impair or otherwise affect the provisions in the APR providing that it shall be a condition to Closing that this Order and any Transfer Order as defined in the APR shall have become a Final Order as defined in the APR unless such condition is waived by Buyer in accordance with the terms thereof and neither this Order nor any Transfer Order is subject to a stay, all as more particularly set forth in the APR. Buyer is a good faith buyer within the meaning of § 363(m) of the Bankruptcy Code and, as such, is entitled to the full protections of § 363(m) of the Bankruptcy Code.

28.     Nothing contained in any plan of reorganization or liquidation, or order of any type or kind entered in (a) this chapter 11 case, (b) any subsequent chapter 7 case into which Debtor's chapter 11 case may be converted, or (c) any related proceeding subsequent to entry of this Order, shall conflict with or derogate from the provisions of the Transaction Documents or the terms of this Order, nor shall the same impair, diminish, waive, release or otherwise affect any of Buyer's rights or interests pursuant to the Transaction Documents or this Order

29.     No bulk sales law or any similar law of any state or other jurisdiction applies in any way to the Beverly Hills Property Sale.

30.     The failure specifically to include any particular provision of the Transaction Documents or any related ancillary document in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Transaction Documents and all related ancillary documents be authorized and approved in their entirety.  All of the provisions of this Order are nonseverable and mutually dependent.

31.     The Transaction Documents and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto and in accordance

21

9200419.v1

with the terms thereof, without further order of the Court, provided that any such modification,

amendment, or supplement does not have a material adverse effect on the Debtor's estate.

32.    All time periods set forth in this Order shall be calculated in accordance with

Bankruptcy Rule 9006(a).

33.    This Order constitutes an itemized statement of the property sold, the name of

Buyer, and the price received for the property as a whole as required by Bankruptcy Rule

6004(f)(1).

34.    Notwithstanding Bankruptcy Rule 6004(h), this Order shall be effective and

enforceable immediately upon entry and shall not be subject to any stay as provided therein and

its provisions shall be self-executing.

35.    Buyer shall not be required to seek or obtain relief from the automatic stay under

section 362 of the Bankruptcy Code or to seek or obtain leave from the Bankruptcy Court to

exercise and enforce any of its rights and remedies under the Transaction Documents or the

Transactions according to their terms including, but not limited to, any rights and remedies under

the lease back of any of the Property to Debtor pursuant to the New Lease Agreement as defined

in the Transaction Documents, to recover possession of the Property and any rights and remedies

that Buyer has respecting the Repurchase Option to purchase the Option Property from Buyer

pursuant to the APR and the Transaction Documents.  The automatic stay under section 362(a) of

the Bankruptcy Code hereby is deemed vacated and modified to permit such enforcement and

exercise of Buyer's rights and remedies under applicable nonbankruptcy law.  The Debtor waives

for itself and any successor, assign, or representative of its estate, including without limitation the

Committee and any Trustee or any person or entity appointed pursuant to any plan confirmed in

the Bankruptcy Case with authority over the Debtor or any assets or property of the Debtor the

right to seek an injunction barring Buyer from enforcing its rights and remedies under the

Transaction Documents on the grounds that the Debtor is a debtor in a bankruptcy case or that a

plan has been confirmed in the Bankruptcy Case.

36.    In the event that the Closing does not occur, any funds or documents or other

items deposited by Buyer with Escrow Holder shall be returned to Buyer forthwith without any

9200419.v1

1    offset, deduction or charge and shall remain the property of the Buyer pending such refund and

2    return to Buyer.

3        37.    To the extent that this Order is inconsistent with any prior order or pleading with

4    respect to the Motion in this chapter 11 Bankruptcy Case, the terms of this Order shall govern.

5        38.    A separate judgment consistent with this order is being entered concurrently

6    pursuant to Bankruptcy Rules 7054 and 9014 and Fed. R. Civ. P. 54.

7        **IT IS SO ORDERED.**

8                                        ###

Date: May 29, 2015

_____
Robert Kwan
United States Bankruptcy Judge

23

9200419.v1

Exhibit A

**LEGAL DESCRIPTION**

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF BEVERLY HILLS, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

LOTS 1961 AND 1962 OF TRACT NO. 6380, IN THE CITY OF BEVERLY HILLS, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 69 PAGES 11 THROUGH 20 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

APN: **4331-001-045**

9200419.v1