Victor A. Sahn (CA Bar No. 97299)
  vsahn@sulmeyerlaw.com
David S. Kupetz (CA Bar No. 125062)
  dkupetz@sulmeyerlaw.com
Daniel A. Lev (CA Bar No. 129622)
  dlev@sulmeyerlaw.com
Asa S. Hami (CA Bar No. 210728)
  ahami@sulmeyerlaw.com
**Sulmeyer**Kupetz
A Professional Corporation
333 South Hope Street, Thirty-Fifth Floor
Los Angeles, California 90071-1406
Telephone: 213.626.2311
Facsimile: 213.629.4520

Attorneys for Official Committee of Unsecured
Creditors



FILED & ENTERED

MAR 18 2016

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY bakchell  DEPUTY CLERK

CHANGES MADE BY COURT

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA, LOS ANGELES DIVISION

| | |
|---|---|
| In re<br><br>ART AND ARCHITECTURE BOOKS OF THE 21st CENTURY, a California corporation,<br><br>      Debtor. | Case No. 2:13-bk-14135-RK<br><br>Chapter 11<br><br>**FINDINGS OF FACT AND CONCLUSIONS OF LAW RE CONFIRMATION OF SECOND AMENDED PLAN OF REORGANIZATION OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS AS MODIFIED**<br><br>Date:    February 3, 4, and 24, 2016<br>Place:   Courtroom 1675<br>         U.S. Bankruptcy Court<br>         255 East Temple Street<br>         Los Angeles, CA 90012 |

The above-captioned Chapter 11 bankruptcy case came on for an evidentiary hearing

before the undersigned United States Bankruptcy Judge on February 3, 4, and 24, 2016 to address

confirmation of the Second Amended Plan of Reorganization of Official Committee of Unsecured

Creditors, as modified by the modified plan filed as Docket No. 1859 (the "<u>Plan</u>"),[1] filed by the

---

[1] Capitalized terms that are not defined herein shall have the meaning set forth in the Plan.  As set forth in section 1.72 of the Committee's Plan, the definition of the "Plan" includes the Plan in its present form and as it may be amended, modified, or supplemented.

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1  Official Committee of Unsecured Creditors (the "Committee") in the above-captioned chapter 11

2  bankruptcy case of Art and Architecture Books of the 21st Century (the "Debtor").  Appearances at

3  the confirmation hearing are reflected in the record.  The following are the court's Findings of

4  Fact and Conclusions of Law ("Findings") which support confirmation of the Plan, pursuant to

5  Rules 7052 and 9014 of the Federal Rules of Bankruptcy Procedure and Rule 52 of the Federal

6  Rules of Civil Procedure.

7         The Court considered the materials of the Committee included in the Committee's chapter

8  11 plan solicitation package with respect to its "Second Amended Plan of Reorganization of

9  Official Committee of Unsecured Creditors" [Dkt. No. 1528], which materials include, in addition

10  to the Plan: (a) the "Amended Supplemental Disclosure Statement Based on Second Amended

11  Plan of Reorganization of Official Committee of Unsecured Creditors" (the "Supplemental

12  Disclosure Statement"), which serves as a supplement to the "First Amended Disclosure Statement

13  in Respect of First Amended Plan of Reorganization of Official Committee of Unsecured

14  Creditors" [Dkt. No. 1018] (the "First Disclosure Statement"); (b) the Committee's form of ballot

15  for the Committee Plan (the "Committee Ballot"); (c) the Notice of Voting Procedures on

16  Committee's Plan (the "Notice of Voting Procedures"); (d) the Committee's proposed plan

17  solicitation letter (the "Committee Solicitation Letter"); and (e) the Committee's proposed notice

18  of hearing on confirmation of the Committee Plan, voting procedures, and related dates and

19  deadlines (the "Committee Plan Confirmation Notice," and, collectively with the Committee Plan,

20  the Supplemental Disclosure Statement, the First Disclosure Statement, the Committee Ballot, the

21  Notice of Voting Procedures, and the Committee Solicitation Letter, as such documents may have

22  been modified at and following the hearing, the "Committee Solicitation Materials").

23         In connection with the hearing on confirmation of the Plan, the Court also considered (1)

24  all declarations submitted by the Committee in support of the Plan, including (without limitation)

25  the declarations of Victor A. Sahn, Howard B. Grobstein, Jack Alexander, Robert Suiter, Elizabeth

26  von Habsburg, Sam Leslie, A. Lavar Taylor, and Daniel A. Lev; (2) the testimony and other

27  evidence presented on behalf of the Committee at the hearing on confirmation of the Plan; (3) the

28

ASH\ 2466955.5                                            2

**SulmeyerKupetz,** A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1  Memorandum of Official Committee of Unsecured Creditors Regarding Confirmation of Second

2  Amended Plan of Reorganization [Dkt. No. 1722], including the Amended and Restated Plan

3  Term Sheet and Plan Support Agreement, attached as Exhibit 2 thereto, between AERC

4  Desmond's Tower, LLC ("AERC"), the Committee, Eric Wilson ("Wilson"), and Wilson

5  Administrative Services ("WASL"), dated January 15, 2016 (as modified in the manner set forth

6  in paragraphs IV and XII herein, the "AERC Plan Term Sheet"); (4) the settlement and plan

7  support agreement (the "WFI Modification Agreement") reached between the Committee,

8  Westminster Finance, Inc. ("WFI"), Wilson, and WASL; (5) the Term Sheet Agreement reached

9  between the Committee, the Debtor, Ace New York, a California corporation, Ace Museum, a

10  California Non-Profit, Wilson and Telford Building, Ltd. ("Telford") (the "Debtor Plan Term

11  Sheet"); (6) all papers filed and all testimony and other evidence presented at the confirmation

12  hearing in opposition to confirmation of the Plan; (7) the arguments and representations of counsel

13  made at the confirmation hearing; and (8) the parties' further briefing on these Findings.  The

14  Court also considered the objections of the Los Angeles County Metropolitan Transportation

15  Authority (the "MTA") and the Franchise Tax Board ("FTB"), which were resolved by agreement

16  on amended terms to the Plan.  Objections that Mr. Gary Lang, an individual, had raised to an

17  earlier version of the Plan were resolved by stipulation prior to the deadline for objections to the

18  Plan

19  Objections to confirmation of the Plan were filed by: (1) the Debtor; (2) Jennifer Kellen

20  ("Kellen") and Douglas Chrismas ("Chrismas"); (3) the FTB who appeared through Hutchinson

21  Meltzer of the Attorney General's Office of the State of California; (4) the MTA; and (5) Mr.

22  DeWain Valentine, an individual.  As stated above, the FTB's and MTA's objections were

23  resolved by agreed upon modifications to the Plan and for the reasons set forth on the record and

24  herein, the remaining objections are overruled other than as provided in these Findings.

25  In accordance with the confirmation hearing, this Court being fully advised on the

26  premises and good cause appearing therefor, this Court makes the following findings of fact and

27  conclusions of law.

28

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

**FINDINGS OF FACT**

1.      This Chapter 11 bankruptcy case was filed on February 19, 2013.  The Debtor has been and remains as the Debtor in Possession in this bankruptcy case since the commencement of this case.

2.      The Debtor is in the business of selling modern artwork and art objects to the public, and to other galleries and purveyors of artwork and art objects.  The Debtor maintains two business locations which are at 9430 Wilshire Boulevard, Beverly Hills, California ("Beverly Hills Property" or "Beverly Hills Location") and at 5514 Wilshire Boulevard, Los Angeles, California ("Mid-Wilshire Location").  Douglas Chrismas is the Debtor's principal.

3.      Also, in June, 2015, the Debtor sold the Beverly Hills Property to the MTA for $40,000,000 pursuant to a purchase agreement (the "MTA Purchase Agreement") and obtained, subject to the terms and conditions of agreements reached between the Debtor and the MTA, an agreement to buy back the Option Property, as that term is defined in the MTA Purchase Agreement.

4.      The Committee was appointed shortly after the filing of this Chapter 11 case as the duly appointed and constituted official committee of unsecured creditors, and has been continually involved in this bankruptcy case from the time of its appointment.  The Committee filed a Plan of Reorganization in this case in early 2015, however, the hearing on confirmation of that Plan was continued following the Debtor's successfully arranging for the sale of the Beverly Hills Property to the MTA.  Accordingly, as more particularly described below, the Committee reached an agreement with AERC which was first put before the Court on or about December 11, 2016.  That agreement was the Term Sheet and Plan Support Agreement (the "First Term Sheet") and was entered into by and between the Committee, Wilson, a creditor and chairperson of the Committee, WASL, and AERC.  The parties to the First Term Sheet include the creditors holding the most substantial claims in this case.  Subsequently, these same parties entered into the Amended and Restated Term Sheet and Plan Support Agreement, dated January 15, 2016 (the "Second Term Sheet"), which revised the First Term Sheet in order to provide for a global

settlement (the "Global Settlement") of all disputes between AERC, on the one hand and the bankruptcy estate. However, the Global Settlement was subject to approval of the applicable board or investment committee of AERC by February 3, 2016, and the parties agreed that if the board or investment committee did not approve the Global Settlement by February 3, 2016, that the provisions of paragraph VI.E of the Second Term Sheet would be replaced by the provisions of paragraph VI.E of the First Term Sheet (thereby creating the AERC Plan Term Sheet, as defined above), and the AERC Plan Term Sheet would continue as the effective agreement between the parties. Because such applicable board or investment committee approval was not obtained, paragraph VI.E of the First Term Sheet has replaced paragraph VI.E in the operative version of the AERC Plan Term Sheet that is referenced and incorporated herein. The Committee and AERC have further modified the AERC Plan Term Sheet to provide that Section XI, entitled Termination, is modified to provide that the AERC Plan Term Sheet shall be subject to termination by any party thereto upon one (1) day's written notice if any of the following are not achieved: (a) an order confirming the Plan shall be entered by no later than March 18, 2016; and (b) the Plan shall be substantially consummated no later than April 15, 2016. All references herein to the AERC Plan Term Sheet contemplate the agreement as modified by the terms described in this paragraph and Paragraph 12.

5.    Following the filing of the First Term Sheet with the Court, pursuant to its order entered on January 13, 2016 [Dkt. No. 1619], the Court approved the Supplemental Disclosure Statement, filed on January 11, 2016 [Dkt. No. 1600], and found that, together with the First Disclosure Statement, the Supplemental Disclosure Statement contains adequate information within the meaning of 11 U.S.C. § 1125 in respect of the Committee Plan. In the same order, the Court also approved (i) the form of the Committee Ballot, appended as Exhibit 4 to the "Notice of Official Committee of Unsecured Creditors of Submission of Solicitation Materials in Connection With Second Amended Plan of Reorganization of Official Committee of Unsecured Creditors" [Dkt. No. 1599] (the "Notice of Original Solicitation Materials"), (ii) the Notice of Voting Procedures, appended as Exhibit 5 to the Notice of Original Solicitation Materials, (iii) the

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1  Solicitation Letter, appended as Exhibit 1 to the "Notice of Official Committee of Unsecured

2  Creditors of Submission of: (1) Modified Solicitation Letter; and (2) Modified Notice of Plan

3  Confirmation Hearing and Related Dates, Deadlines and Procedures" [Dkt. No. 1610] (the "Notice

4  of Modified Solicitation Materials"), and (iv) the form of Committee Plan Confirmation Notice,

5  appended as Exhibit 2 to the Notice of Modified Solicitation Materials.

6          6.      In accordance with the Court's January 13, 2016 order [Dkt. No. 1619], on or

7  before January 13, 2016, the Committee transmitted to the Debtor, all creditors and interest holders,

8  all parties who have requested special notice, and to the Office of the United States Trustee, the

9  following materials: (1) the First Disclosure Statement; (2) the Supplemental Disclosure Statement;

10 (3) the Committee Plan; (4) the Committee Ballot; (5) the Notice of Voting Procedures; (6) the

11 Committee Solicitation Letter; and (7) the Committee Plan Confirmation Notice.  On  January 15,

12 2016, the Committee filed and transmitted to all interested parties the motion for approval of non-

13 material modifications to the Plan regarding the global settlement and Plan support agreement

14 reached between the Committee, AERC, Wilson, and WASL and related documents described in

15 Recital C, above [Dkt. No. 1641 contains the signed Second Term Sheet].  On January 27, 2016,

16 the Committee filed and served a motion to approve the plan modification and support agreement

17 reached between the Committee, WFI, Wilson, and WASL [Dkt. No. 1676].  The Committee has

18 complied with the Court's order regarding service of materials with respect to voting on the Plan

19 and the hearing on confirmation of the Committee's Plan.

20         7.      In the Court's January 13, 2016 order [Dkt. No. 1619], the Court also

21 approved procedures for voting on the Committee Plan, providing:

22             a.      In the event a creditor, interest holder, or other party entitled to vote

23 on the Committee Plan (a "Voting Party") previously voted to accept or reject the "First Amended

24 Plan of Reorganization of Official Committee of Unsecured Creditors" [Dkt. No. 1019] (the "First

25 Committee Plan"), and such Voting Party does not wish to change such prior vote, then it is not

26 necessary for such Voting Party to submit a new ballot with respect to the Committee Plan and the

27 vote such Voting Party previously submitted with respect to the First Committee Plan will be

28

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

ASH\ 2466955.5

1  counted as a vote to accept or reject (as the case may be) the Committee Plan.

2          b.     In the event a Voting Party did not vote on the First Committee

3  Plan, or if such Voting Party previously voted on the First Committee Plan but wishes to change

4  such previous vote, then such Voting Party must cast a ballot to accept or reject the Committee

5  Plan by the Voting Deadline set by the Court of January 27, 2016, at 5:00 p.m., Pacific Standard

6  Time.

7          8.     The Committee Plan is premised, in large part, on the AERC Plan Term

8  Sheet (which is incorporated herein and into the Committee Plan) between and among the

9  Committee, AERC, Wilson, WASL, as amended and restated, including as set forth herein.[2]  As set

10  forth in Paragraph 12, the AERC Plan Term Sheet contemplates, among other things, the entry of a

11  confirmation order by March 18, 2016, substantial consummation of the Committee Plan by April

12  15, 2016.  Therefore, absent implementation of the Committee Plan by April 6, 2016, the AERC

13  Plan Term Sheet, together with all the substantial benefit to the estate and creditors (described

14  below) would be placed in jeopardy.

15          9.     The results of the ballots received by counsel for the Committee are

16  summarized in the below ballot tally summary and, in greater detail, in the Declaration of Daniel A.

17  Lev (the "Lev Declaration") [Dkt. No. 1690].  In sum, and as described in detail in the Lev

18  Declaration, the Plan has been approved by one of the impaired classes of claims and interests

19  entitled to vote.  In this regard, three voting classes were designated under the Plan:  (i) Class 5

20  (Secured Claim of Westminster Finance, Inc.), which, pursuant to the modifications to the Plan has

21  become an unimpaired class, (ii) Class 7 (General Unsecured Claims), and (iii) Class 8 (Equity

22  Interests).  Class 7 voted overwhelmingly in favor of the Plan.  The results of the voting by the two

23  remaining impaired classes are as follows:[3]

24

25

26  _____

27  [2] A complete signed copy of the Second Term Sheet was filed with the Court on January 15, 2016 (Dkt. No. 1641)

28  [3] Details regarding the voting results are set forth in the Lev Declaration.

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

| Class | Vote |
|-------|------|
| 7 | Accept |
| 8 | Reject |

10.    The Plan also designates three non-voting classes under the Plan: (i) Class 1 (Secured Claims of Consignment Creditors), (ii) Class 2 (Secured Claims of Employment Development Department of the State of California), and (iii) Class 3 (Secured Claims of New York State Department of Taxation & Finance).  With the proposed Plan modifications, Class 5 becomes a fourth unimpaired non-voting class.  These unimpaired classes were not entitled to vote under the Plan.

11.    The Committee filed its Second Amended Plan of Reorganization on December 21, 2015.  The confirmation hearing was scheduled for January 6 and 7, 2016.  However, at the December 22, 2015, plan confirmation status conference, the Court permitted the Debtor to file its own plan if it did so by January 4, 2016, and set an expedited contested competing plan schedule leading up to a contested confirmation trial on February 3 through 5, 2016.

12.    With respect to the AERC Plan Term Sheet, each of the terms of Paragraphs VI.E.1 and 2 of the Second Term Sheet are replaced with the terms set forth in Paragraph VI.E of the First Term Sheet incorporated into the Plan filed on or about December 21, 2015, and such modified terms are incorporated herein, provided, however, that Paragraphs VI.B, the following language from the last sentence of Paragraph VI.C., "and copies of all books and records of Ace Museum, Ace New York, and any other entities through which Douglas Chrismas conducts business," and VI.I.8 of the AERC Plan Term Sheet have been removed and any determination with respect to Paragraph VI.I.8 is moot.

13.    To the extent that any of the below conclusions of law may be considered findings of fact, the same are incorporated by reference as though fully set forth as findings of fact.

## CONCLUSIONS OF LAW

1.    To the extent that any of the above findings of fact may be considered to constitute conclusions of law, the same are incorporated by reference as though fully set forth as

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1  conclusion of law.

2      2.    Pursuant to 28 U.S.C. § 1334, jurisdiction of the Debtor's chapter 11 case is

3  vested in the United States District Court for the Central District of California.  The United States

4  District Court has referred, pursuant to 28 U.S.C. § 157(a), all cases under title 11 of the United

5  States Code, and any and all proceedings arising under title 11 or arising in or related to a case

6  under title 11, to the bankruptcy judges of this district.  This case, having been so appropriately

7  referred to the bankruptcy court, grants the above-entitled court jurisdiction to make and enter an

8  appropriate and final order of confirmation of the Plan pursuant to 28 U.S.C. § 157(b)(1) and

9  (b)(2)(L).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

10      3.    The Bankruptcy Code, 11 U.S.C., permits the Committee to modify its Plan

11  at the stage of the confirmation hearing.  *See* 11 U.S.C. § 1127(a).  In addition, given the nature of

12  the modifications, the Plan may be modified without the need for further solicitation.  The

13  modifications do not change the way any creditor or shareholder would vote on the Plan.  That

14  alone is dispositive under the case law cited below.  Further, none of the modifications adversely

15  alter the treatment of any creditor or any equity security holder.

16      4.    Section 1127 of the Bankruptcy Code provides, in part:

17  (a) The proponent of a plan may modify such plan at any time
18  before confirmation, but may not modify such plan so that such plan
as modified fails to meet the requirements of sections 1122 and 1123
19  of this title.  After the proponent of a plan files a modification of
such plan with the court, the plan as modified becomes the plan.

20  ....

21  (c) The proponent of a modification shall comply with section  1125
22  of this title with respect to the plan as modified.

23  (d) Any holder of a claim or interest that has accepted or rejected a
plan is deemed to have accepted or rejected, as the case may be,
24  such plan as modified, unless, within the time fixed by the court,
such holder changes such holder's previous acceptance or rejection.

25  11 U.S.C. § 1127(a), (c), (d).  Rule 3019 of the Federal Rules of Bankruptcy

26  Procedure provides, in part:

27  In a chapter 9 or chapter 11 case, after a plan has been accepted and
28  before its confirmation, the proponent may file a modification of the

ASH\ 2466955.5        9

1

> plan.  If the court finds after hearing on notice to the trustee, any
> committee appointed under the Code, and any other entity
> designated by the court that the proposed modification does not
> adversely change the treatment of the claim of any creditor or the
> interest of any equity security holder who has not accepted in
> writing the modification, it shall be deemed accepted by all creditors
> and equity security holders who have previously accepted the plan.

2

3

4

Fed. R. Bankr. P. 3019(a).

5

6            5.        Rule 3019(a) does not contemplate a re-solicitation of acceptances or

7    rejections.  *See, e.g.*, *In re American Solar King Corp.*, 90 B.R. 808 (Bankr. W.D. Tex. 1988)

8    (modification to plan was not material and under Rule 3019 resubmission for vote was not

9    required).  As the 1983 Advisory Committee Note to Rule 3019 confirms:

10

> The rule makes clear that a modification may be made, after
> acceptance of a plan without submission to creditors and equity
> security holders if their interests are not affected.  To come within
> this rule, the modification should be one that does not change the
> rights of a creditor or equity security holder as fixed in the plan
> before modification.

11

12

13   1983 Advisory Committee Note to Fed. R. Bank. P. 3019.

14            6.        A confirmed plan may be modified at any time after confirmation and

15   before substantial consummation of the plan. 11 U.S.C. § 1127(b).  Plan modifications do not

16   require a new disclosure statement and court approval unless the modifications are material.  *See*

17   *Andrew v. Coopersmith (In re Downtown Inv. Club III)*, 89 B.R. 59, 65 (9th Cir. BAP 1988). "A

18   modification is *material* if it so affects a creditor or interest holder who accepted the plan that such

19   entity, if it knew of the modification, would be likely to reconsider its acceptance." *In re*

20   *American Solar King Corp.*, 90 B.R. at 824.

21            7.        Numerous courts have held that further disclosure and re-solicitation of

22   votes on a modified plan is only required when the modification materially *and* adversely affects

23   parties who previously voted for the plan.  *See, e.g., In re Federal-Mogul Global Inc.*, 2007 Bankr.

24   LEXIS 3940, *113 (Bankr. D.Del. 2007) (additional disclosure under section 1125 is not required

25   where plan "modifications do not materially and adversely affect or change the treatment of any

26   Claim against or Equity Interest in any Debtor"); *Beal Bank, S.S.B. v. Jack's Marine, Inc., (In re*

27   *Beal Bank, S.S.B.)*, 201 B.R. 376, 380 n.4 (E.D. Pa. 1996) (further disclosure and solicitation not

28

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

ASH\ 2466955.5

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1   required under section 1127(b) and (c) where modifications to the plan were immaterial).

2           8.     "Further disclosure occurs only when and to the extent that the debtor

3   intends to solicit votes from previously dissenting creditors or when the modification materially

4   and adversely impacts parties who previously voted for the plan." *In re American Solar King*

5   *Corp.*, 90 B.R. at 823-824 (the modified plan need not be resubmitted to creditors and interest

6   holders if the court finds that they are not adversely affected). *See also*, *Enron Corp. v. The New*

7   *Power Co. (In re The New Power Co.)*, 438 F.3d 1113, 1117-1118 (11th Cir. 2006) (holding that

8   the bankruptcy court may deem a claim or interest holder's vote for or against a plan as a

9   corresponding vote in relation to a modified plan unless the modification materially and adversely

10  changes the way that claim or interest holder is treated" and only if so, "the claim or interest

11  holder is entitled to a new disclosure statement and another vote").  A modification which is not

12  likely to trigger reconsideration of a vote on a plan *de facto* satisfies section 1125 disclosure

13  requirements. *In re American Solar King Corp.*, 90 B.R. at 824.

14          9.     The modifications proposed to the Plan, would not likely lead any creditor

15  or shareholder who accepted the Plan to reconsider its vote, do not adversely impact any creditor

16  or equity holder, are not material modifications, and should be deemed non-material

17  modifications, and require no further solicitation.  This Court, therefore, finds that the Committee

18  has complied with 11 U.S.C. § 1125 with respect to the proposed modifications to the Plan, and

19  deem the Plan (as modified) accepted by all parties who accepted (or have been deemed to accept)

20  the Plan.

21          10.     Accordingly, the Court approves the modifications to the Plan, as reflected

22  by (a) incorporating the WFI Modification Agreement into the Plan as non-material and without

23  the need for any further solicitation of the Plan, as modified; (b) finding that the Committee has

24  complied with 11 U.S.C. § 1125 with respect to the Plan, as modified, pursuant to the previously-

25  approved disclosure statement and prior supplemental disclosure, and finding that the Plan, as

26  modified, is the current operative plan pursuant to 11 U.S.C. § 1127(a) and (f)(2); and (c) deeming

27  the Plan, as modified, accepted by all parties who previously accepted (or are deemed to have

28

ASH\ 2466955.5

1    accepted) the Plan.

2        11.    For the Court to confirm the Plan, it must be established that the Plan

3    complies with the requirements set forth in 11 U.S.C. § 1129(a), which contains sixteen conditions

4    precedent to confirmation. *See In re WCI Cable, Inc.*, 282 B.R. 457, 466 (Bankr. D. Or. 2002); *In*

5    *re Sound Radio, Inc.*, 93 B.R. 849, 852 (Bankr. D. N.J. 1988); *In re Texaco, Inc.*, 84 B.R. 893, 905

6    (Bankr. S.D.N.Y. 1988).  Although Section 1129(a) lists sixteen prerequisites for confirmation,

7    not each of them need be met in this case.  *In re WCI Cable, Inc.*, 282 B.R. at 466, *citing In re*

8    *Ambanc La Mesa Ltd. Partnership*, 115 F.3d 650, 653 (9th Cir. 1997), cert. denied, 522 U.S. 1110,

9    118 S. Ct. 1039, 140 L. Ed. 2d 105 (1998); *see also In re Johns-Manville Corp.*, 843 F.2d 636,

10    648 (2d Cir. 1988).

11        12.    Generally, when a plan of reorganization satisfies each of the requirements

12    contained in Section 1129(a) of the Bankruptcy Code, the court shall confirm the plan without

13    considering Section 1129(b).  *See* 11 U.S.C. §§ 1129(a) and (b); *In re Arnold & Baker Farms*, 177

14    B.R. 648 (9th Cir. BAP 1994); *In re Texaco, Inc.*, 84 B.R. at 910.  Specifically, section 1129(b)

15    only applies if a class whose claims or interests are impaired does not accept the plan as required

16    by section 1129(a)(8).   Moreover, a plan of reorganization need only satisfy the requirements of

17    Section 1129(b) with respect to classes that voted against the plan.  *In re Johns-Manville Corp.*,

18    843 F.2d at 650.

19        13.    As set forth below, the Committee has demonstrated that the Plan satisfies

20    the applicable provisions of Section 1129 of the Bankruptcy Code.   In this regard, the

21    preponderance of the evidence standard applies.  As stated by the Ninth Circuit in *Ambanc*, "[t]he

22    bankruptcy court must confirm a Chapter 11 [plan proponent's] plan of reorganization if the [plan

23    proponent] proves by a preponderance of the evidence" that the plan satisfies Section 1129.  *In re*

24    *Ambanc La Mesa Ltd. Partnership*, 115 F.3d at 653.

25        14.    The Committee's Plan satisfies the requirements of Sections 1129(a)(1)

26    through (16) of the Bankruptcy Code, with the lone exception of Section 1129(a)(8) (although

27    Chrismas consents to confirmation of the Plan in accordance with the Debtor Plan Term Sheet).

28

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

Further, the Plan meets the "cramdown" requirements of Section 1129(b) of the Bankruptcy Code. As a result, based upon (i) the First Disclosure Statement, the Supplemental Disclosure Statement, the Plan and all exhibits and supplements thereto and related modification motions, exhibits and declarations, (ii) the declarations, testimony, and evidence introduced prior to or at the Confirmation Hearing, and (iii) the record in this case, the Committee has proven by a preponderance of the evidence that Section 1129 is satisfied and the Plan should be confirmed.

15. In this case, as stated below, the Plan satisfies all of the requirements of Section 1129(a) of the Bankruptcy Code, except for Section 1129(a)(8) with respect to impaired Class 8. With respect to Class 8, the Committee has satisfied the requirements of Section 1129(b). No holder of a junior Claim or Equity Interest receives or retains under the Plan on account of such junior Claim or Equity Interest any property. Therefore, the Committee is entitled to an order of the Court confirming the Plan.

16. It is well-established that the bankruptcy court must hold a hearing on confirmation of a plan of reorganization and consider any objections of creditors; the court has an independent duty to determine whether the plan has met all of the requirements necessary for confirmation. *See In re Acequia, Inc.*, 787 F.2d 1352, 1358 (9th Cir. 1986). The proponent of a plan has the burden of proof on each element of Section 1129(a). *In re Prudential Energy Company*, 58 B.R. 857, 862 (Bankr. S.D.N.Y. 1986). However, for those creditors who object, it is up to that objecting party to "produce evidence to establish the validity of the objection before the ultimate burden of proving that all the requirements of Section 1129(a) have been met is shifted to the plan proponent." *In re Future Energy Corporation*, 83 B.R. 470 (Bankr. S.D. Ohio 1988). The Committee has satisfies its burden to establish that confirmation of the Plan is appropriate.

17. Section 1129(a)(1) of the Bankruptcy Code permits the Court to confirm a plan only if the plan complies with the applicable provisions of the Bankruptcy Code. 11 U.S.C. § 1129(a)(1); *In re PWS Holding Corporation*, 228 F.3d 224, 230 (3d Cir. 2000); *Kane v. Johns-Manville Corp.*, 843 F.2d at 648-649; *In re Texaco Inc.*, 84 B.R. at 905. The legislative history of

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1  section 1129(a)(1) explains that this provision encompasses the requirements of Sections 1122 and

2  1123 of the Bankruptcy Code, which are the substantive provisions most relevant in satisfying

3  section 1129(a)(1).  *See* H.R. Rep. No. 5-595, 95th Cong., 1st Sess. 412 (1977); S. Rep. No. 95-

4  989, 95th Cong., 2d Sess. 126 (1978); *In re Johns-Manville Corp.*, 68 B.R. 618, 629 (Bankr.

5  S.D.N.Y. 1986), aff'd in part, rev'd in part on other grounds, 78 B.R. 407 (S.D.N.Y. 1987), aff'd,

6  *Kane v. Johns-Manville Corp.*, 843 F.2d at 648-649; *Toy & Sports Warehouse, Inc.*, 37 B.R. 141,

7  (Bankr. S.D.N.Y. 1984); 7 Resnick and Sommer, *Collier on Bankruptcy*, ¶ 1129.02[1] at 1129-17

8  – 1129-18 (16th ed. 2015).  Section 1122 governs classification of claims and interests and section

9  1123 sets forth the provisions that are required to be included, and those that may be included, in a

10  plan of reorganization.  11 U.S.C. §§ 1122 and 1123.  As shown below, the Plan satisfies the

11  requirements of section 1129(a)(1).[4]

12      18.    Section 1123(a)(1) of the Bankruptcy Code requires that a plan designate,

13  subject to Section 1122 of the Code, classes of claims, other than claims of kind specified in

14  sections 507(a)(2) (administrative expenses), 507(a)(3) (involuntary case gap claims), or 507(a)(8)

15  (unsecured priority tax claims) and classes of interests.  11 U.S.C. § 1123(a)(1).  In designating

16  Classes 1 through 8 in Section II of the Plan, the Committee has satisfied the requirement of

17  11 U.S.C. § 1123(a)(1).

18      19.    It is not clear from the language of the statute nor from its legislative history

19  whether Section 1123(a)(1) of the Bankruptcy Code prohibits the classification of

20  Section 507(a)(2), (a)(3) and (a)(8) claims or merely makes such classification permissive.  *See In*

21  *re Western Asbestos Co.*, 313 B.R. 832, 841, n.11 (N.D. Cal. 2003) (claims arising from

22  Bankruptcy Code sections 507(a)(1), (a)(2), and (a)(8) are not classified because these claims may

23  not be impaired and their treatment in a plan may deviate from that specified in the Bankruptcy

24  Code only if the claimant affirmatively agrees to less favorable treatment).  Moreover, the court in

---

26  [4] As noted, the Plan does not satisfy Section 1129(a)(8) with respect to Class 8 (the insider equity

27  interest in the Debtor), but the Plan does satisfy the provisions of Section 1129(b) as outlined
below and Chrismas agrees to confirmation of the Plan in accordance with the Debtor Plan Term

28  Sheet; accordingly, satisfaction of section 1129(a)(8) is not required.

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1   *In re Sullivan* held that classification of such claims was prohibited.  *See In re Sullivan*, 26 B.R.

2   677, 678 (Bankr. W.D.N.Y. 1982); *In re Perdido Motel Group, Inc.*, 101 B.R. 289, 293-294

3   (Bankr. N.D. Ala. 1989).  The reason that it is unnecessary to classify such claims is that a

4   majority of a class composed of creditors holding such priority claims cannot bind the minority to

5   a treatment at variance with Section 1129(a)(9) of the Bankruptcy Code .  <u>See</u> discussion of

6   section 1129(a)(9), <u>infra</u>.

7          20.    In the Plan, the Committee has appropriately not sought to classify priority

8   claims under Section 507(a)(2), (a)(4), (a)(5) and (8) of the Bankruptcy Code.  Instead, such

9   claims are included in Section III of the Plan, which sets forth the treatment of "Unclassified

10  Administrative Expenses, Priority Wage Claims, and Priority Tax Claims".   The designation of

11  such claims under the Plan is in accordance with Section 1123(a)(1) of the Bankruptcy Code.

12         21.    Section 1122 of the Bankruptcy Code contains two rules applicable to

13  classification of claims and a single rule concerning classification of interests.  11 U.S.C. § 1122.

14  Under Section 1122(a), a claim or interest may be placed in a particular class under a plan only if

15  such claim or interest is substantially similar to the other claims or interests of such class.

16  11 U.S.C. § 1122(a); *see Beal Bank v. Waters Edge Ltd. Partnership*, 248 B.R. 668, 691 (Bankr.

17  D. Mass. 2000) (citing cases).  Section 1122(b) provides that a plan may designate a separate class

18  of claims consisting of unsecured claims that are less than or reduced to an amount that the court

19  approves as reasonable and necessary for administrative convenience.  11 U.S.C. § 1122(b); *see In*

20  *re Barnes*, 309 B.R. 888, 893 (Bankr. D. Tex. 2004).

21         22.    Section 1122(a) of the Bankruptcy Code does not require that similar claims

22  necessarily be placed in the same class.  11 U.S.C. § 1122(a); *see also, WHBA Real Estate Ltd.*

23  *Partnership v. LaFayette Hotel Partnership (In re LaFayette Hotel Partnership)*, 227 B.R. 445,

24  449 (Bankr. S.D.N.Y. 1998) ("Although [section] 1122 explicitly prohibits the placement of

25  dissimilar claims in the same class, it does not address the issue of whether similar claims must be

26  placed in the same class."); *see also, In re U.S. Truck Co.*), 800 F.2d 581, 584-587 (6th Cir. 1986);

27  *In re Texaco Inc.*, 84 B.R. at 905; 7 Resnick and Sommer, *Collier on Bankruptcy,* ¶ 1122.03[1][a]

28

ASH\ 2466955.5

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1    at 1122-7.  Further, Congress intended to afford bankruptcy judges' broad discretion to decide the

2    propriety of plans in light of the facts of each case.  *See In re U.S. Truck Co., Inc.*, 800 F.2d at

3    584-586 (discussing the legislative history of section 1122); *see also Wells Fargo Bank, N.A. v.*

4    *Loop 76, LLC (In re Loop 76, LLC)*, 465 B.R. 525 (9th Cir. BAP 2012).

5            23.    There is broad discretion to classify claims in the Ninth Circuit.  *In re*

6    *Johnston*, 21 F.3d 323, 327-328 (9th Cir. 1994) (holding that separate classification was

7    permissible and that bankruptcy courts have broad discretion to classify claims).  Moreover, a plan

8    proponent is allowed considerable discretion to classify claims and interests according to the facts

9    and circumstances of the case so long as the classification scheme does not violate basic priority

10   rights or manipulate voting.  *See In re Tucson Self-Storage, Inc.*, 166 B.R. 892, 897 (9th Cir. BAP

11   1994), *quoting, In re Holywell Corp.,* 913 F.2d 873, 880 (11th Cir. 1990).  Here, the classification

12   scheme under the Committee's Plan is proper and appropriate.  Section II of the Plan, designating

13   classes of claims and interests under the Plan, places only claims or interests in each particular

14   class that are substantially similar to the other claims or interests in the class.  The Plan therefore

15   complies with Section 1122(a).  *See Beal Bank v. Waters Edge Ltd. Partnership*, 248 B.R. at 691.

16           24.    Section 1123(a) of the Bankruptcy Code sets forth the mandatory

17   requirements with which every chapter 11 plan must comply.  *See* 11 U.S.C. § 1123(a).  As

18   demonstrated below, the Plan fully complies with those requirements.

19           25.    Section 1123(a)(1) requires that a plan designate classes of claims, other

20   than claims of a kind specified in Sections 507(a)(2) (administrative expense claims), 507(a)(3)

21   (claims arising during the "gap" period in an involuntary case), or 507(a)(8) (priority tax claims).

22   11 U.S.C. § 1123(a)(1).  The Plan satisfies the requirements of Section 1123(a)(1), as all classes of

23   claims designated in the Plan are claims other than those specified in Sections 507(a)(2),

24   507(a)(3), and 507(a)(8).

25           26.    Section 1123(a)(2) of the Bankruptcy Code requires that a plan "specify any

26   class of claims or interests that is not impaired under the plan".  11 U.S.C. § 1123(a)(2).  Article II

27   of the Plan specifies the classes of claims and interests that are unimpaired under the Plan: Class 1

28

ASH\ 2466955.5

1 (Secured Claims of Consignment Creditors), Class 2 (Secured Claims of Employment

2 Development Department of the State of California), and Class 3 (Secured Claims of New York

3 State Department of Taxation & Finance).[5]  As modified, the Plan also provides that Class 5

4 (WFI) is unimpaired.  Section 1124(1) of the Bankruptcy Code provides that "a class of claims or

5 interests is impaired under a plan unless ... the plan leaves unaltered the legal, equitable, and

6 contractual rights to which such claim or interest entitles the holder of such claim or interest".  11

7 U.S.C. § 1124(1).  The Ninth Circuit has held that, when determining impairment under Section

8 1124, "[t]he narrow question that thus arises is whether ... 'legal, equitable, [or] contractual rights'

9 were *changed by the Plan* ... ".  See *In re L & J Anaheim Associates*, 995 F.2d 940, 943 (9th Cir.

10 1993) (emphasis added).  Although the Ninth Circuit interpreted Section 1124(1)'s "impairment"

11 concept broadly, to include even positive alterations of creditor rights, the court repeatedly

12 referred to changes made "by the plan".  Id. at 942-943.

13          27.     Further, in connection with Section 1124(1), courts have held that

14 impairment does not result where a claimant's rights are altered by statute (including the

15 Bankruptcy Code) with such changes merely reflected in a plan of reorganization.  Specifically, it

16 has been noted that "[i]mpairment results from what the plan does, not what the statute does".  *In*

17 *re PPI Enterprises (U.S.), Inc.*, 324 F.3d 197, 204 (3d Cir. 2003) (noting that Section 502(b)(6)

18 cap on landlord claims was required statutory alteration of rights, not plan alteration, and,

19 therefore, claim was not "impaired").

20          28.     Based on the foregoing, impairment only results from plan alteration of a

21 claimant's rights.  As such, there is no impairment of the Class 1, Class 2, Class 3 and Class 5

22 claims.  The Plan does not alter the legal, equitable, or contractual rights of holders of such

23 claimants under the Plan.  Allowed claims in those classes are to be paid in cash in full on or about

24 the Effective Date, with interest to be included to the extent permitted by applicable law.  *See*

25 Article IV of the Plan.  Thus, Article II of the Plan properly identifies the classes that are

26 unimpaired.

27 _____

28 [5] The treatment of these claims is set forth in Article IV of the Plan.

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

29.    Section 1123(a)(3) of the Bankruptcy Code requires that a plan "specify the treatment of any class of claims or interests that is impaired under the plan".  11 U.S.C. § 1123(a)(3).  Article IV of the Plan specifies the treatment of those claims and interests that are impaired under the Plan, which, as modified, are:  (i) Class 7 (General Unsecured Claims), and (ii) Class 8 (Equity Interests).  Since the Plan properly identifies the impaired classes and specifies the treatment of such classes, the Plan satisfies Section 1123(a)(3) of the Code.

30.    Section 1123(a)(4) of the Bankruptcy Code requires that a plan provide "the same treatment for each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to a less favorable treatment of such particular claim or interest."  11 U.S.C. § 1123(a)(4).  This provision provides creditors of the same class with a right to equality of treatment.  Article IV of the Plan provides for equality of treatment for each claim or interest within a particular class.  The Plan, therefore, complies with Section 1123(a)(4) of the Bankruptcy Code.

31.    Section 1123(a)(5) of the Bankruptcy Code requires a plan of reorganization to "provide adequate means for the plan's implementation" and sets forth a number examples for doing so.  11 U.S.C. § 1123(a)(5); *see In re Texaco Inc.*, 84 B.R. at 905.  Some of the examples provided in this section and which are used in the Plan include transfer of all or any part of the property of the estate to one or more entities (whether organized before or after confirmation of the plan), sales of the debtor's property, satisfaction or modification of any lien, and issuance of securities of the debtor for any appropriate purpose.  11 U.S.C. § 1123(a)(5).  The methods of plan implementation set forth in Section 1123(a)(5) are "self-executing".  In other words, a plan of reorganization may propose actions to implement the plan notwithstanding contrary non-bankruptcy law or agreements.  7 Resnick and Sommer, Collier on Bankruptcy, ¶ 1123.01[5] at 1123-10 -1123-11 and n. 21, *citing inter alia, Pacific Gas & Electric Co. v. California ex rel. California Dept. of Toxic Substances.*, 350 F.3d 932, 937 (9th Cir. 2003).  The examples of adequate means for implementation of a plan provided in section 1123(a)(5) are illustrative and the section does not exclude or limit any other means.  *Id*.

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

32.     The Ninth Circuit has recognized that these methods of plan implementation preempt all non-bankruptcy law dealing with financial matters. *Pacific Gas & Electric Co. v. California ex rel. California Dept. of Toxic Substances.*, 350 F.3d at 948 (holding that "'notwithstanding' clause of §1123(a) expressly preempts otherwise applicable nonbankruptcy law" dealing with financial conditions). Further, the Fourth Circuit has noted that Section 1123(a)(5) is an "empowering" statute meant to enhance the ability of a trustee, a debtor in possession, or plan proponent to deal with property of the estate by providing for preemption of conflicting state laws. *In re FCX, Inc.*, 853 F.2d 1149, 1155 (4th Cir. 1988). Here, Article V of the Plan sets forth with appropriate specificity the manner in which the Plan will be implemented and effectuated, thereby satisfying the requirements of Section 1123(a)(5).

33.     Section 1123(a)(6) of the Bankruptcy Code requires that a plan provide for the inclusion in the charter of the debtor, if the debtor is a corporation, of a provision prohibiting the issuance of nonvoting equity securities, and providing, as to the several classes of securities possessing voting power an appropriate distribution of such power among such classes, including, in the case of any class of equity securities having a preference over another class of equity securities with respect to dividends, adequate provisions for the election of directors representing such preferred class in the event of default and the payment of such dividends. 11 U.S.C. § 1123(a)(6). The Ninth Circuit has stated "§ 1123(a)(6) only prohibits the issuance of new non-voting securities." *In re Acequia, Inc.*, 787 F.2d at 1361. There are no non-voting equity securities issued under the Plan. Accordingly, this section has been satisfied.

34.     In this case, Section 5.4 of the Plan provides for the cancellation of the existing equity interests in the Debtor and the issuance of the Replacement Share to the Plan Trust. The Plan Trustee shall have no ability to cause the Plan Trust to transfer the Replacement Share without Chrismas's consent, and the Plan Agent shall be the sole person responsible for the Post-Confirmation Debtor's compliance with the terms of the Plan. Further, the concerns addressed by section 1123(a)(6) have no applicability here since the Replacement Share, following the occurrence of a Solvency Event or the liquidation of all assets of the Post-Confirmation Debtor,

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1   will be returned to Chrismas, at his election.  Moreover, to the extent necessary, and subject to the

2   terms of the AERC Plan Term Sheet and the Debtor Plan Term Sheet, the Plan Agent, Plan

3   Trustee and Post-Confirmation Officer and Director have the authority under the Plan to amend

4   the Post-Confirmation Debtor's corporate governance documents.  See Section 5.12 of the Plan.

5   Accordingly, to the extent it applies, Section 1123(a)(6) of the Bankruptcy Code has been

6   satisfied.

7          35.    Section 1123(a)(7) of the Bankruptcy Code states that a plan shall contain

8   only provisions that are consistent with the interests of creditors and equity security holders and

9   with public policy with respect to the manner of selection of any officer, director, or trustee under

10  the plan and any successor to such officer, director or trustee.  11 U.S.C. § 1123(a)(7).

11  Section 1129(a)(5), which is discussed below, augments section 1123(a)(7) and requires, as a

12  condition of confirmation, that the proponents of the plan disclose the identity and affiliation of

13  any individuals proposed to serve, after confirmation of the plan, as directors, officers, or voting

14  trustees of the debtor, or of an affiliate of the debtor participating in a joint plan with the debtor, or

15  of a successor to the debtor under the plan.  In addition, Section 1129(a)(5)(A)(ii) requires that the

16  appointment or continuance of any director, officer or voting trustee be consistent with "the

17  interests of creditors and equity security holders and with public policy."  11 U.S.C. § 1129(a)(5).

18         36.    Upon the Effective Date, all existing equity interests in the Debtor will be

19  cancelled, and the Replacement Share (as defined in Article VII of the Plan) in the Post-

20  Confirmation Debtor will be issued to the Plan Trust (as defined in the Plan).  Leslie shall serve as

21  the Plan Agent, Plan Trustee, and Post-Confirmation Officer and Director, or, if Leslie declines

22  such appointment or the Bankruptcy Court does not approve such appointment, such person

23  selected by the Committee, subject to the consent of Wilson and AERC.

24         37.    All responsibilities regarding post-confirmation management of the Debtor

25  shall be in the hands of Sam Leslie ("Leslie") as Plan Agent, Plan Trustee and Post-Confirmation

26  Officer and Director.  Leslie is a Panel Trustee on the Panel in Los Angeles, regularly serves as a

27  Chapter 11 Trustee, is a Certified Public Accountant and has experience and an interest in artwork

28

ASH\ 2466955.5                                      20

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1  and the art world.  AERC, Wilson, and Chrismas consent to appointment of Leslie as Plan Agent,

2  Plan Trustee and Post-Confirmation Officer and Director.  The rights, responsibilities and

3  obligations of the Plan Agent are set forth in detail in the Plan, as modified herein.

4          38.     All provisions of the Plan, including the provisions with regard to the Plan

5  Agent and the Plan Trust, are consistent with the interests of creditors and equity security holders

6  and with public policy with respect to the manner of selection of any officer, director, or trustee

7  under the plan and any successor to such officer, director or trustee as they do not contravene

8  applicable non-bankruptcy provisions regarding such.  *See* 7 Resnick and Sommer, *Collier on*

9  *Bankruptcy,* ¶1123.01[7] at 1123-14 – 1123-15.  Thus, Section 1123(a)(7) of the Bankruptcy Code

10  is satisfied.

11          39.     Section 1123(a)(8) was added to the Bankruptcy Code to provide that, to be

12  confirmable, an individual debtor's plan must provide for the payment to creditors of all or such

13  portion of earnings from personal services or other future income of the debtor.  Since the Debtor

14  is a corporation, Section 1123(a)(8) is inapplicable to this case.

15          40.     Section 1123(b) of the Bankruptcy Code sets forth the permissive

16  provisions that may be incorporated into a chapter 11 plan, including any "provision not

17  inconsistent with the applicable provisions of [the Bankruptcy Code]".  11 U.S.C. § 1123(b)(6).

18  Section 1123(b) suggests certain permissive plan provisions.  11 U.S.C. § 1123(b); *see In re*

19  *Texaco Inc.*, 84 B.R. at 906.  Several of these discretionary provisions are contained in the Plan.

20  The Plan, specifically includes a number of the suggested discretionary Plan provisions set forth in

21  11 U.S.C. § 1123(b), including: (1) the impairment of Classes 7 and 8 and leaving of Classes 1, 2,

22  3 and 5 unimpaired under the Plan; (2) the modification of the rights of holders of unsecured

23  claims; (3) the cancellation of Equity Interests under the Plan; (4) the AERC Plan Term Sheet and

24  the Debtor Plan Term Sheet; (5) the retention and enforcement of claims by the Plan Agent; and

25  (6) the sale of property of the estate and the distribution of sale proceeds.

26          41.     Section 1123(b)(6) also permits a plan to contain "any other appropriate

27  provision not inconsistent with the applicable provisions of this title".  11 U.S.C. § 1123(b)(5); *see*

28

ASH\ 2466955.5

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1   *e.g., Class Five Nevada Claimants v. Dow Corning Corp. (In re Dow Corning Corp.)*, 280 F.3d

2   648, 656 (6th Cir. 2001); *In re Texaco Inc.*, 84 B.R. at 906.  The Plan does not contain any

3   provision that is inconsistent with the applicable provisions of the Bankruptcy Code.

4            42.     As shown above, the Plan complies with both Section 1122 of the

5   Bankruptcy Code and with the mandatory and permissive provisions of Section 1123 of the Code.

6   Moreover, the Plan does not violate any other applicable provision of the Bankruptcy Code, 11

7   U.S.C.  Therefore, the Plan satisfies the requirements of Section 1129(a)(1) of the Code.  *See In re*

8   *Texaco Inc.*, 84 B.R. at 906.

9            43.     Section 1123(b)(1) of the Bankruptcy Code permits a plan proponent, under

10   a plan, to impair or leave unimpaired any class of claims, secured or unsecured, or of interests.  In

11   this case, the Plan properly impairs the voting classes of claims and interests.

12            44.     Section 1123(b)(2) of the Bankruptcy Code allows a plan to provide for the

13   assumption, assumption and assignment, or rejection of executory contracts and unexpired leases

14   pursuant to Section 365 of the Bankruptcy Code.  11 U.S.C. § 1123(b)(2).  Article XI of the Plan

15   provides that with regard to executory contracts and leases, the Plan Agent have forty-five (45)

16   days following the Effective Date to assume or reject, subject to the terms of the Plan.  For the

17   avoidance of doubt, this Plan does not provide for assumption of the Mid-Wilshire Lease, and all

18   rights pertaining thereto are specifically reserved as set forth herein and in the AERC Plan Term

19   Sheet.

20            45.     Section 1123(b)(3) of the Bankruptcy Code provides that a plan may

21   provide for the settlement or retention of any claim or interest belonging to the debtor.  11 U.S.C.

22   § 1123(b)(3).  Under the Plan, the Plan Agent is designated as the representative of the Debtor's

23   estate under Section 1123(b)(3) and shall have the right to assert or continue to assert, as

24   applicable, any or all of the Reserved Claims and/or the Avoidance Actions. Also, the Plan Agent

25   shall have authority to implement the terms of the AERC Plan Term Sheet, the WFI Modification

26   Agreement, and the Debtor Plan Term Sheet (collectively, the "Settlements").  As of the Effective

27   Date, the Plan Agent shall retain and have full authority to have the Post-Confirmation Debtor to

28

enforce, sue on, compromise, and settle any and all claims (except for the prohibitions described in the Plan, Section 5.3.2, subsection (a), that purport to limit the Plan Agent's ability to market, lease or sell the Mid-Wilshire Property to Chrismas, Kellen, or any entity affiliated with either of them). *See*, without limitation, Sections 5.14 and 5.15 of the Plan.

46.    Section 1123(b)(4) of the Bankruptcy Code permits the Committee, under the Plan, to provide for the sale of all or substantially all of the property of the estate, and the distribution of the proceeds of such sale among holder of claims or interests. 11 U.S.C. § 1123\(b)(4). As noted, Article V of the Plan and the AERC Plan Term Sheet describe the mechanism for the sale of substantially all assets of the estate in accordance with Section 1123\(b)(4), to the extent necessary to pay all creditors in full in accordance with the Plan.

47.    Section 1123(b)(5) of the Bankruptcy Code permits the Committee, under the Plan, to modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims. 11 U.S.C. § 1123(b)(5). In this case, the Plan modifies the rights of unsecured creditors (with the goal of maximizing recovery and achieving payment in full) and leaves unaffected the rights of certain classes of secured claims.

48.    The Plan properly and appropriately provides specific provisions for effectuating the Plan[6]:

49.    Pursuant to Federal Rule of Bankruptcy Procedure 9019, and in consideration for the classification, distribution and other benefits provided under the Plan, the provisions of the Plan shall constitute a good faith compromise and settlement of all claims or controversies resolved pursuant to the Plan. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of each of the compromises, releases, and settlements provided for in the Plan, and the Bankruptcy Court's findings shall constitute its determination that such compromises and settlements are in the best interests of the Debtor, the Post-Confirmation Debtor,

---

[6] The Plan and the AERC Plan Term Sheet set forth the terms of the Plan, as modified, in its entirety.

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

the Estate, and any holders of claims against the Debtor.

50.    Insofar as the Plan Agent is the designated representative of the post-confirmation estate under Section 1123(b)(3) of the Bankruptcy Code, the Plan Agent succeeds to the debtor in possession as a fiduciary to prosecute Chapter 5 [of the Bankruptcy Code] causes of action (and any other claims) on behalf of the bankruptcy estate.  The detailed provisions of the Plan demonstrate that adequate means for the Plan's implementation have been presented, that the Plan and the Settlements adequately address implementation of the Plan, and that implementation of the Plan is feasible.

51.    Section 1129(a)(2) of the Bankruptcy Code requires the proponent of a plan to comply "with the applicable provisions of this title".  11 U.S.C. § 1129(a)(2).  Whereas Section 1129(a)(1) focuses on the form and content of a plan itself, Section 1129(a)(2) is concerned with the applicable activities of a plan proponent under the Bankruptcy Code.  *See In re Downtown Inv. Club, LLP*, 89 B.R. 59, 65 (9th Cir. BAP 1988) ("Bankruptcy Code § 1127(b) requires that a modified plan must comply with Bankruptcy Code § 1129.  Section 1129(a)(2) in turn requires that the proponent of the plan complies with the applicable provisions of Title 11.").  In determining whether a plan proponent has complied with this section, courts focus on whether the plan proponent has adhered to the disclosure and solicitation requirements of Sections 1125 and 1126 of the Code.  See *In re Brotby*, 303 B.R. 177, 192-93 (9th Cir. BAP 2003) (focusing analysis under Section 1129(a)(2) on adequacy of disclosure of plan); *In re Sierra-Cal*, 210 B.R. 168, 176 (Bankr. E.D. Cal. 1997).

52.    The principal purpose of Section 1129(a)(2) is to require, as a condition of confirmation, that the court ascertain whether the proponent of the plan under consideration has complied with the requirements of section 1125 in the solicitation of acceptances of the plan.  See, e.g., *Tenn-Fla Partners v. First Union National Bank of Florida*, 229 B.R. 720, 732 (Bankr. W.D. Tenn. 1999); *In re Trans World Airlines, Inc.*, 185 B.R. 302, 313 (Bankr. E.D. Mo. 1995); 7 Resnick and Sommer, *Collier on Bankruptcy*, ¶ 1129.02[2] at 1129-19 -1129-21 ("The legislative history of the section indicates that Congress was primarily concerned 'that the proponent of the

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1  plan comply with the applicable provisions of title 11, such as section 1125 regarding

2  disclosure.'"); H.R. Rep. No. 5-595, at 412 (1977); S. Rep. No. 95-989, at 126 (1978); *In re Toy &*

3  *Sports Warehouse, Inc.*, 37 B.R. 141, 149 (Bankr. S.D.N.Y. 1984).  The Committee has complied

4  with the applicable provisions of the Bankruptcy Code, including the provisions of Sections 1125

5  and 1126 of the Bankruptcy Code regarding the adequacy of disclosure and plan solicitation.

6         53.     The primary purpose of a disclosure statement is to give creditors and

7  interest holders the information they need to decide whether to accept the plan.  *See Captain*

8  *Blythers, Inc. v. Thompson (In re Captain Blythers, Inc.)*, 311 B.R. 530, 537 (9th Cir. BAP 2004).

9  A disclosure statement need not comply with the disclosure standards of the federal securities

10  laws.  A disclosure statement need not meet the extensive disclosure requirements of the securities

11  laws for registration statements and the like. Indeed, Section 1125(d) provides that the adequacy of

12  a disclosure statement is not governed by any otherwise applicable nonbankruptcy law, rule or

13  regulation. 11 U.S.C. § 1125(d); *see also, In re Applegate Property, Ltd.*, 133 B.R. 827, 830

14  (Bankr. D. Tex. 1991), *citing In re A.C. Williams Co.*, 25 B.R. 173, 176 (Bankr. N.D. Ohio 1982)

15  (lack of compliance with securities laws is irrelevant to whether disclosure statement should be

16  approved); *accord, Kirk v. Texaco, Inc.*, 82 B.R. 678, 681 (S.D.N.Y. 1988).  Bankruptcy judges

17  have broad discretion in reviewing disclosure statements and what constitutes adequate

18  information and any particular instance will develop on a case-by-case basis.  *See Kirk v. Texaco,*

19  *Inc.*, 82 B.R. at 682.  Section 1125(e) of the Bankruptcy Code provides in relevant part as follows:

20

21         A person that solicits acceptance or rejection of a plan, in good
        faith and in compliance with the applicable provisions of this title

22         ... is not liable, on account of such solicitation or participation, for
        violation of any applicable law, rule, or regulation governing

23         solicitation of acceptance or rejection of a plan.

24  11 U.S.C. § 1125(e).

25         54.     As discussed above, in accordance with the Court's January 13, 2016 order

26  [Dkt. No. 1619], on or before January 13, 2016, the Committee timely transmitted to the Debtor,

27  all creditors and interest holders, all parties who have requested special notice, and to the Office of

28

ASH\ 2466955.5

**SulmeyerKupetz,** A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1   the United States Trustee, the following materials: (1) the First Disclosure Statement; (2) the

2   Supplemental Disclosure Statement; (3) the Committee Plan; (4) the Committee Ballot; (5) the

3   Notice of Voting Procedures; (6) the Committee Solicitation Letter; and (7) the Committee Plan

4   Confirmation Notice.  Further, on  January 15 and January 27, 2016, the Committee transmitted to

5   interested parties the motions for approval of non-material modifications to the Plan and related

6   documents and declarations.  The Committee has fully complied with the Court's order regarding

7   service of materials with respect to voting on the Plan and the hearing on confirmation of the

8   Committee's Plan.  Moreover, the Committee has acted in good faith and has complied with the

9   requirements of section 1125 in soliciting acceptances of the Plan.

10          55.     Based upon the foregoing, the requirements of Section 1129(a)(2) of the

11  Bankruptcy Code are satisfied.

12          56.     Section 1129(a)(3) requires that a plan be "proposed in good faith and not

13  by any means forbidden by law."  11 U.S.C. § 1129(a)(3).  The Ninth Circuit has held that,

14  although the Bankruptcy Code does not define "good faith," "[a] plan is proposed in good faith

15  where it achieves a result consistent with the objectives and purposes of the Code."  *In re Sylmar*

16  *Plaza, L.P.,* 314 F.3d 1070, 1074 (9th Cir. 2002) (*citing In re Corey*, 892 F.2d 829, 835 (9th Cir.

17  1989)).  "[F]or purposes of determining good faith under section 1129(a)(3) . . . the important

18  point of inquiry is the plan itself and whether such plan will fairly achieve a result consistent with

19  the objectives and purposes of the Bankruptcy Code."  *In re Sylmar Plaza, L.P.*, 314 F.3d at 1074

20  (*quoting In re Madison Hotel Associates*, 749 F.2d 410,425 (7th Cir. 1994)).  The requirement of

21  good faith must be viewed in light of the totality of the circumstances surrounding the

22  establishment of a chapter 11 plan.  *In re Sylmar Plaza, L.P.*, 314 F.3d at 1074.  As noted by the

23  court in *In re Stolrow's, Inc.*, 84 B.R. 167 (9th Cir. BAP 1988),

24          Good faith in proposing a plan of reorganization is assessed by the
        Bankruptcy Judge and viewed under the totality of the

25          circumstances.  *(Jorgensen v. Federal Land Bank of Spokane) In re
        Jorgensen*, 66 B.R. 104, 108-09 (B.A.P. 9th Cir. 1986).  Good faith

26          requires . . . a fundamental fairness in dealing with one's creditors.
        Id. at 109.  The Bankruptcy Judge is in the best position to assess

27          the good faith of the parties.

28

ASH\ 2466955.5                              26

1   Id., at 172.

2       57.     One factor held to be determinative of whether a plan has been proposed in

3   good faith is whether or not the plan proponent has abided by all court orders.  *See In re Coastal*

4   *Equities, Inc.*, 33 B.R. 898, 906 (Bankr. S.D. Cal. 1983); *In re Victory Construction Co.*, 9 B.R.

5   549, 559-560 (Bankr. C.D. Cal. 1981).  In proposing the Plan, the Committee has complied with

6   all court orders.  Since its appointment, the Committee has diligently and in good faith pursued a

7   course of action which would enable the allowed claims of creditors to get paid.  The Committee

8   has not proposed the Plan for any purpose that is prohibited by law.  Accordingly, the Plan is

9   proposed in good faith and the provisions of Section 1129(a)(3) have been met.

10      58.     The proposal of the Plan is consistent with the objectives and purposes of

11  the Bankruptcy Code and was made with honesty and good intentions and with a basis for

12  expecting that, under the circumstances, it is the best means for maximizing recovery by creditors

13  of the Debtor.  *See e.g., In re Leslie Fay Cos.*, 207 B.R. at 781, *quoting, In re Texaco Inc.*, 84 B.R.

14  at 907.  Therefore, the Plan has been proposed in good faith, not by any means forbidden by law,

15  and complies with section 1129(a)(3).

16      59.     In this case, all professionals rendering pre-confirmation services shall

17  receive compensation from the estate only with prior court approval.  All payments made or

18  promised under the Plan have been disclosed to the Court in the Disclosure Statement and Plan.

19  Bankruptcy Code section 1129(a)(4) requires that any payment made or to be made by the

20  proponent, the debtor, or by a person issuing securities, or acquiring property under the plan, for

21  services or for costs and expenses in connection with the case, or in connection with the plan and

22  incident to the case, has been approved by, or is subject to the approval of the court, as reasonable.

23  11 U.S.C. § 1129(a)(4); *see In re Drexel Burnham Lambert Group, Inc.*, 138 B.R. 723, 760

24  (Bankr. S.D.N.Y. 1992); *In re Johns-Manville Corp.*, 68 B.R. at 632.; 7 Resnick and Sommer,

25  *Collier on Bankruptcy*, ¶ 1129.02[4] at 1129-29 -1129-31.  Section 6.2 of the Plan provides that

26  "professionals employed at the expense of the Estate, and entities, if any, entitled to fees and

27  expenses from the Estate pursuant to sections 503(b)(2) through (6) of the Code, shall receive cash

28

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1   in the amount awarded to such Professionals and entities as soon as practicable after an order is

2   entered by the Court approving such award . . . ."  Said procedure for review and ultimate

3   determination by the Court of the professional fees and expenses to be paid by the Debtor satisfies

4   the requirement of section 1129(a)(4).  *See In re Sound Radio, Inc.*, 93 B.R. at 854; *In re Texaco*

5   *Inc.*, 84 B.R. at 908; *In re Future Energy Corp.,* 83 B.R. at 488.  "Court approval of payments for

6   services and expenses is governed by various Code provisions -- e.g., §§ 328, 329, 330, 331 and

7   503(b) -- and need not be explicitly provided for in a Chapter 11 plan."  *In re Future Energy*

8   *Corp.*, 83 B.R. at 488.

9           60.     Further, compensation of the Plan Agent is subject to approval of the Court.

10  *See* Section 8.1 of the Plan.

11          61.     A final hearing on the professional fees incurred prior to the confirmation of

12  the Plan will be scheduled for a date after the Confirmation Hearing.  The professionals involved

13  will be filing appropriate final fee applications to be heard at a final fee hearing.  Unless otherwise

14  permitted by the Plan, the estate shall pay only the fees and expenses of professionals employed in

15  this case as approved by the Court, provided, however, for the avoidance of doubt, that nothing

16  herein shall limit AERC's ability to recover any fees or costs incurred in connection with this

17  Bankruptcy Case, or otherwise payable to AERC, whether under 11 U.S.C. § 365(d)(3), 11 U.S.C.

18  § 503(b)(1), or otherwise, including, without limitation, as a general unsecured claim.

19          62.     The requirements of Section 1129(a)(4) of the Bankruptcy Code have been

20  satisfied.

21          63.     Section 1129(a)(5)(A) of the Bankruptcy Code requires the proponents of a

22  plan to disclose the identity and affiliations of any individual proposed to serve after confirmation

23  as a director, officer or voting trustee of the debtor, an affiliate of the debtor participating in a joint

24  plan with the debtor, or a successor of the debtor under the plan, and requires the appointment or

25  continuance of such individual to be consistent with the interests of creditors and equity security

26  holders and with public policy.  11 U.S.C. § 1129(a)(5); *see In re Apex Oil Co.*, 118 B.R. 683,

27  704-05 (Bankr. E.D. Mo. 1990); *see also In re Texaco Inc.*, 84 B.R. at 908.  This section augments

28

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL  213.626.2311 • FAX  213.629.4520

**SulmeyerKupetz,** A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1   Section 1123(a)(7).

2   64.    In this case, the required disclosures are set forth in the Disclosure

3   Statement, the Supplemental Disclosure Statement, the motions for approval of the AERC Plan

4   Term Sheet and the WFI Modification Agreement, and in other papers filed in connection with the

5   confirmation hearing.  Section 1125(a)(5) of the Bankruptcy Code also requires that the plan

6   proponent disclose the identity of any insider that will be employed or retained by the Post-

7   Confirmation Debtor and the nature of any compensation such insider will receive.

8   65.    Here, Article V of the Plan provides that, subject to the terms and

9   conditions of the Plan, all responsibilities regarding post-confirmation management of the Debtor

10  shall be in the hands of Leslie as Plan Trustee, Post-Confirmation Officer and Director, and Plan

11  Agent.  The Debtor's employees who remain shall work for the Post-Confirmation Debtor and

12  report to the Plan Agent.  The Plan Agent will have discretion to employ or not employ these

13  parties as he/she sees fit, subject to the terms of the Plan which incorporates the AERC Plan Term

14  Sheet.  The requirements of Section 1129(a)(5) have been satisfied.

15  66.    Section 1129(a)(6) of the Bankruptcy Code requires as a condition

16  precedent to confirmation that any governmental regulatory entity with jurisdiction, after

17  confirmation of the plan, over the rates of the debtor has approved any rate change provided for in

18  the plan, or such rate change is expressly conditioned on such approval.  11 U.S.C. § 1129(a)(6).

19  The Plan does not provide any rate change.  Thus, Section 1129(a)(6) does not apply.  *See In re*

20  *Sound Radio, Inc.*, 93 B.R. at 854; *In re Texaco Inc.*, 84 B.R. at 908.

21  67.    Section 1129(a)(7) of the Bankruptcy Code sets forth the "best interest of

22  creditors" test.  11 U.S.C. § 1129(a)(7); *see In re Johns-Manville Corp.,* 843 F.2d at 649; *In re*

23  *Texaco Inc.*, 84 B.R. at 908-909; *In re Toy & Sports Warehouse, Inc.*, 37 B.R. at 150.  Subsection

24  1129(a)(7) provides that with respect to each impaired class of claims or interests, each holder of a

25  claim or interest of such class has accepted the Plan <u>or</u> will receive or retain under the Plan

26  property of a value, as of the Effective Date, not less than the amount that such holder would

27  receive or retain if the Debtor were liquidated under chapter 7 on such date.  11 U.S.C.

28

ASH\ 2466955.5

§ 1129(a)(7); *see Bank of America National Trust & Savings Association v. 203 N. La Salle St. Partnership*, 526 U.S. at 442; *accord, United States v. Reorganized CF&I Fabricators, Inc.*, 518 U.S. 213, 228 (1996).

68. Under the best interest of creditors test, with respect to classes impaired under the plan, Creditors and Equity Holders who do not accept the Plan are to receive at least as much under the Plan as they would receive under a chapter 7 liquidation. The Court finds that confirmation of the Plan would ensure that Creditors and the Debtor's Equity Holder receive more than they would in a chapter 7 liquidation.

69. The evidence shows that, after considering the effects that a Chapter 7 liquidation would have on the ultimate proceeds available for distribution to creditors, including (i) the increased costs and expenses of a liquidation under chapter 7, including the amount of the costs and fees payable to a trustee in bankruptcy and professional advisors to such trustee, (ii) the likely erosion in value of assets in a Chapter 7 bankruptcy case in the context of an expeditious liquidation and the "forced sale" atmosphere that would prevail under Chapter 7, and (iii) confirmation of the Plan will provide each holder of an allowed claim as well as the equity interest holder with a recovery that is better than they would receive pursuant to a liquidation of the Debtor under Chapter 7. *See* Grobstein Declaration and exhibits thereto.

70. Under the Plan, the evidence shows that creditors will likely be paid in full and that there likely will be some recovery available for the equity holder of the Debtor. In a chapter 7 liquidation, the evidence shows that it is likely that no recovery would be available for the equity holder of the Debtor and only partial recovery for creditors of the Debtor. *See* Grobstein Declaration and the Comparative Reorganization and Liquidation Analyses attached as an Exhibit thereto.

71. Section 1129(a)(8) of the Bankruptcy Code requires that each class of claims or interests either accepts the plan or is not impaired under the plan. 11 U.S.C. § 1129(a)(8); *see In re Texaco Inc.*, 84 B.R. at 909. The requirement of Section 1129(a)(8) is the only condition precedent included in Section 1129(a) which is not only necessary for

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1    confirmation.  "If a plan satisfies the confirmation criteria set forth in section 1129(a), including

2    the requirement that if a class of claims is impaired, at least one impaired class of claims accepts

3    the plan, the plan may be confirmed notwithstanding the opposition of one or more impaired

4    classes of claims or interests, provided the plan satisfies section 1129(b)."  7 Resnick and Sommer,

5    *Collier on Bankruptcy*, ¶ 1129.02[8] at 1129-42 – 1129-43.

6           72.    As discussed above, whether a class has accepted the plan is determined by

7    reference to Section 1126 of the Bankruptcy Code.  11 U.S.C. § 1126.  Under Section 1126(f), any

8    class which is not impaired under the plan is conclusively presumed to have accepted the plan.

9    11 U.S.C. § 1126(f).  Because the Plan does not impair Classes 1, 2, 3 and 5, those classes are

10   deemed to have accepted the Plan.  *See* 11 U.S.C. § 1126(f).  Classes 7 and 8 are impaired under

11   the Plan.[7]  The holders of allowed claims in Classes 7 and 8 were entitled to vote on the Plan.

12   Along with this Memorandum, the Debtor has filed a declaration (Declaration of Daniel A. Lev)

13   providing a report on the results of voting on the Plan.  As set forth therein, Class 7 (general

14   unsecured claims) has voted overwhelmingly in favor of the Plan.

15          73.    Section 1129(b) of the Bankruptcy Code provides that a plan can be

16   confirmed even if the plan is not accepted by all impaired classes, as long as at least one impaired

17   class of claims has accepted it.  A bankruptcy court may confirm a plan at the request of the

18   debtors if the plan "does not discriminate unfairly" and is "fair and equitable" as to each impaired

19   class that has not accepted the plan. 11 U.S.C. § 1129(b)(1).  As stated above and as set forth in

20   the Lev Declaration with regard to voting on the Plan, each of two impaired voting classes of

21   claims have voted to accept the Plan.  The class of Equity Interests (class 8) held by insiders has

22   voted against the Plan, but has agreed to confirmation of the Plan in accordance with the Debtor

23   Plan Term Sheet.

24          74.    A plan does not discriminate unfairly within the meaning of the Bankruptcy

25   Code if a dissenting class is treated equally with respect to other classes of equal rank.  Moreover,

26   a plan is fair and equitable as to a class of unsecured claims which rejects a plan if the plan

27   _____

28   [7] The proposed modification discussed above to the treatment of Class 5 results in that class being
   unimpaired under the Plan, as modified.

provides (a) for each holder of a claim included in the rejecting class to receive or retain on account of that claim property that has a value, as of the effective date of the plan, equal to the allowed amount of such claim; or (b) that the holder of any claim or interest that is junior to the claims of such class will not receive or retain on account of such junior claim or interest any property at all.  11 U.S.C. § 1129(b)(2)(B).

75. A plan is fair and equitable as to a class of equity interests that rejects a plan if the plan provides (a) that each holder of an interest included in the rejecting class receives or retains on account of that interest property that has a value, as of the effective date of the plan, equal to the greatest of the allowed amount of any fixed liquidation preference to which such holder is entitled, any fixed redemption to which such holder is entitled, or the value of such interest; or (b) that the holder of any interest that is junior to the interests of such class will not receive or retain any property at all on account of such junior interest under the plan.  11 U.S.C. § 1129(b)(2)(C).

76. There is no class that is junior to Class 8 that receives or retains anything under the Plan.  Accordingly, the Plan is fair and equitable as to such Class.  Moreover, the Plan does not discriminate unfairly because the Plan treats all creditors and equity interest holders within the Classes of the Plan equally with respect to other classes of equal rank.  Therefore, it is not necessary that the Court consider any additional requirements of section 1129(b) with respect to the Plan.  Further, because the Plan satisfies each of the other requirements contained in section 1129(a), the Committee is entitled to an order confirming the Plan.

77. Section 1129(a)(9) of the Bankruptcy Code states the rules applicable to payment of those unsecured claims entitled to priority in distribution in chapter 11 cases. 11 U.S.C. § 1129(a)(9).  With respect to priority claims of the kind specified in Bankruptcy Code Section 507(a)(2), (3), or (8), 11 U.S.C. § 1129(a)(9) constitutes the only essential confirmation requirement, since there is no reason to create a class or classes for section 507(a)(2), (3) and (8) claims in light of the fact that a majority of such classes cannot bind a minority to less favorable payment terms than those provided under section 1129(a)(9).  *See In re Perdido Motel Group,*

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

*Inc.*, 101 B.R. at 293; *see also* 7 Resnick and Sommer, *Collier on Bankruptcy*, ¶ 1129.02[9][1] at 1129-43 - 1129-50. Unless the holder of such a priority claim agrees to less favorable treatment of its claim, Section 1129(a)(9) requires the payment of first (Section 507(a)(2)) and second (Section 507(a)(3)) priority claims in full in cash on the effective date of the plan. 11 U.S.C. § 1129(a)(9)(A). There are no claims against the Debtors entitled to priority under section 502(a)(3) (ordinary course of business "gap" claims in an involuntary case). Section III of the Plan provides for appropriate treatment of section 507(a)(2) claims in compliance with section 1129(a)(9)(A).

78.    Section 1129(a)(9)(B) of the Bankruptcy Code requires that holders of Section 507(a)(1), (4), (5), (6) or (7) priority claims receive: (i) if such class has accepted the plan, deferred cash payments of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or (ii) if such class has not accepted the plan, cash on the effective date of the plan equal to the allowed amount of such claim. 11 U.S.C. § 1129(a)(B). Under the Plan, allowed claims entitled to priority pursuant to section 507(a)(4) and (5) are designated as unclassified claims as set forth in Article III of the Plan, and will be paid in full in cash on the Effective Date, or as soon thereafter as is administratively practicable, unless otherwise ordered by the Court. Therefore, the treatment of such claims under the Plan satisfies the requirement of 11 U.S.C. § 1129(a)(9)(B). There are no Section 507(a)(1), (6) or (7) claims in this case.

79.    Section 1129(a)(9)(C) of the Bankruptcy Code requires that holders of Section 507(a)(8) priority claims receive on account of such claims regular installment payments in cash of a total value, as of the effective date of the plan, equal to the allowed amount of such claims over a period not exceeding 5 years after the Petition Date. 11 U.S.C. § 1129(a)(9)(C). Article III of the Plan provides that the holders of Allowed Claims entitled to priority under section 507(a)(8) will receive on account of such Allowed Claims payment in the full amount of such Allowed Claims no later than five years from the Petition Date in accordance with the requirements of the Code.

80.    In summary, the Plan satisfies the requirements of Section 1129(a)(9) of the

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

Bankruptcy Code.

81.     Section 1129(a)(10) of the Bankruptcy Code requires as a condition of confirmation that if a class of claims is impaired under the plan, at least one class of claims that is impaired under the plan has accepted the plan, determined without including any acceptance of the plan by any insider.  11 U.S.C. § 1129(a)(10); *see also In re Coram Healthcare Corp.*, 315 B.R. 321 (Bankr. D. Del. 2004), *accord, In re American Homepatient, Inc.*, 298 B.R. 152, 163 (Bankr. D. Tenn. 2003) (critical among requirements of § 1129(a) is the condition that the plan be accepted by at least one class of impaired creditors).  As discussed above, section 1126 provides the requirements for determining acceptance.  Section 1129(a)(10) requires affirmative acceptance of a plan by at least one impaired class of claims, unless all classes of claims are left unimpaired. 7 Resnick and Sommer, *Collier on Bankruptcy*, ¶ 1129.02[10][a] at 1129-50 - 1129-51.  As explained above, the impaired voting classes under the Plan are Classes 7 and 8.   As stated above, the Committee filed a declaration (the Lev Declaration) setting forth the results of voting on the Plan showing that this requirement has been satisfied.

82.     Section 1129(a)(10) of the Bankruptcy Code provides that a court may confirm a plan only if "at least one class of claims that is impaired under the plan has accepted the plan, determined without including any acceptance of the plan by any insider".  This section applies to classes of claims and not to interest holders.  *See In re Coram Healthcare Corp.*, 315 B.R. 321 (Bankr. D. Del. 2004) (*accord In re American Homepatient, Inc.*, 298 B.R. at 163 (critical among requirements of Section 1129(a) is the condition that the plan be accepted by at least one class of non-insider, impaired creditors)).  Therefore, the votes of all classes (excluding insiders), except Class 8 (Equity Interests), are considered for purposes of compliance with Section 1129(a)(10).  In this case, impaired Class 7 (general unsecured claims) voted overwhelmingly to accept the Plan.  As a result, the Plan satisfies the requirement of Section 1129(a)(10) because at least one non-insider impaired class accepted the Plan.

83.     Section 1129(a)(11) of the Bankruptcy Code requires that, as a condition precedent to confirmation, the court determines that the Plan is feasible.  Specifically, the court

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL  213.626.2311 • FAX  213.629.4520

1  must determine that "[c]onfirmation of the plan is not likely to be followed by the liquidation, or

2  the need for further financial reorganization, of the debtor or any successor to the debtor under the

3  plan, unless such liquidation or reorganization is proposed in the plan." 11 U.S.C. § 1129(a)(11).

4  The feasibility test in Section 1129(a)(11) requires the court to determine whether the plan is

5  workable and has a reasonable likelihood of success. *United States v. Energy Resources Co.. Inc.*,

6  495 U.S. 545, 549, 110 S. Ct. 2139, 109 L. Ed. 2d 580 (1990); *In re Acequia, Inc.*, 787 F.2d at

7  1364 (finding that plan met feasibility requirement under Section 1129(a)(11) where the debtor

8  presented evidence demonstrating that the plan had a reasonable probability of success). The

9  feasibility standard is whether the plan offers a reasonable assurance of success. Success need not

10 be guaranteed and the court is not required to determine that the future success of the Post-

11 Confirmation Debtor is inevitable in order to find that the plan is feasible. See *Johns-Manville*,

12 843 F.2d at 649; *Prudential Energy*, 58 B.R. at 862. As stated by the *Prudential Energy* court,

> Guaranteed success in the stiff winds of commerce without the protection of the Code is not the standard under section 1129(a)(11). Most debtors emerge from reorganization with a significant handicap. But a plan based on impractical or visionary expectations cannot be confirmed.

16 *Id.,* at 862 (*citing In re Clarkson*, 767 F.2d 417, 420 (8th Cir. 1985)).

17       84.    A plan has a reasonable likelihood of viability if it is much more than a

18 mere "visionary scheme" and, therefore, satisfies the feasibility requirement of Section

19 1129(a)(11) of the Bankruptcy Code. *In re Acequia, Inc.*, 787 F.2d at 1365 (*citing In re Pizza of*

20 *Hawaii*, 761 F.2d 1382 (9th Cir. 1985) ("The purpose of section 1129(a)(11) is to prevent

21 confirmation of visionary schemes which promise creditors and equity security holders more

22 under a proposed plan than the debtor can possibly attain after confirmation")); see also *In re*

23 *Sagewood Manor Assoc. Ltd. Partnership*, 223 B.R. 756, 762-63 (Bankr. D. Nev. 1998) ("While a

24 reviewing court must examine 'the totality of the circumstances' in order to determine whether the

25 plan fulfills the requirements of section 1129(a)(11) … only a relatively low threshold of proof is

26 necessary to satisfy the feasibility requirement.").

27       85.    There are two aspects of a feasibility analysis. The first aspect considers

28

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1    whether there will be enough cash on hand on the effective date of the plan to pay all the claims

2    and expenses which are entitled to be paid on that date.  The second aspect of feasibility considers

3    whether there will be enough cash over the term of the plan to make the required payments

4    thereunder.  The disclosures set forth in the Disclosure Statement, the declarations and exhibits

5    filed concurrently with the Committee's Confirmation Brief (as well as the additional evidence at

6    the confirmation hearing) demonstrate that the estate will have adequate cash flow during the term

7    of the Plan to make all required Plan payments.

8              86.    The Plan is clearly workable and has a reasonable likelihood of success.

9    The Committee has outlined with great specificity what needs to be done for the Plan to be

10   effectuated and implemented and has demonstrated how the provisions thereunder will be

11   performed.

12             87.    The Committee has demonstrated that the Plan Agent will have sufficient

13   cash to make all required "Effective Date" payments, and sufficient cash to fund post-confirmation

14   payments due under the Plan, including post-confirmation operational expenses relating to the

15   Beverly Hills Property and the Mid-Wilshire Property.

16             88.    Section 1129(a)(11) of the Bankruptcy Code provides:

17             The court shall confirm a plan … if [among other things]:

18             (11)    Confirmation of the plan is not likely to be followed by the
                       liquidation, or the need for further financial reorganization, of the
19             debtor or any successor to the debtor under the plan, unless such
                       liquidation or reorganization is proposed in the plan.
20

21   11 U.S.C. § 1129(a)(11).

22             89.    Section 1129(a)(11) of the Bankruptcy Code is satisfied by a showing that

23   the plan proponent has a "reasonable probability" of satisfying its obligations under a plan.  As

24   demonstrated, the Ninth Circuit does not require certitude in satisfying Section 1129(a)(11).  On

25   this point, the Bankruptcy Appellate Panel of the Ninth Circuit in *Brotby* summarized the

26   feasibility requirement as follows:

27             To demonstrate that a plan is feasible, a debtor need only show a
                       reasonable probability of success.  *The Code does not require the*
28

> *debtor to prove that success is inevitable, and a relatively low*
> *threshold of proof will satisfy § 1129(a)(11)*, so long as adequate
> evidence supports a finding of feasibility.

*In re Brotby*, 303 B.R. 177, 191-192 (9th Cir. BAP 2003)(emphasis added; citations omitted); *see also In re Jorgensen (Jorgensen v. Federal Land Bank of Spokane)*, 66 B.R. 104, 108 (9th Cir. BAP 1986) ("Feasibility has been defined as whether the things which are to be done after confirmation can be done as a practical matter under the facts").  Put more simply, feasibility generally requires a "reasonable probability" that (i) there will be sufficient cash on hand on the effective date to make the payments required on the effective date (such as those under Section 1129(a)(9)(A)); and (ii) there will be sufficient cash over the life of the plan to make the required payments.  The Plan satisfies both aspects.

90.    With respect to addressing the Effective Date obligations, the Committee has shown feasibility as set forth in Grobstein Declaration and exhibits thereto.

91.    The second aspect of feasibility, namely, the need to show "a 'reasonable probability' of satisfying [the proponent's] obligations under a plan so that '[c]onfirmation of the plan is not likely to be followed by liquidation, or need for further reorganization, of the debtor ….'" has also been demonstrated by the Committee at the Confirmation hearing.

92.    All allowed unsecured claims will  be paid in cash and in full pursuant to the confirmed Plan (including attorneys' fees and post-petition interest at the contract rate), subsequent to Plan Confirmation, from the following sources:  (1) Cash existing in Debtor's bank accounts (including the trust account of the Debtor's bankruptcy counsel) as of confirmation of the Committee's Plan; (2) Cash obtained, if any, from the Mid-Wilshire Property, in the event the Ninth Circuit reverses or modifies the District Court Decisions or the relevant parties otherwise settle their differences; (3) Cash obtained, if any, from the Debtor's exercise of the Beverly Hills Property Purchase Option; (4) the AERC Escrow Funds, to the extent the estate has any interest in such funds, and in all respects subject to the terms and conditions of the Plan, the AERC Plan Term Sheet and the Chicago Title Stipulation (as defined herein and as modified by the AERC Plan Term Sheet), including, without limitation, Paragraph VI.E.5 thereof; (5) proceeds of the cashier's check dated September 16, 2013, to the extent the estate has any interest in such funds,

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1    and as to which AERC, the Debtor, and the Committee's rights are reserved as set forth in the

2    Court's Order Granting AERC's Motion for Authority to Deposit Cashier's Check In Escrow

3    [Docket 1718]; (6) Cash obtained from artwork sales that the Post-Confirmation Debtor obtains in

4    the normal course of its business; (7) Cash obtained from any action(s) filed by the Post-

5    Confirmation Debtor against third parties including liquidation to cash of any sums owed to the

6    Debtor by such third parties; and (8) Any other cash, assets or property of the Debtor or Post-

7    Confirmation Debtor.

8    　　　　　93.　　　While the Committee has stated that it believes that cooperation with the

9    Plan by the Debtor's Equity Holder would be helpful, such cooperation is not necessary to the

10   feasibility or success of the Plan.  This is similar to what the Bankruptcy Appellate Panel

11   concluded when it affirmed confirmation of a creditors' plan over the debtors' objection (although

12   the need for cooperation was more significant in that case than here), and upheld the bankruptcy

13   court's finding of feasibility that was premised on the parties cooperation (even "against their

14   will"):

15   　　　　　Notwithstanding some ambiguities, the plan was feasible if the
16   　　　　　parties cooperated, especially the debtors in possession.

17   　　　　　* * * *

18   　　　　　The debtors challenge the authority of the court to appoint a
     　　　　　marketing agent and a liquidating and disbursing agent.  The court
19   　　　　　under §§ 105 and 1142(b) can make necessary orders to carry out
     　　　　　the provisions of the plan.  Moreover, the creditors' plan provided
20   　　　　　for the appointment of agents and allowed the court to make
     　　　　　necessary orders to carry out the plan.  Section 105 sets out the
21   　　　　　power of the bankruptcy court to fashion orders as necessary
     　　　　　pursuant to purposes of the Code.  *In re Chinichian*, 784 F.2d 1440
22   　　　　　(9th Cir. 1986).  Section 1123(b)(5) permits a plan to include
     　　　　　provisions not inconsistent with the Bankruptcy Code.

23   　　　　　Although the plan provided for the appointment of a particular
     　　　　　person as marketing agent the court appointed Mr. Jorgensen [one of
24   　　　　　the debtors in possession].  The appointment of Mr. Jorgensen,
     　　　　　although "against his will", was based on the court's determination
25   　　　　　that he was the most knowledgeable and motivated to obtain the best
     　　　　　return on his property.  The only way for the debtors to keep as
26   　　　　　much of their timber farm as possible was for Mr. Jorgensen to
     　　　　　"market his timber and land in earnest."  The court placed the
27   　　　　　destiny of the debtors in Mr. Jorgensen's hands.

28

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1   *Jorgensen*, 66 B.R. at 108.  The same rationale is adopted by this Court with respect to the

2   Committee's Plan and any argument that may be presented that the cooperation of the Debtor's

3   Equity Holder is required for the Plan to be feasible is rejected by the Court.

4           94.     As shown by the Declarations submitted in connection with the

5   confirmation hearing and by the testimony to be presented, the Plan satisfies the feasibility

6   requirement of Section 1129(a)(11) of the Bankruptcy Code.  See, in particular, Grobstein

7   Declaration.

8           95.     Section 1129(a)(12) of the Bankruptcy Code requires that all Bankruptcy

9   Court fees payable pursuant to 28 U.S.C. § 1930 have been paid, or the plan provides for the

10  payments of all such fees on the effective date of the plan.  The Committee believes the Debtor is

11  in compliance with all fee requirements set forth in 28 U.S.C. § 1930 and will pay any outstanding

12  costs owing, if any, in full on the effective date.

13          96.     Section 1129(a)(13) of the Bankruptcy Code allows the court to confirm a

14  plan that provides for the continuation after the plan's effective date of payment of all retiree

15  benefits at the level established pursuant to subsection (e)(1)(B) or (g) of Section 1114 of the

16  Bankruptcy Code, at any time prior to confirmation of the plan, for the duration of the period the

17  debtor has obligated itself to provide such benefits.  Since the Committee does not believe the

18  Debtor has any retiree benefits, the provisions of Section 1129(a)(13) are inapplicable to the

19  Debtor's bankruptcy case.

20          97.     Section 1129(a)(14) of the Bankruptcy Code provides that a debtor that is

21  subject to a judicial,  administrative, or statutory domestic support order has paid all amounts

22  payable under such order or statute for such obligation that became payable after the filing of the

23  petition.  The provisions of Section 1129(a)(14) are inapplicable to this corporate bankruptcy case.

24          98.     Section 1129(a)(15) of the Bankruptcy Code provides for certain

25  requirements to be established by individual debtors in the face of an objection from the holder of

26  an allowed unsecured claim.  The provisions of Section 1129(a)(14) are inapplicable to this

27  corporate bankruptcy case.

28

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL  213.626.2311  •  FAX  213.629.4520

ASH\ 2466955.5

99.    Section 1129(a)(16) of the Bankruptcy Code provides that all transfers of property of the plan shall be made in accordance with any applicable provisions of non-bankruptcy law that govern such transfer of property by a corporation.  The requirements of this section of the Bankruptcy Code, however, only apply to "the transfer of property by a corporation or trust that is not a moneyed, business, or commercial corporation or trust."  Because the Debtor is not a non-profit corporation or trust, Section 1129(a)(16) of the Bankruptcy Code is inapplicable in this Chapter 11 business bankruptcy case.  *See,* 7 Resnick and Sommer, *Collier on Bankruptcy,* ¶1129.02[16] at 1129-60 1129-61.

100.    Section 1129(b) of the Bankruptcy Code provides for the confirmation of a plan over the objection of non-consenting classes if all the subsections of Section 1129(a) of the Bankruptcy Code are satisfied except for subsection 1129(a)(8).  Therefore, unless each class accepts, the plan proponent may be required to invoke Section 1129(b).  This section requires that a plan not discriminate unfairly and that it accord "fair and equitable" treatment to each dissenting impaired class in order to achieve a "cramdown".  *See Ambanc*, 115 F.3d at 653; 11 U.S.C. § 1129(b)(1) and (2).  That is, Section 1129(b) of the Bankruptcy Code provides that a plan can be confirmed, even if the plan is not accepted by all impaired classes, as long as at least one impaired class of claims has accepted it.

101.    All subsections of Section 1129(a) of the Bankruptcy Code, except subsection (a)(8), have been satisfied.  Although Class 8 rejected the Plan, Chrismas who is the Class 8 equity holder has agreed to confirmation of the Plan in accordance with the Debtor Plan Term Sheet (as modified as set forth in the Plan).  All other classes accepted the Plan.  Moreover, the Committee has demonstrated that the Plan does not discriminate unfairly and provides "fair and equitable" treatment with respect to insider equity Class 8.

102.    The requirement that a plan not discriminate unfairly means that the class must "receive treatment which allocates value to the class in a manner consistent with the treatment afforded to other classes with similar legal claims against the debtor".  *In re Monarch Beach Venture*, 166 B.R. 428, 437 (C.D. Cal. 1993).  A plan does not discriminate unfairly within

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1   the meaning of the Bankruptcy Code if a dissenting class is treated equally with respect to other

2   classes of equal rank.

3           103.    There is no other class of equal rank with Class 8.  Class 8 equity interests

4   occupy the lowest possible rank of any class in the Debtor's debt and equity structure.

5           104.    A plan is fair and equitable as to a class of equity interests that rejects a plan

6   if the plan provides (a) that each holder of an interest included in the rejecting class receives or

7   retains on account of that interest property that has a value, as of the effective date of the plan,

8   equal to the greatest of the allowed amount of any fixed liquidation preference to which such

9   holder is entitled, any fixed redemption to which such holder is entitled, or the value of such

10  interest; or (b) that the holder of any interest that is junior to the interests of such class will not

11  receive or retain any property at all on account of such junior interest under the plan.  11 U.S.C. §

12  1129(b)(2)(C).  As discussed below, the Plan complies with this requirement.

13          105.    A basic policy underlying the Bankruptcy Code is that creditors are entitled

14  to distribution (payment in full) ahead of holders of equity interests in the debtor.  *O'Connell v.*

15  *Tristar Esperanza Properties, LLC (In re Tristar Esperanza Properties, LLC)*, 488 B.R. 394, 404

16  (9th Cir. BAP 2013) ("Bankruptcy policy affords a priority to general creditors that is superior to

17  equity interests.").  "Treating an equity investor on par with unsecured creditors disregards the

18  principles underlying the absolute priority rule in a manner that undermines this basic bankruptcy

19  concept." *Id.*, citing *In re Granite Partners, L.P.,* 208 B.R. 332, 344 (Bankr. S.D.N.Y. 1997), and

20  11 U.S.C. § 1129(b)(2)(B)(ii).

21          106.    Here, the Committee Plan has a rational basis for the Plan's classification

22  system.  Further, the impaired voting classes are distinct and are not similar to each other or to any

23  other class under the Plan.  There is no unfair discrimination with respect to dissenting insider

24  equity Class 8.  Under the Plan, the assets of the bankruptcy estate are to be monetized and once

25  all claims and expenses are paid, Class 8 will receive the return of the Replacement Share.  The

26  goal of the Plan is to, within a reasonable time, maximize the value of the assets and the recovery

27  of creditors.

28

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL  213.626.2311  •  FAX  213.629.4520

ASH\ 2466955.5

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

107.    Although the Plan was not accepted by Class 8 equity interests, it may be confirmed pursuant to the cramdown provisions of Section 1129(b)(2)(C).  Under this provision, a plan is considered to be fair and equitable to a class of equity holders if it provides that each equity holder in the class receive or retain on account of such interest property of a value, as of the effective date of the plan, equal to the value of such interest (Section 1129(b)(2)(C)(i)) or the holder of any interest that is junior to the interests of such class will not receive or retain under the plan on account of such junior interest any property (Section 1129(b)(2)(C)(ii)).  "Courts have decided that 'a corollary of the absolute priority rule is that a senior class cannot receive more than full compensation for its claims.'"  *In re Exide Technologies*, 303 B.R. 48, 61, 66 (Bankr. D. Del. 2003) *citing, In re Genesis Health Ventures, Inc.*, 266 B.R. 591, 612 (Bankr. D. Del. 2001).  Here, the Plan does not allow a senior class to receive more than full compensation for its claims, and there is no class junior to Class 8 equity interests that are receiving any distributions under the Plan.  Therefore, cramdown of Class 8 is appropriate and warranted under Section 1129(b)(2)(C).

108.    Rule 9019 of the Federal Rules of Bankruptcy Procedure provides, in relevant part:

> (a) On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement.  Notice shall be given to creditors, the United States trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct.

Fed. R. Bankr. P. 9019(a).

109.    Compromise is favored over continued litigation.  *See Martin v. Kane (In re A&C Properties)*, 784 F.2d 1377, 1381 (9th Cir. 1986); *Port O'Call Investment Co. v. Blair (In re Blair)*, 538 F.2d 849, 851 (9th Cir. 1976).  Generally, a compromise should be approved if it is "fair and equitable" and in "the best interests of the estate."  *Woodson v. Fireman's Fund Insurance Co.*, 839 F.2d 610, 620 (9th Cir. 1988).

110.    Specifically, in evaluating whether to approve a compromise, courts in the Ninth Circuit must consider the following:

(a)    The probability of success in litigation;

(b)    the difficulties, if any, to be encountered in the matter of

> collection; the complexity of the litigation involved and the
> expense, inconvenience and delay necessarily attending it;
> and the paramount interest of the creditors and a proper
> deference to their reasonable views.

*In re A&C Properties*, 784 F.2d at 1381.

111.    In considering these factors, courts are guided by two principles. First, as noted earlier, "the law favors compromise*." In re Blair*, 538 F.2d at 851. Compromises are favored in bankruptcy, and have become "a normal part of the process of reorganization." *Protective Committee for Independent Stockholders of TMT Trailer Ferry Inc. v. Anderson*, 390 U.S. 414, 424, 88 S. Ct. 1157, 20 L. Ed. 2d 1 (1968) (*quoting, Case v. Los Angeles Lumber Products Co.*, 308 U.S. 106, 130, 60 S. Ct. 1, 84 L. Ed. 110 (1939)). Second, a compromise should be approved unless it "fall[s] below the lowest point in the range of reasonableness." *Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983). As the court in *In re W.T. Grant Co.* aptly commented:

> [The] responsibility of the bankruptcy judge, and ours upon review, is
> not to decide the numerous questions of law and fact raised by the
> appellants but rather to canvass the issues and see whether the settlement
> "fall[s] below the lowest point in the range of reasonableness."

Id., at 608 (citation omitted).

112.    Settlements which have been negotiated by the estate representatives are entitled to deference. *See In re Morrison*, 69 B.R. 586, 592 (Bankr. E.D. Pa. 1987) (objecting creditors may not substitute their judgment for that of the trustee). Moreover, when considering these factors, the court need only canvass the issues, "a mini trial on the merits is not required." *In re Schmitt*, 215 B.R. at 423.

113.    In this instance, there are a variety of reasons why the Court should approve the Settlements set forth in the AERC Plan Term Sheet (as set forth in the provisions of Section VI.E in the First Term Sheet), the WFI Modification Agreement, the Debtor Plan Term Sheet, and incorporated into the Plan, each of which resolves numerous disputes, ends protracted and costly litigation, and dramatically enhances the economic value of the estate and maximizes recovery for creditors and the Debtor's shareholder. As demonstrated, the application of the *A&C Properties* test to the Settlements requires a finding that the compromise be approved, even over the

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1    objections of disappointed or upset parties.

2          114.   Here, there is more than a minimal benefit of the Settlements to the

3    bankruptcy estate.  However, even a minimal benefit is sufficient to meet the *A&C Properties*

4    standard, especially when measured against the continuing harm that will befall the bankruptcy

5    estate in the absence of a compromise.  Absent the Settlements, the Committee believes that the

6    Debtor's bankruptcy estate is insolvent and no recovery would be available for the Debtor's

7    shareholder.

8          115.   As discussed above, the Committee, AERC, Wilson and WASL have

9    entered the AERC Plan Term Sheet, which is incorporated into the Plan.

10          116.   Payment and Treatment of the Claims of AERC and with regard to the

11    Terminated Lease Between AERC and the Debtor for the Mid-Wilshire Property: Currently, at

12    Chicago Title Company, there is the sum of approximately $5.045 Million held in escrow on

13    account of the claims of AERC (defined above as the "AERC Escrow Funds").  Subject to

14    subparagraph 116(e) below, the AERC Escrow Funds shall remain with Chicago Title subject to

15    the terms and conditions of that certain "Stipulation Between AERC Desmond Tower, LLC, Art

16    And Architecture Books Of The 21st Century, A California Corporation, Associated Estates

17    Realty Corporation, A Ohio Corporation, And The Official Committee Of Unsecured Creditors Of

18    Art And Architecture Books Of The 21st Century Regarding Payment Of Allowed Administrative

19    Claim Of AERC Desmond Tower, LLC Under Section 365(d)(3) Of The Bankruptcy Code,

20    Payment Of Chapter 11 Administrative Expenses Of Art And Architecture Books Of The 21st

21    Century And Reservation Of Rights " ("Chicago Title Stipulation") [Docket No. 1157] entered

22    into between the Debtor, AERC and the Committee.  The following provisions shall apply to

23    AERC's treatment under the Plan and the continuing occupancy of the Post-Confirmation Debtor

24    at the Mid-Wilshire Location:

25          a.    Subject to Paragraphs 23 and 32 of the Findings of Fact, and

26    Paragraphs 117 and 118 herein, for so long as the judgment denying the Debtor's Motion

27    to Assume the lease of the Mid-Wilshire Property real property remains stayed under the

28

Sulmeyer Kupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1     Bankruptcy Court's stay order, and subject to paragraph 116(d)(4) herein and to

2     compliance with the terms of the stay order (including timely payment of rent in the

3     amount set forth in the stay order) and with other provisions of the lease, AERC shall not

4     seek to evict the Post-Confirmation Debtor from its occupancy of the Mid-Wilshire

5     Property and shall not seek to terminate the stay order prior to a ruling by the Ninth Circuit

6     Court of Appeals.  Rent shall be at the holdover rent rate (including CAM charges)

7     provided for in current orders of the Bankruptcy Court regarding such payments.  Nothing

8     in this paragraph is meant to change or modify the existing orders of the Bankruptcy Court

9     regarding the stay pending appeal, the payment of rent on a monthly basis, or other rights

10    or obligations pertaining to the Post-Confirmation Debtor's occupancy of the Mid-Wilshire

11    Property.

12        b.     Subject to subparagraph 116(d)(4) herein, the Post-Confirmation

13    Debtor's occupancy of the Mid-Wilshire Property shall be subject to the exercise of

14    business judgment by the Plan Agent regarding the continuation of said occupancy.

15        c.     All of the appellate rights of the Debtor and AERC shall be

16    preserved and unaffected by the Plan.

17        d.     For avoidance of doubt, the following rights shall be preserved and

18    unaffected by the AERC Plan Term Sheet and the confirmed Plan:

19            (1)     Debtor's right, control of which shall pass to the Plan Agent

20                as representative of the Post-Confirmation Debtor, to seek recovery

21                of attorneys' fees and costs from AERC if the Plan Agent is

22                successful on Appeal and such recovery is permitted under the terms

23                and conditions of the Mid-Wilshire Lease and applicable law.

24            (2)     AERC's claims in the Bankruptcy Case, whether such claims

25                are administrative claims, priority claims, unsecured claims, or any

26                other type of claim.  This includes AERC's rights to recover funds

27                under the Chicago Title Stipulation, subject to Paragraph 116(e)

28

Sulmeyer Kupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1    below.

2         (3)     Debtor's rights, control of which will pass to the Plan Agent,

3    to exercise the purchase option for the Mid-Wilshire Property should

4    and to the extent such rights be determined to exist, by subsequent

5    Appellate Ruling or otherwise.

6         (4)     AERC's right to immediately evict the Post-Confirmation

7    Debtor and Plan Agent from its occupancy of the Mid-Wilshire

8    Property if (a) the stay of the judgment denying the Debtor's Motion

9    to Assume the lease of the Mid-Wilshire Property is dissolved,

10    terminated, or ceases to exist for any other reason, or (b) the Ninth

11    Circuit Court of Appeals affirms that (i) the lease of the Mid-

12    Wilshire Property, including the purchase option and the lease

13    renewal options, terminated prior to the filing of this Bankruptcy

14    Case, and (ii) the Debtor had effectively waived its rights under

15    California law to relief from forfeiture of its lease.

16         e.     AERC's rights under the Chicago Title Stipulation shall be modified

17    to provide that the AERC Escrow Funds shall be available and used to pay any

18    administrative claim, or any claim with priority equal to an administrative claim, that is

19    asserted by AERC and allowed by the Bankruptcy Court, including but not limited to

20    claims under Section 365(d)(3) of the Bankruptcy Code.  Accordingly, by way of example

21    and without limitation, if AERC proves an administrative claim under Section 503(b) of

22    the Bankruptcy Code and such order approving such administrative claim becomes final,

23    the allowed claim shall be paid from the AERC Escrow Funds.  Other than with respect to

24    the modification to AERC's rights as set forth in this paragraph, the provisions of the

25    Chicago Title Stipulation shall remain unchanged.

26         117.     If the Monetization Transaction should take place by April 6, 2016, and

27    funds by April 5, 2016, these Findings of Fact, Conclusions of Law and the separate Confirmation

28

ASH\ 2466955.5

1    Order will be withdrawn (unless the parties can agree upon modifications to the Plan which they

2    may then submit to the Court for approval after notice and an opportunity for hearing to all parties,

3    including AERC and its counsel), and, the provisions of Paragraph 116(a) herein notwithstanding,

4    AERC shall be free to pursue its motion to terminate the stay pending appeal, to seek eviction of

5    the Post-Confirmation Debtor from the Mid-Wilshire Property, to pursue relief from the automatic

6    stay, and to pursue any and all remedies in connection therewith.

7             118.    If the Subsequent Monetization takes place and funds to the Plan Agent and

8    the Plan Agent subsequently pays all creditors in full, after notice and an opportunity for hearing

9    to all parties including AERC and its bankruptcy counsel, the proposed distribution of the Plan

10   Agent shall be approved by the Court, the Plan Agent shall be discharged from his duties under

11   the confirmed Plan, and, the provisions of Paragraph 116(a) herein notwithstanding, AERC shall

12   be free to pursue its motion to terminate the stay pending appeal, to pursue relief from the

13   automatic stay, to seek eviction of the Post-Confirmation Debtor from the Mid-Wilshire Property,

14   and to pursue any and all other remedies in connection therewith.  For the avoidance of doubt,

15   other than as provided in the immediately preceding sentence, the occurrence and funding of a

16   Subsequent Monetization Transaction shall have no impact upon the effectiveness of paragraph

17   116 herein (or any subparagraph thereof).

18            119.    The Plan complies with and satisfies the requirements of Section 1129 of

19   the Bankruptcy Code.  The Plan satisfies each of the requirements contained in Section 1129(a) of

20   the Bankruptcy Code, with the exception of Section 1129(a)(8).  Voting class 7 has voted to

21   accept the Plan.  Further, the Committee has satisfied the requirements of Section 1129(b) of the

22   Bankruptcy Code with respect to the only dissenting Class (Class 8 insider equity holder) that no

23   holder of a junior Claim or Equity Interest receives or retains anything under the Plan on account

24   of such Claim or Equity Interest.  Therefore, the Committee has demonstrated that it is entitled to

25   ///

26

27

28

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

an order of the Court confirming the Plan.  Accordingly, the Court by oral ruling approved the

Plan at the hearing conducted in this matter on February 24, 2016, and will enter an order

confirming the Plan concurrently herewith.

IT IS SO ORDERED

# # #

Date: March 18, 2016

_____

Robert Kwan
United States Bankruptcy Judge