FILED & ENTERED

AUG 24 2016

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY bakchell DEPUTY CLERK

**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

| | |
|---|---|
| In re:<br><br>**ART AND ARCHITECTURE BOOKS OF THE 21st CENTURY, dba ACE GALLERY,**<br><br>Debtor. | Case No. 2:13-bk-14135-RK<br><br>Chapter 11<br><br>**MEMORANDUM DECISION ON MOTION OF JONES DAY, AS FORMER COUNSEL FOR DAVID R. HABERBUSH, SOLELY IN HIS CAPACITY AS COURT-APPOINTED RESPONSIBLE OFFICER FOR ACE MUSEUM, FOR ALLOWANCE AND PAYMENT OF ADMINISTRATIVE EXPENSES**<br><br>DATE:        June 14, 2016<br>TIME:        2:30 p.m.<br>PLACE:     Courtroom 1675<br>                    255 E. Temple St.<br>                    Los Angeles, CA 90012 |

Pending before the court is the Motion of Jones Day, as Former Counsel for David R. Haberbush, Solely in His Capacity as Court-Appointed Responsible Officer for Ace Museum, for Allowance and Payment of Administrative Expenses ("Motion"), which seeks allowance of the firm's claim for payment of its services for Mr. Haberbush as administrative expenses of $78,344.17. ECF 2005. The court notes that the billing

entries in support of the Motion only show claimed fees and expenses of $78,138.50. ECF 2045. The Motion was opposed by Plan Agent Sam S. Leslie, ECF 2043, and Jones Day filed a reply thereto, ECF 2057.

The hearing on the Motion was originally set for June 7, 2016 and was continued to June 14, 2016. Bennett L. Spiegel of the law firm of Jones Day appeared for itself as Movant. Carolyn A. Dye of the Law Office of Carolyn A. Dye appeared on behalf of the Plan Agent. David B. Shemano of the law firm of Robins Kaplan LLP appeared on behalf of Ace Museum. After the June 14, 2016 hearing, the court took the Motion under submission.

Having considered the moving and opposing papers, the exhibits and declarations attached therein, the parties' oral arguments at the hearing on the Motion on June 14, 2016, and the record before the court, the court rules on the Motion as follows.

**Background**

In a related adversary proceeding, No. 2:14-ap-01771-RK, the Official Committee of Unsecured Creditors ("Committee") filed a motion that sought, among other things, appointment of a receiver and the issuance of a temporary restraining order in aid of the receiver. No. 2:14-ap-01771-RK, ECF 6. In settlement of that motion, Committee entered into a stipulation with Debtor, Ace Museum, a separate corporation from Debtor, and Doug Chrismas, the principal of Debtor and Ace Museum, ("Stipulation"), which, if certain benchmarks were not met, authorized Committee to lodge a stipulated order appointing David R. Haberbush ("Haberbush") as Responsible Officer for Ace Museum. No. 2:14-ap-01771-RK, ECF 26. The Stipulation, which was entered into by these parties on behalf of Debtor's bankruptcy estate, Stipulation at ¶ 11, was subsequently approved by order of this court. No. 2:14-ap-01771-RK, ECF 28. When Debtor and Ace Museum failed to meet the required benchmarks under the Stipulation, Committee lodged a proposed form of order appointing Haberbush as Responsible Officer for Ace Museum, which the court approved ("Appointment Order"). No. 2:14-ap-01771-RK, ECF 36. The

Appointment Order authorized Haberbush, among other things, to employ lawyers to assist with the exercise of rights relating to two of Ace Museum's leases and purchase options to serve "the best interests of the creditors of Ace Museum and the Debtor", *Id.* at ¶ 1c, and in accordance therewith, Haberbush retained Jones Day as his authorized counsel solely in his capacity as Responsible Officer for Ace Museum to assist and represent him in carrying out his obligations under the Appointment Order.

Nonetheless, it subsequently came to light that Committee inadvertently lodged the wrong form of the Appointment Order in that it did not reflect the final terms agreed to by counsel for Ace Museum and Committee. No. 2:14-ap-01771-RK, ECF 42, Declaration of Victor A. Sahn at ¶ 5. Thereafter, Committee filed an emergency motion to amend the Appointment Order, No. 2:14-ap-01771-RK, ECF 42, which the court denied without prejudice, No. 2:14-ap-01771-RK, ECF 51. Subsequently, at this court's direction, Jones Day, on behalf of Haberbush, filed an emergency motion for instructions pursuant to the Appointment Order, No. 2:14-ap-01771-RK, ECF 53, which was denied by order of this court, No. 2:14-ap-01771-RK, ECF 64. Thereafter, on May 11, 2015, Haberbush resigned as Responsible Officer for Ace Museum, and Jones Day's representation of Haberbush as Responsible Officer for Ace Museum ended.

Through the Motion, Jones Day seeks allowance of its claim for payment for services it performed in relation to its representation of Haberbush as Responsible Officer for Ace Museum as having administrative expense priority and payment of its claim in accordance with the confirmed plan of reorganization.

**Discussion**

As a preliminary matter, the Motion involves and makes reference to matters contained in filings that were filed under seal, as authorized by prior order of the court. No. 2:14-ap-01771-RK, ECF 24. The court hereby lifts the sealing order to the extent necessary to consider and discuss the matters relating to the Motion contained herein in light of the fact that the sealing order was imposed to protect confidential commercial

1 information that might have impaired Defendant's ability to perform under the Stipulation
2 "in the coming weeks and months," ECF 22 at 3, time which has since long passed, and
3 furthermore, because it appears that the parties have abandoned all attempts to perform
4 under the Stipulation.  *See,* 11 U.S.C. § 107(b); Federal Rule of Bankruptcy Procedure
5 9018; *In re Fibermark, Inc.,* 330 B.R. 480, 506 (Bankr. D. Vt. 2005)("the decision whether
6 to seal bankruptcy court records lies within the discretion of the bankruptcy
7 court")(citations omitted); 10 Resnick and Sommer, *Collier on Bankruptcy,* ¶ 9018.02 at
8 9018 and n.4 (16th ed. 2016), *citing, In re Itel Corp.* 17 B.R. 942 (9th Cir. BAP 1982) .

9       Regarding Jones Day's request for administration expense priority, 11 U.S.C. §
10 503(b)(1)(A) allows administrative expense priority status for "the actual, necessary costs
11 and expenses of preserving the estate."  Although allowance of administrative expense
12 priority "should be narrowly construed to maximize the value of the estate for all creditors
13 . . . allowing administrative expense priority under section 503(b)(1) is important to
14 provide an incentive for creditors to continue doing business with a debtor and an
15 incentive for others to engage in business transactions with the debtor."  4 Resnick and
16 Sommer, *Collier on Bankruptcy,* ¶ 503.06[2] at 503-27- 503-28 (citations omitted).  In the
17 Ninth Circuit, to receive administrative expense priority under 11 U.S.C. § 503(b)(1)(A),
18 courts require the claimant to show that the debt asserted to be an administrative
19 expense arose from a transaction with the bankruptcy estate and directly and
20 substantially benefitted the estate.  *Abercrombie v. Hayden Corp. (In re Abercrombie)*,
21 139 F.3d 755, 757 (9th Cir. 1998), *citing*, *In re DAK Industries, Inc.,* 66 F.3d 1091, 1094
22 (9th Cir. 1995).

23       Regarding the first *In re Abercrombie* element, it was not disputed that Jones
24 Day's fees and expenses arose from a transaction with the bankruptcy estate.  First, the
25 court observes that the terms of the Stipulation, which was entered into by and between
26 Debtor, Committee, Ace Museum and Chrismas, the principal of Debtor and Ace
27 Museum, expressly provided that the Stipulation is entered into on behalf of Debtor's
28

1  bankruptcy estate.  Second, the Appointment Order expressly provided that Haberbush
2  was entitled to employ lawyers to assist with the exercise of rights relating to two of Ace
3  Museum's leases and purchase options, which Haberbush believed served the best
4  interests of creditors of Ace Museum and Debtor.  Because Jones Day performed the
5  services to incur the fees in representing Haberbush as Responsible Officer for Ace
6  Museum pursuant to the terms of the Appointment Order, which was entered pursuant to
7  the Stipulation that was agreed to on behalf of the bankruptcy estate, the court
8  determines that Jones Day's claim for its fees and expenses arose from a transaction
9  with the bankruptcy estate.  No. 2:14-ap-01771-RK, ECF 53.

10        Regarding the second *In re Abercrombie* element, even though it appears that
11  Jones Day's fees did not directly and substantially benefit the estate because Haberbush
12  resigned shortly after his appointment as the Responsible Officer for Ace Museum
13  without exercising any of the rights and interests in the pertinent leases, and without
14  bringing any assets into Debtor's bankruptcy estate, Jones Day argues that it is entitled
15  to allowance of its claim for administrative expenses based on an exception to the
16  second *In re Abercrombie* element under *Reading Co. v. Brown,* 391 U.S. 471 (1968),
17  wherein the Supreme Court held that based on the principle of *respondeat superior* and
18  the rule of fairness in bankruptcy, damages resulting from the negligence of a receiver
19  should be accorded administrative priority because such damages were "actual and
20  necessary costs of administration."  391 U.S. at 477-479.  In so holding, the Supreme
21  Court stated in *Reading Co. v. Brown* that "actual and necessary costs" should "include
22  costs ordinarily incident to operation of a business, and not be limited to costs without
23  which rehabilitation would be impossible."  *Id.* at 483.  As discussed in more detail below,
24  the court determines that some of Jones Day's claimed fees were for services incident to
25  the operation of Debtor's business, and further, that the doctrine of *respondeat superior*
26  and fairness require that the court grant in part and deny in part Jones Day's request to
27
28

1  accord administrative priority status to its claim for fees and expenses under 11 U.S.C. § 503(b)(1).

In this court's view, there were three general categories of services that Jones Day rendered for Haberbush pursuant to the Appointment Order for which Jones Day now seeks administrative priority status: (1) services related to the exercise of rights relating to the two leases and purchase options performed before April 16, 2015, when Jones Day was informed of the issue with the form of the Appointment Order; (2) services related to the exercise of rights relating to the two leases and purchase options performed on or after April 16, 2015; and (3) services related to interpretation of the Appointment Order.  The court observes that no party, including the Plan Agent, objected to any of Jones Day's specific billing entries or hourly rates of its professionals, but the court does not allow any fees for which Jones Day has not provided a specific billing entry describing the nature of the services rendered, including the task performed, the identity of the professional performing the services, the time spent on the specific task and the hourly rate of the professional performing the services.  Furthermore, as described in more detail below, the court determines that Jones Day should be entitled to administrative priority for the fees and expenses it incurred in relation to the first and third categories but not for the second category.

With respect to the first category of services Jones Day rendered for Haberbush as Responsible Officer for Ace Museum pursuant to the Appointment Order, when Jones Day began its representation of Haberbush, Jones Day acted in accordance with the Appointment Order and performed services that involved review of the two pertinent leases and related insurance issues for the purposes of entering into transactions to realize value for the Debtor's bankruptcy estate based on claims that the estate had against Ace Museum.  The court determines that the fees and expenses incurred as a result of these services were actual and necessary costs of administration and should be entitled to administrative priority status because they were incident to operation of

Debtor's business and it would be fundamentally unfair for Jones Day to be denied its fees for services it performed in accordance with, and in reliance on, the Appointment Order based on principles of fairness set out in *Reading Co. v. Brown, supra*. Accordingly, the court accords administrative priority status to the claim of Jones Day for fees and expenses incurred for services related to the first category as described above.

With respect to the second category of services Jones Day provided to Haberbush in relation to the Appointment Order, after April 16, 2015, when Jones Day was informed of the issue with the form of the Appointment Order, No. 2:13-bk-14135-RK, ECF 2005, Declaration of David R. Haberbush at ¶¶ 11 and 13, in this court's view, Jones Day should have ceased rendering legal services related to the underlying work for which it was hired, that is, work related to real estate and insurance matters, until the issue of the form of the Appointment Order governing its employment was resolved.  Specifically, the issue with the form of the Appointment Order involved whether Haberbush would be serving as an officer of Ace Museum on behalf of Ace Museum or serving as an independent actor like a state court receiver, accountable to the creditors of Debtor's bankruptcy estate.  If Haberbush and his counsel could only be employed on behalf of Ace Museum, the defendant in the pertinent adversary proceeding, Haberbush's appointment as Responsible Officer would have been untenable because Haberbush's appointment was intended to be on behalf of, and clearly for the benefit of, Debtor's bankruptcy estate, whose interests are directly adverse to that of Ace Museum; simply put, Haberbush would have had the duty to act in the best interests of both the plaintiff, Committee, and the defendant, Ace Museum, in the pertinent adversary proceeding, which would have presented an actual conflict for counsel representing Haberbush under California Rule of Professional Conduct 3-310(C)(2).  The incorrect form of the Appointment Order submitted by Committee and approved by the court was not the stipulated form of the Appointment Order agreed to by Ace Museum and Committee. However, the incorrect, but approved, form of order for the Appointment Order did not

make evident that there would be such an ethical conflict, and Jones Day accepted the representation of Haberbush under the premises of the incorrect but approved Appointment Order and performed the services for which it seeks compensation by this Motion. The court disagrees with the Plan Agent's argument that fees should be denied to Jones Day because of the lack of a direct and substantial benefit to the estate on grounds that this was a "failed engagement of counsel", ECF 2043 at 5, and in this regard, the court disagrees with the Plan Agent for the reasons stated above based on *Reading Co. v. Brown, supra.*

Nonetheless, after learning of the issue with the form of the Appointment Order, Jones Day rendered services on behalf of Haberbush for which it now claims fees of $18,510.00 related to insurance and real estate matters, which this court finds to be unreasonable and unnecessary costs of administration. For this reason, the court determines that it would not be fundamentally unfair to deny administrative priority status to the fees and expenses claimed by Jones Day for services related to the second category of services as described above, which the court specifically lists out in Exhibit 1 attached to this Memorandum Decision. Thus, the court determines that this portion of Jones Day's claim for fees and expenses should be disallowed.

With respect to the third category of services that Jones Day rendered for Haberbush pursuant to the Appointment Order, after April 16, 2015, Jones Day performed services related to interpretation of the Appointment Order and the resolution of the issue related to the form of the Appointment Order. The court determines that these services, including those related to the Emergency Motion of Plaintiff to Amend "Order Appointing Responsible Officer for Ace Museum", No. 2:14-ap-01771-RK, ECF 42, and the Emergency Motion of David R. Haberbush as Responsible Officer for Ace Museum for Instruction Pursuant to "Order Appointing Responsible Officer for Ace Museum", No. 2:14-ap-01771-RK, ECF 53, which the court specifically directed Haberbush to file, were actual and necessary costs of administration of the bankruptcy

estate in this case. That is, like in *Reading Co. v. Brown*, *supra,* where the tort claimants received administrative expense priority status for their claim that arose out of the receiver's negligence, here, Jones Day should receive administrative expense priority status for the portion of their claim for services that arose out of Committee's act of inadvertently lodging the wrong form of order for the Appointment Order. Jones Day was hired as Haberbush's counsel in accordance with the Appointment Order and in rendering services related to interpretation of the Appointment Order, which needed to be resolved in order to dictate the scope of services it could provide to Haberbush, as well as define Haberbush's duties as Responsible Officer for Ace Museum, Jones Day provided services that were incident to operation of Debtor's business. Accordingly, the court accords administrative priority status to the fees and expenses that Jones Day incurred for services related to the third category as described above.

The court has an independent duty to review the reasonableness of claimed fees and expenses of the professionals employed in this bankruptcy case pursuant to 11 U.S.C. § 330, and when the time is appropriate, the court will consider whether the fees and expenses claimed by other professionals that arose in this case out of Committee's inadvertent act of lodging the wrong form of order are indeed reasonable.

**Conclusion**

For the reasons set forth herein, the court determines that Jones Day is entitled to allowance of its administrative expense claim in the amount of $59,628.50 for fees and expenses pursuant to 11 U.S.C. § 503(b)(1)(A), which shall be paid in accordance with the terms of the confirmed plan of reorganization, and Jones Day is ordered to submit a

///

///

1  proposed order for allowance and payment of this claim within 14 days of the date of
2  entry of this Memorandum Decision pursuant to Rule 9014 of the Federal Rules of
3  Bankruptcy Procedure and Rule 58 of the Federal Rules of Civil Procedure.
4      IT IS SO ORDERED.
5                                    ###

23  Date: August 24, 2016
24                                    _____
                                       Robert Kwan
                                       United States Bankruptcy Judge

# Exhibit 1

**JONES DAY**

David Haberbush as Responsible Officer for Ace Museum

SERVICES DETAIL SCHEDULE

| Date of Service | Timekeeper Name | Hours | Amount |
|---|---|---|---|
| 04/17/15 | C M HIRSCH | 1.40 | 980.00 |

Review and analyze policy material provided by B. McDonald, including Liberty CGL Package Policy, bankruptcy order and email correspondence, in support of coverage assessment on the adequacy of coverage to Ace Museum (.80); draft and revise executive summary and memorandum re coverage afforded to Ace Museum by Liberty Policy in comparison to standard coverage offered on the CGL marketplace (.30); conduct industry research re ISO forms and endorsements referred to in Lease provisions (.30).

| 04/17/15 | B L SPIEGEL | 0.10 | 100.00 |
|---|---|---|---|

Review B. Gregoratos email to D. Haberbush re lease and insurance issues.

| 04/20/15 | B GREGORATOS | 0.30 | 240.00 |
|---|---|---|---|

Review D. Haberbush's response to comments; email re further review.

| 04/20/15 | C M HIRSCH | 1.00 | 700.00 |
|---|---|---|---|

Review and analyze commercial lease pertaining to S. La Brea and Sycamore properties, including addendums and amendments, in connection with insurance coverage analysis and to confirm satisfaction of lease requirements (.60); review email correspondence and prepare responses re B. McDonald status updates (.10); review and analyze industry market specimens for standard CGL and commercial property coverage, including business income forms, in support of executive summary and assessment (.30).

| 04/21/15 | C M HIRSCH | 4.90 | 3,430.00 |
|---|---|---|---|

Draft and revise executive summary and discussion re adequacy of insurance coverage maintained by Ace Museum in connection with bankruptcy court order to the responsible officer and to assess compliance with commercial lease requirements on insurance (1.9); review and analyze Liberty package CGL and commercial property policy, endorsements and extensions in response to question of adequacy (1.1); review and analyze commercial lease pertaining to S. La Brea and Sycamore properties, including addendums and amendments, in connection with insurance coverage analysis and to confirm satisfaction of lease requirements (.90); review email correspondence and prepare responses re B. McDonald status updates (.10); review and analyze industry market specimens for standard CGL and commercial property coverage, including business income forms, in support of executive summary and assessment (.90).

| 04/22/15 | C M HIRSCH | 3.30 | 2,310.00 |
|---|---|---|---|

Continue to draft and revise executive summary and discussion re adequacy of insurance coverage maintained by Ace Museum in connection with bankruptcy court order to the responsible officer and to assess compliance with commercial lease requirements on insurance (1.2); continue to review and analyze Liberty package CGL and commercial property policy endorsements and extensions in response to the question of adequacy (.90); continue to review and analyze commercial lease pertaining to S. La Brea and Sycamore properties, including addendums and amendments, in connection with insurance coverage analysis and to confirm satisfaction of lease requirements (.30); review email correspondence and prepare responses to B. McDonald status updates (.10); continue to review and analyze industry market specimens for standard CGL and commercial property coverage, including business income forms, in support of

executive summary and assessment (.20); conduct industry research re ISO forms and lease compliance language in CGL policies in support of analysis (.60).

| | | | |
|---|---|---|---|
| 04/23/15 | C M HIRSCH | 5.20 | 3,640.00 |

Continue to draft and revise executive summary and discussion re adequacy of insurance coverage maintained by Ace Museum in connection with bankruptcy court order to the responsible officer and to assess compliance with commercial lease requirements on insurance (2.1); continue to review and analyze Liberty package CGL and commercial property policy, endorsements and extensions in response to question of adequacy (1.1); continue to review and analyze commercial lease pertaining to S. La Brea and Sycamore properties, including addendums and amendments, in connection with insurance coverage analysis and to confirm satisfaction of lease requirements (.50); review email correspondence and prepare responses re B. McDonald status updates (.10); continue to review and analyze industry market specimens for standard CGL and commercial property coverage, including business income forms, in support of executive summary and assessment (.30); review and analyze B. McDonald redline edits and comments to rework Lease sections of coverage analysis and to account for Lease requirements for lessee coverage (.30); conduct industry research re ISO forms and lease compliance language in CGL policies in support of analysis (.80).

| | | | |
|---|---|---|---|
| 04/24/15 | C M HIRSCH | 4.50 | 3,150.00 |

Continue to draft and revise executive summary and discussion re adequacy of insurance coverage maintained by Ace Museum in connection with bankruptcy court order to the responsible officer and to assess compliance with commercial lease requirements on insurance (1.5); continue to review and analyze Liberty package CGL and commercial property policy, endorsements and extensions in response to question of adequacy (1.3); continue to review and analyze commercial lease pertaining to S. La Brea and Sycamore properties, including addendums and amendments, in connection with insurance coverage analysis and to confirm satisfaction of lease requirements (.70); review email correspondence and prepare responses to B. McDonald status updates (.10); continue to review and analyze industry market specimens for standard CGL and commercial property coverage, including business income forms, in support of executive summary and assessment (.40); review and analyze B. McDonald redline edits and comments to rework Lease sections of coverage analysis and to account for Lease requirements for lessee coverage (.50).

| | | | |
|---|---|---|---|
| 04/27/15 | C M HIRSCH | 2.30 | 1,610.00 |

Work with B. McDonald re comments and questions with respect to Liberty Policy terms and conditions contrasting with paragraph 8 of the Ace Museum commercial lease in support of working draft of coverage and compliance analysis requested by B. McDonald (1.5); draft and revise coverage and compliance analysis in line with B. McDonald revisions and comments (.40); review and analyze drafts and redlines in connection with B. McDonald comments and further questions surrounding the Liberty Policy's satisfaction of lease provisions (.40).

| | | | |
|---|---|---|---|
| 04/27/15 | B D MCDONALD | 3.00 | 2,250.00 |

Prepare for and attend calls with C. Hirsch re coverage issues; review and edit memorandum re same.

| | | | |
|---|---|---|---|
| 04/27/15 | B L SPIEGEL | 0.10 | 100.00 |

Emails with B. McDonald re status of Insurance Coverage Analysis.