FILED & ENTERED

JUN 18 2018

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY bakchell  DEPUTY CLERK

**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

| | |
|---|---|
| In re:<br><br>ART & ARCHITECTURE BOOKS OF THE 21st CENTURY,<br><br>       Debtor. | Case No. 2:13-bk-14135-RK<br><br>Chapter 7<br><br>**MEMORANDUM DECISION ON PLAN AGENT'S MOTION TO DISQUALIFY BROWN RUDNICK, LLP, AS COUNSEL FOR 400 S. LA BREA, LLC** |

      This bankruptcy case came on for hearing on May 30, 2018 on the motion of Sam S. Leslie, Plan Agent under the confirmed Modified Second Amended Plan of Reorganization of the Official Committee of Unsecured Creditors (Plan Agent), to disqualify the law firm of Brown Rudnick, LLP (Law Firm), from representing 400 S. La Brea, LLC, in this bankruptcy case, or any adversary proceeding in the case.  Victor A. Sahn and David J. Richardson, of the law firm of SulmeyerKupetz, appeared for Plan Agent as Movant.  Joel S. Miliband, of the Law Firm, Brown Rudnick, LLP, appeared for the firm as Respondent.

      The asserted basis for the motion to disqualify the Law Firm is California Rule of Professional Conduct 3-310 which requires that an attorney avoid the representation of adverse interests.  "The authority of a trial court to disqualify an attorney derives from the power inherent in every court [t]o control in furtherance of justice, the conduct of its

ministerial officers." *City and County of San Francisco v. Cobra Solutions, Inc.,* 38 Cal.4th 839, 846 (2006), *cited and quoted in, Tivoli, LLC v. Targetti Sankey S.P.A.,* 2015 WL 12669882, slip op. at *3 (C.D. Cal. 2015). The federal courts of California, including this court, do not have their own rules of professional conduct, and in this judicial district, look to the California Rules of Professional Conduct, governing the conduct of attorneys practicing in this state, as interpreted by California state law. *In re Muscle Improvement, Inc.,* 437 B.R. 389, 393 and nn. 4-6 (Bankr. C.D. Cal. 2010), *citing inter alia,* Local Bankruptcy Rule 2090-2(a) referring to Local Civil Rule 83-2 (now Local Civil Rule 83-3.1.2 of the United States District Court for the Central District of California as the standards of conduct for attorneys practicing in this court, which in turn refers to the California Rules of Professional Conduct.  "Attorneys practicing in this district 'must be familiar with and comply with the standards of professional conduct required of members of the State Bar of California and contained in the State Bar Act, the Rules of Professional Conduct of the State Bar of California, and the decisions of any court applicable thereto.'"  *Tivoli, LLC v. Targetti Sankey S.P.A.,* 2015 WL 12669882, slip op. at *3, *citing and quoting,* Local Civil Rule 83-3.1.2 of the United States District Court for the Central District of California.  Accordingly, the court applies California law to the Plan Agent's motion to disqualify the Law Firm. *Id., citing, In re County of Los Angeles,* 223 F.3d 990, 995 (9th Cir. 2000) and *Certain Underwriters at Lloyd's, London v. Argonaut Insurance Co.,* 264 F.Supp.2d 914, 918 (N.D. Cal. 2003).

By his motion, the Plan Agent asserts that the Law Firm may not represent 400 S. La Brea, LLC, due to a conflict of interest because Debtor Art & Architecture Books of the 21st Century, a California corporation, dba ACE Gallery, consulted the Law Firm for possible representation of Debtor in this bankruptcy case and obtained confidential information of Debtor, thereby the Law Firm was "retained" by Debtor for purposes of applying Rule 3-310, and the Plan Agent as the successor-in-interest to Debtor as the prior client may object to the Law Firm's "successive representation" of a new client with adverse interests based on the Law Firm's former "representation" of Debtor, the Plan Agent's predecessor-in-interest (the Plan Agent became the sole representative of the Debtor and its post-confirmation estate pursuant to the modified second amended plan of reorganization of the creditors' committee and the plan confirmation order, Docket Numbers 1859 and 1873).

"Because motions to disqualify are often tactically motivated and can be disruptive to the litigation process, disqualification is a drastic measure that is generally disfavored and imposed only if absolutely necessary." *Tivoli, LLC v. Targetti Sankey S.P.A.,* 2015 WL 12669882, slip op. at *3, *citing and quoting, Beltran v. Avon Products, Inc.,* 867 F.Supp.2d 1068, 1076-1077 (C.D. Cal. 2012)(citation omitted).  "Disqualification motions involve a conflict between the clients' right to counsel of their choice and the need to maintain ethical standards of professional responsibility." *People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.,* 20 Cal.4[th] 1135, 1145 (1999), *cited and quoted in, Tivoli, LLC v. Targetti Sankey S.P.A.,* 2015 WL 12669882, slip op. at *3. "The paramount concern must be the preservation of public trust both in the scrupulous administration of justice and in the integrity of the bar." *State Farm Mutual Insurance Co. v. Federal Insurance Co.,* 72 Cal.App.4[th] 1422, 1428, 86 Cal.Rptr.2d 20 (1999), *cited and quoted in, Tivoli, LLC v. Targetti Sankey S.P.A.,* 2015 WL 12669882, slip op. at *3,

Regarding the nature of conflict of interest law, the court in *In re Muscle Improvement, Inc.*, has observed:

> Conflict of interest law is complex and subtle.  While a careful lawyer should not have difficulty in complying with most of the applicable rules of professional conduct, even sophisticated counsel trying to comply with the rules regarding conflict of interest must make difficult and uncertain decisions.  In consequence, the disqualification of counsel on conflict of interest grounds normally does not reflect on counsel's integrity or qualifications to practice law.

437 B.R. at 392-393 (footnote and citation omitted).

As a starting point, the court considers to California Rule of Professional Conduct 3-310(E), the rule relevant to this motion concerning the ethical issue of successive representation, which provides:

> A member shall not, without the informed written consent of the client or former client, accept employment adverse to the client or former client where, by reason of the representation of the client or former client, the member has obtained confidential information material to the employment.

The ethical issue of successive representation of clients with potentially adverse interests raised by California Rule of Professional Conduct 3-310(E) has been addressed by the California courts.  As stated by a California Court of Appeal in *Med-Trans Corp., Inc. v. City of California City,* 156 Cal.App.4[th] 655 (2007):

Courts have applied rule 3-310(E) to a variety of situations, and different tests have been developed for determining whether disqualification is appropriate. The present case involves alleged successive representation of clients whose interests are claimed to be adverse.  "In successive representation cases, a party may obtain the disqualification of an attorney by establishing that the targeted attorney (1) has actual knowledge of material confidential information or (2) is *presumed* to have acquired confidential information because of the relationship between the prior representation and the current representation."

156 Cal.App.4th at 664, *citing and quoting, Faughn v. Perez,* 145 Cal.App.4th 592, 603 (2006)(italics added in original).  In *Flatt v. Superior Court,* 9 Cal.4th 275 (1994), the California Supreme Court stated the rationale for this rule:

Where the potential conflict is one that arises from the *successive* representation of clients with potentially adverse interests, the courts have recognized that the chief fiduciary value jeopardized is that of client *confidentiality.* Thus, where a former client seeks to have a previous attorney disqualified from serving as counsel to a successive client in litigation adverse to the interests of the first client, the governing test requires that the client demonstrate a "*substantial relationship*" between the subjects of the antecedent and conconcurrent representations.

The "substantial relationship" test mediates between two interests that are in tension in such a context—the freedom of the subsequent client to counsel of choice, on the one hand, and the interest of the former client in ensuring the permanent confidentiality of matters disclosed to the attorney in the course of the prior representation, on the other.  Where the requisite substantial relationship between the prior and the current representations can be demonstrated, access to confidential relationship by the attorney in the course of the first representation (relevant, by definition, to the second representation) is *presumed* and disqualification of the attorney's representation of the second client is mandatory; indeed, the disqualification extends vicariously to the entire firm.

9 Cal.4th at 283 (emphases in original; citations omitted), *cited and quoted in, Med-Trans Corp., Inc. v. City of California City,* 156 Cal.App.4th at 664-665.  "According to *Flatt,* a 'substantial relationship' exists whenever the 'subjects' of the prior and the current representations are linked in some rational manner."  *Jessen v. Hartford Casualty Ins. Co.,* 111 Cal.App.4th 698, 711, 3 Cal.Rptr.3d 877, 886 (2003), *citing and quoting inter alia, Flatt v. Superior Court,* 9 Cal.4th at 283.

According to the California Court of Appeal in *Jessen v. Hartford Casualty Insurance Co.,* "[w]e therefore ascribe to the word 'subjects' (*Flatt, supra,* 9 Cal.4th at p. 283, 36 Cal.Rptr.2d 537, 885 P.2d 950) a broader definition than the discrete legal and

4

factual issues involved in the compared representations.  We consider the 'subject' of a representation as including information material to the evaluation, prosecution, settlement or accomplishment of the litigation or transaction given its specific legal and factual issues.  Thus, successive representations will be 'substantially related' when the evidence before the trial court supports a rational conclusion that information material to the evaluation, prosecution, settlement or accomplishment of the former representation given its factual and legal issues is also material to the evaluation, prosecution, settlement or accomplishment of the current representation given its factual and legal issues."  *Jessen v. Hartford Casualty Ins. Co.,* 111 Cal.App.4[th] at 712-713, 3 Cal.Rptr.3d at 887-888, *citing and quoting inter alia, Flatt v. Superior Court,* 9 Cal.4[th] at 283 and *Morrison Knudsen Corp. v. Hancock, Rothert & Bunshoft,* 69 Cal.App.4[th] 223, 236-237 (1999).  "To create a conflict requiring disqualification, the information acquired during the first representation [must] be 'material' to the second; that is, it must be found to be directly at issue in, or have some critical importance to, the second representation."  *Tivoli, LLC v. Targetti Sankey S.P.A.,* 2015 WL 12669882, slip op. at *4 (internal quotation marks omitted), *citing and quoting, Farris v. Fireman's Fund Insurance Co.,* 119 Cal.App.4[th] 671, 680 (2004).

In considering whether the same subject matter is involved, the California courts have considered the following factors: (1) similarities between the two factual situations; (2) similarities between the legal questions posed; and (3) the nature and extent of the attorney's involvement in the two cases.  Tuft and Peck, *Rutter Group California Practice Guide: Professional Responsibility,* ¶ 4:189a (online ed., September 2017 update), *citing and quoting inter alia, Morrison Knudsen Corp. v. Hancock, Rothert & Bunshoft,* 69 Cal.App.4[th] at 234, 81 Cal.Rptr.2d at 432; *Jessen v. Hartford Casualty Ins. Co.,* 111 Cal.App.4[th] at 709, 3 Cal.Rptr.3d at 884-885; and *Khani v. Ford Motor Co.,* 215 Cal.App.4[th] 916, 920-921, 155 Cal.Rptr.3d 532, 534-535 (2013).

The Ninth Circuit has commented on the "substantial relationship" test in a federal bankruptcy context in a case involving attorney disqualification for successive representation, though not specifically referring to California law.  *Trone v. Smith*, 621 F.2d 994 (9th Cir. 1980).  The Ninth Circuit stated: "The relevant test for disqualification is whether the former representation is 'substantially related' to the current representation."  *Id.* at 998 (citations omitted).  The Ninth Circuit observed:  "[t]he substantial relationship

5

1    test does not require that the issues in the two representations be identical.  The

2    relationship is measured by the allegations in the complaint and by the nature of the

3    evidence that would be helpful in establishing those allegations."  *Id.* at 1000.  The Ninth

4    Circuit also commented that the test could be met if "during the prior representation the

5    attorneys were trying to acquire information vitally related to the subject matter of the

     pending litigation."  *Id.*

6          Citing the California Supreme Court in *Flatt v. Superior Court,* the court in *In re*

7    *Muscle Improvement, Inc.,* observed:

8          The chief fiduciary value protected when an attorney represents successive
           clients is client confidentiality.  *See, e.g., [Flatt v. Superior Court,]* at 283, 36
9          Cal.Rptr.2d 537, 885 P.2d 950; *see also,* Cal. Bus. & Prof. Code §
           6168(e)(1)(West 2008)(requiring an attorney, "[t]o maintain inviolate the
10         confidence, and at every peril to himself or herself to preserve the secrets, of his
           or her client.")  The purpose of such protection is to permit counsel to give a client
11         the best advice possible.  To enable such advice, it is necessary for the client to
           disclose all relevant information, including information that the client does not want
12         to be made public.  The need to protect an earlier client's confidential information
           may require that the attorney be disqualified from a contemporaneous or
13         subsequent representation of another client.  *See, e.g., [People ex rel. Dept. of
           Corporations v.] SpeeDee Oil [Change Systems, Inc.],* 20 Cal.4th [1135] at 1146,
14         86 Cal.Rptr.2d 816, 980 P.2d 371 (1999).  Thus, the protection of the
           confidentiality of such communications is fundamental to our legal system.  *See id.*
15

16         A court decision on this issue must be a pragmatic decision that focuses on the
           nature and quality of the former representation.  *See, e.g., Jessen v. Hartford
17         Casualty Ins. Co.,* 111 Cal.App.4th 698, 706, 3 Cal.Rptr.3d 877 (2003).  The court
           must exercise special care in making such a decision where the attorney was only
18         consulted about possible retention in a case but was not retained.

19

20   437 B.R. at 393-394 (footnote omitted).  This court agrees with these observations that a

21   decision on this issue regarding the disqualification of counsel based on successive

22   representation must be a pragmatic one that focuses on the nature and quality of the

23   former representation as indicated in California Rule of Professional Conduct 3-310(E)

24   and the relevant case law and that the court must exercise special care in its decision

25   where the attorney was only consulted about possible retention on a matter but was not

     retained.

26         In the case of *Jessen v. Hartford Casualty Insurance Co.* cited in *In re Muscle*

27   *Improvement, Inc.,* the California Court of Appeal described the two variables in

28

                                          6

analyzing whether an attorney should be disqualified in a successive representation situation:

> We agree that the question whether an attorney should be disqualified in a successive representation case turns on two variables: (1) the relationship between the legal problem involved in the former representation and the legal problem involved in the current representation, and (2) the relationship between the attorney and the former client with respect to the legal problem involved in the former representation. We emphasize, however, the significance of the latter factor in the application of the *Ahmanson* formula [referring *to H.F. Ahmanson & Co. v. Salomon Brothers, Inc.,* 229 Cal.App.3d 1445, 280 Cal.Rptr. 614 (1991)].

111 Cal.App.4th at 709, 3 Cal.Rptr.3d at 884-885.

The court in *Jessen v. Hartford Casualty Insurance Co.* distinguished between the situation where the relationship between the attorney and the former client was direct, that is, where the lawyer personally provided legal advice and services to the former client, and the situation where the relationship was not direct, that is, peripheral or attenuated, where the lawyer has not provided legal advice or services to the former client, addressing first the direct relationship:

> If the relationship between the attorney and the former client is shown to have been direct—that is, where the lawyer was personally involved in providing legal advice and services to the former client—then it must be presumed that confidential information has passed to the attorney and there cannot be any delving into the specifics of the communications between the attorney and the former client in an effort to show that the attorney did or did not receive confidential information during the course of that relationship. As a result, disqualification will depend upon the strength of the similarities between the legal problem involved in the former representation and the legal problem involved in the current representation. This is so because a direct attorney-client relationship is inherently one during which confidential information "would normally have been imparted to the attorney by virtue of [that sort of] former representation," and therefore it will be conclusively presumed that the attorney acquired confidential information relevant to the current representation if it is congruent with the former representation.

111 Cal.App.4th at 709, *citing and quoting inter alia, H.F. Ahmanson & Co. v. Salomon Brothers, Inc.,* 229 Cal.App.3d at 1454; *see also, In re Muscle Improvement, Inc.,* 437 B.R. at 394-395.

Where the relationship between the attorney and the former client was not direct, but rather peripheral or attenuated, the court in *Jessen v. Hartford Casualty Insurance Co.,* stated:

7

On the other hand, where the former attorney-client relationship is peripheral or attenuated instead of direct, then the presumption will not be applied in the absence of an adequate showing that the attorney was in a position vis-à-vis the client to likely have acquired confidential information material to the current representation.  In these circumstances, the relationship between the compared representations shares equal billing with the relationship between the attorney and the former client, and the two aspects of the *Ahmanson* test are assessed in combination in determining whether disqualification is mandated. . .  However, if the court determines that the former attorney was not placed in a direct, personal relationship with the former client, the court must assess whether the attorney was positioned during the first representation so as to make it likely the attorney acquired confidential information relevant to the current representation, given the similarities or lack of similarities between the two.

111 Cal.App.4th at 710-711, *citing inter alia, H.F. Ahmanson & Co. v. Salomon Brothers, Inc.,* 229 Cal.App.3d at 1453; *see also, In re Muscle Improvement, Inc.,* 437 B.R. at 395.

This case involves the situation of attorneys who were initially consulted, but not actually retained as counsel, which is not disputed.  Moreover, it does not appear that the attorneys ever provided legal advice and services to the former client, as there is no evidence that they did.  Indeed, the Plan Agent in his moving and reply papers does not argue that the Law Firm provided legal advice and services to Debtor as the former client in the initial consultations, and neither does the evidence consisting of the declarations of its witnesses in support of the motion make any statement that the Law Firm ever provided legal advice and services to Debtor in these initial consultations.  Motion at 2-7 and 9-12; Declarations of Beth Ann R. Young, Kurt Ramlo and David J. Richardson in support thereof.  In the motion, the Plan Agent's legal argument has a section with the heading, "BrownRudnick Received Confidential Information," but none stating that the Law Firm provided legal advice or services to Debtor.  Motion at 12-14.  In their declarations in opposition to the motion, Attorneys Ronald Rus and Cathrine M. Castaldi of the Law Firm stated that they only had limited communications with representatives of Debtor and Chrismas about a potential engagement of the Law Firm on behalf of Debtor, but there was no admission that the Law Firm provided any legal advice or services to Debtor.  Declarations of Ronald Rus and Cathrine M. Castaldi in opposition to Motion. The Plan Agent in his Reply tries to finesse the issue of direct versus indirect relationship by arguing that the lawyers of the Law Firm in the initial consultations with Debtor "engage[d] in substantive discussions" and cited the case of *Little v. Post (In re Amber Hotel Corp.),* 2014 U.S. Dist. LEXIS 153302, slip op. at *7 (C.D. Cal. October 27, 2017)

for the proposition that it is "sufficient for Rule 3-310(E) purposes, if engagement discussions 'proceed[ed] beyond initial or peripheral contacts'), which in turn cited, *People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.,* 20 Cal.4th at 1148.  The Plan Agent's Reply argument is not persuasive since the district court in *Little v. Post* held on appeal that the bankruptcy court did not abuse its discretion to disqualify a law firm based on conflicting evidence that it could reasonably infer that the attorneys of the firm actually received confidential information relevant to the current representation from the prior consultation for which it had not been retained.  *Id.,* slip op. at *7-8.  The district court's reliance on *SpeeDee Oil* in *In re Amber Hotel Corp.* does not help the Plan Agent in this case because the district court cited and quoted the California Supreme Court in *SpeeDee Oil* for the proposition not stated in the Plan Agent's Reply that "[w]hether or not an attorney is officially retained, '[a]n attorney represents a client—for purposes of a conflict of interest analysis—when the attorney knowingly obtains material confidential information from the client and renders legal advice or services as a result."). This proposition from *SpeeDee Oil* is inapplicable in this case because there is no showing that the Law Firm rendered legal advice or services to Debtor as the former client in the initial consultations.  *Id.,* slip op. at 7.  Thus, based on the foregoing, for lack of evidence showing that the Law Firm provided legal advice or services to the former client, Debtor, in the initial consultations, the court determines that there was no direct relationship between the former client, Debtor, and the attorneys, the Law Firm, in order to raise any presumption that confidential information passed to the attorneys.  *Jessen v. Hartford Casualty Ins. Co.,* 111 Cal.App.4th at 709, 3 Cal.Rptr.3d at 884-885. (If there were such direct relationship, the presumption that the attorney received confidential information is irrebuttable, and disqualification would depend on the "strength of the similarities between the legal problem involved in the former representation and the legal problem involved the current representation." *Id.*)

Nevertheless, these rules pertaining to disqualification of attorneys for successive representation may still apply in such circumstances because "[a] fiduciary or attorney-client relationship may arise out of an initial consultation, even though actual employment does not result, if *confidential information was disclosed* during the consultation."  Tuft and Peck, *Rutter Group California Practice Guide: Professional Responsibility,* ¶ 4:167 (emphasis in original), *citing inter alia, People ex rel. Dept. of Corporations v. SpeeDee*

*Oil Change Systems, Inc.,* 20 Cal.4th at 1148, 86 Cal.Rptr.2d at 825.  As stated above, in *SpeeDee Oil,* the California Supreme Court stated: "An attorney represents a client—for purposes of a conflict of interest analysis—when the attorney knowingly obtains material confidential information from the client and renders legal advice or services as a result." 20 Cal.4th at 1148, 86 Cal.Rptr.2d at 825.

However, as a well-known treatise on California attorney professional responsibility law based on two California Court of Appeal opinions has commented, "[w]here preliminary consultation with a potential client does not result in the attorney's formal retention, disqualification is appropriate only where the putative client can show that the consultation 'resulted in disclosure of confidential information or that it would be reasonable to infer such disclosure.' " Tuft and Peck, *Rutter Group California Practice Guide: Professional Responsibility,* ¶ 4:168, *citing and quoting, Med-Trans Corp, Inc. v. City of California City,* 156 Cal.App.4th at 667, 68 Cal.Rptr.3d at 26; and *Marriage of Zimmerman,* 16 Cal.App.4th 556, 564-565, 20 Cal.Rptr.2d 132, 137-138 (1993); *see also, In re Amber Hotel Corp., supra,* slip op. at *7-8; *In re Muscle Improvement, Inc.,* 437 B.R. at 395.  Placing the burden on the putative client to show either that the consulted attorney received confidential information or that it is reasonable to infer such a disclosure is consistent with the statement of the California Supreme Court in *Flatt v. Superior Court, supra,* that "where a former client seeks to have a previous attorney disqualified from serving as counsel to a successive client in litigation adverse to the interests of the first client, the governing test requires that the client demonstrate a '*substantial relationship'* between the subjects of the antecedent and current representations."  9 Cal.4th at 283 (emphases in original; citations omitted), *cited and quoted in, Med-Trans Corp., Inc. v. City of California City,* 156 Cal.App.4th at 665.

Based on the California Supreme Court's opinion in *SpeeDee Oil,* a California Court of Appeal in *Med-Trans Corp., Inc. v. City of California City, supra,* has concluded that "where the former contact with the attorney was a preliminary conversation that did not result in professional employment or services, the party seeking disqualification must show, directly or by reasonable inference, that the attorney acquired confidential information in the conversation," or "[i]n other words, in such cases the presumption that confidential information passed will not apply."  156 Cal.App.4th at 668, *citing, People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.,* 20 Cal.4th at 1148-1149.

In reaching this conclusion, the court in *Med-Trans Corp.* noted that the California Supreme Court in *SpeeDee Oil* expressly approved the approach of the court in *Marriage of Zimmerman* in denying a motion to disqualify counsel based on alleged successive representation in "properly focus[ing] on whether the [client] established, directly or by reasonable inference" that the attorney received confidential information during the consultation. *Med-Trans Corp., Inc. v. City of California City,* 156 Cal.App.4th at 667-668, *citing, People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.,* 20 Cal.4th at 1148-1149. This court further stated that "[t]his rule is consistent with the principle that the party seeking disqualification must establish that it was represented by the attorney in a manner giving rise to an attorney-client relationship." *Med-Trans Corp., Inc. v. City of California City,* 156 Cal.App.4th at 668 n. 8, *citing, Koo v. Rubio's Restaurants, Inc.,* 109 Cal.App.4th 719, 729, 135 Cal.Rptr.2d 415 (2003).

In considering whether confidential information was or was not disclosed during an initial consultation a California Court of Appeal determined that confidential information was not disclosed based on the following factors: (1) the attorney did not represent the putative client other than in the most preliminary, insubstantial and peripheral manner; (2) the attorney performed no work for the putative client; (3) although the attorney may have offered initial impressions, the attorney was not called upon to formulate a legal strategy; (4) no actual confidential disclosures were claimed by the putative client; and (5) the nature of the relationship between attorney and the putative client was such that no confidential material to the current dispute would normally have been imparted to the attorney. *Marriage of Zimmerman,* 16 Cal.App.4th at 564-565, 20 Cal.Rptr.2d at 137-138, *cited in* Tuft and Peck, *Rutter Group California Practice Guide: Professional Responsibility,* ¶ 4:169, *also citing, Med-Trans Corp., Inc. v. City of California City,* 156 Cal.App.4th at 667 and n.7, 68 Cal.Rptr.3d at 26 and n.7.

The court has considered the case authorities cited by the parties on this issue, but none of these cases involved the factual situation here involving the putative client, the Plan Agent, who is the post-confirmation representative of the bankruptcy estate who succeeded to the attributes of the bankruptcy estate of the debtor-in-possession in its voluntary Chapter 11 bankruptcy case under a confirmed plan of reorganization proposed by the official committee of unsecured creditors and opposed by the debtor-in-possession, which consulted the Law Firm for potential retention. In considering the

peculiar circumstances of this case discussed herein, the court has focused its determination in making a pragmatic decision based on the nature and quality of the former representation by the Law Firm.

In this case, the Plan Agent argues that "[t]he standard for disqualification of BrownRudnick is <u>not</u> that the Plan Agent must show actual, specific confidential information that was exchanged with BrownRudnick," but "[t]he standard is whether this adversary proceeding is substantially related to the Debtor's chapter 11 case, and whether BrownRudnick's conversations were of the type in which it would 'ordinarily' acquire confidential information, making disqualification is mandatory." Motion at 12-13 (emphasis in original), *citing, In re Muscle Improvement, Inc.,* 437 B.R. at 395 and *In re Howrey LLP,* 2014 Bankr. LEXIS 4424, *24 (Bankr. N.D. Cal. October 17, 2014). The court notes that the primary case authority relied by the Plan Agent is *In re Muscle Improvement, Inc.,* as the court in *In re Howrey, LLP* followed the analysis in *Muscle Improvement.* In *Muscle Improvement,* the court stated as follows:

> To prevail under the substantial relationship test, the former client must satisfy two elements: (1) the subject matter of the attorney's current representation is substantially related to the subject matter of the attorney's earlier representation of the former client; and (2) the attorney's earlier representation of the former client was one in which confidential information would ordinarily be disclosed. A former client who establishes both of these elements creates an irrebuttable presumption that the attorney possesses confidential information. The court must then order disqualification.

437 B.R. at 395, *citing Jessen v. Hartford Casualty Ins. Co.,* 111 Cal.App.4[th] at 708-710; *City and County of San Francisco v. Cobra Solutions, Inc.,* 38 Cal.4[th] at 847; and *Henriksen v. Great Am. Sav. & Loan,* 11 Cal.App.4[th] 109, 113-114, 14 Cal.Rptr.2d 184 (1992).

Under this standard, the Plan Agent argues that disqualification is mandatory because "[t]he discussions that BrownRudnick had with Chrismas, LNBYB and RobinsKaplan (the law firm which represented Chrismas personally) extended far beyond mere pleasantries" and "[i]n addition discussions over more than a year between Chrismas and BrownRudnick pertaining to a variety of potential engagements, BrownRudnick was involved in more than two hours of discussions with LNBYB and RobinsKaplan attorneys for the purpose of providing BrownRudnick with the information it would need to step in as the Debtor's replacement general bankruptcy counsel." Motion

at 12.  The Plan Agent further argues that "[t]he Debtor's consultations with BrownRudnick occurred at a time when both the Debtor and the Committee were preparing to propose competing plans of reorganization, and as the Committee was filing its first adversary proceedings to recover fraudulent transfers and unauthorized post-petition transfers," positing that "[a]ny two-hour discussions between outgoing and incoming counsel, pertaining to a debtor's plan, or opposition to the Committee's plan, or pending litigation, would necessarily involve the exchange of confidential financial information."  *Id.* at 13.  In arguing a "substantial relationship" as to the Law Firm's second representation of 400 S. La Brea, LLC, Debtor observes:

> In the Consolidated Adversary, 400 SLB has taken various positions that relate to the confidential financial information of the Debtor during, and prior to, the period of these consultations, including: (i) the claim that the Debtor is the alter ego of Chrismas and other entities controlled by Chrismas; (ii) the claim that Chrismas and the Debtor were interfering with 400 SLB's business relationship with Ace Museum; (iii) the claim that the Debtor was storing art at 400 SLB's real property without consent; and (iv) the claim that the Debtor had become an assignee under 400 SLB's lease.  Indeed, it is likely, given Chrismas' repeated use of the Fifth Amendment Privilege in this litigation, that BrownRudnick has been privy to confidential information that even the Plan Agent does not yet know, as a client such as Chrismas would "ordinarily" be more forthcoming with new counsel than he would be with a plan professional such as the Plan Agent.

*Id.* at 13-14.

In support of his contention that the Law Firm, Brown Rudnick, received Debtor's confidential information, the Plan Agent chiefly relies upon the Declaration of LNBYB Attorney Beth Ann Young: "The fact that the Young Decl. confirms Ms. Young's recollection that confidential information <u>was</u> disclosed to BrownRudnick in the course of its consultations simply confirms that this <u>irrebuttable</u> presumption is not just the law that applies to this case, it is appropriate."  *Id.* at 13.  In her declaration, Ms. Young stated that on December 4, 2015, she received an email from Chrismas notifying her that Debtor decided to terminate LNBYB's services as Debtor's counsel, wanted to ensure a "smooth parting," and that an attorney from Brown Rudnick, Ronald Rus, would be calling her to discuss the transition.  Declaration of Beth Ann R. Young at 1-2.  Ms. Young then described her conversations with Cathrine Castaldi, an attorney at Brown Rudnick:

> 7.  Later that same day, I received a telephone call from Cathrine Castaldi ("Ms. Castaldi"), another attorney at BrownRudnick, to discuss the Bankruptcy case generally and the transition of the case file to the BrownRudnick law firm.  My

13

Time Records, Exhibit "A" at page 6, indicate that this was a call that lasted for 0.5 of an hour, and covered the topic of "SUBSTITUTION OF ATTORNEYS AND FACTS OF THE CASE." My recollection of this initial call was that Ms. Castaldi and I discussed the critical issues then pending in the Debtor's Bankruptcy Case and imminent dates and deadlines, including the appeal of the litigation with the AERC landlord as well as the various positions of the other interested parties in the Bankruptcy Case, the adversary proceedings that the Debtor and Committee were litigating and the status of the then pending settlement proposal from Eric Wilson for a consensual joint plan of reorganization and related matters. This recollection is furthered by my review of emails that I sent Ms. Castaldi after the call had concluded, including one that I described on my Time Records as pertaining to "WILSON SETTLEMENT PROPOSAL AND ORDERLY TRANSITION OF CASE TO BROWN RUDNICK," and a second email described as "APPEAL TASKS AND DEADLINES." See Exhibit "A" at page 8. A true and correct copy of these pages from the LNBYB Fee App are attached hereto collectively as Exhibit "A" and are incorporated herein by this reference and made part hereof.

8. The following Monday, December 7, 2015, still of the belief that BrownRudnick was substituting into the Bankruptcy Case as counsel of record for the Debtor, I had at least two more telephone conversations with Ms. Castaldi, which I memorialized in my Time Records as having a combined .9 hours, and having addressed "RE TRANSITION OF THE CASE." Exhibit "A" at page 6. Although I am not in a position to reveal the specific details about confidential information that was exchanged in those telephone calls with Ms. Castaldi without risking a breach or waiver of the Debtor's confidential information, my recollection of these calls is that we engaged in substantial discussions including my providing intimate details regarding the Debtor's case, the Debtor's litigation with AERC, the Debtor's valuable purchase options on multiple real estate parcels, Ace Museum's objections owing to the Debtor, the pending plan confirmation proceedings, and other then-ongoing litigation, all of which involved the dissemination of information pertaining to overall case strategy, the Debtor's finances, and other such information that I considered confidential information, which I would not have disclosed to Ms. Castaldi but for the belief that Ms. Castaldi, Mr. Rus and BrownRudnick would be stepping in as Debtor's counsel in Debtor's Bankruptcy Case. My review of my emails and Time Records demonstrates that I followed up these telephone calls by sending Ms. Castaldi two further emails. Exhibit "A" at page 8. A true and correct copy of these pages from the LNBYB Fee App are attached hereto collectively as Exhibit "A" and are incorporated herein by this reference.

9. It was my understanding from Ms. Castaldi during our several telephone calls on December 4 and 7, 2015, that she and others at BrownRudnick already had extensive conversations with Mr. Chrismas (outside my presence) in advance of these calls with me, and that Ms. Castaldi and others already had a substantial amount of information regarding the Debtor and the Debtor's Bankruptcy Case. I was not surprised by Debtor's selection of BrownRudnick, as Mr. Chrismas had indicated to me on many occasions during the prior year that he wanted to bring in Ron Rus to represent the Debtor on the AERC appeal. Mr. Ramlo and I

14

1
2
3

participated in at least one telephone conference with Mr. Rus and Mr. Chrisman on June 3, 2015.  The specific purpose of this call on June 3, 2015 was to discuss with Mr. Rus the Debtor's then appeal involving AERC, and the legal and factual issues regarding the Debtor's position in that appeal.  See Exhibit "C" at p.13.

4
5
6
7

10.  During the period following LNBYB's December 2015 termination, I coordinated with my colleague, Kurt Ramlo ("Mr. Ramlo"), to provide Ms. Castaldi and BrownRudnick with additional information regarding the Debtor's Bankruptcy Case and critical dates and deadlines.  The Time Records indicate that Mr. Ramlo drafted a substantial follow-up email to Ms. Castaldi regarding "TRANSITION OF CASE TO NEW BANKRUPTCY COUNSEL" that involved 3.4 hours of drafting.  See Exhibit "A" at page 7.

8
9
10
11
12
13
14
15

Young Declaration at 2-3.  The court extensively quotes Ms. Young's declaration since it is the primary evidence in support of the Plan Agent's motion to disqualify the Law Firm.  The remaining portion of Ms. Young's declaration described her sending Ms. Castaldi an email on December 30, 2015 regarding Mr. Rus's representation of the Debtor on the appeal in the Ninth Circuit (the email itself clarifies that the representation would be as special counsel on the appeals relating to the landlord-tenant dispute with AERC) and later hearing that Brown Rudnick would not step into the case and represent Debtor and that LNBYB would continue as Debtor's bankruptcy counsel.  *Id.* at 4 and Exhibit D attached thereto.

16
17
18
19
20
21
22
23
24

The Law Firm opposes the motion and argues that there was no substantial relationship between the subject matters of its initial consultations with Debtor for which it was not retained and the subsequent representation of 400 South La Brea, LLC, that no material confidential information was disclosed to it within the meaning of Rule 3-310 because the subject matters were different than the current litigation in this case and the relationship between it and the putative client, Debtor, is distinguishable from cases cited by the Plan Agent in which the attorneys were disqualified.  The Plan Agent filed a written reply to this opposition and filed evidentiary objections to the declarations of Ronald Rus and Cathrine Castaldi, Attorneys of the Law Firm.  The court has reviewed the Plan Agent's objections to the Rus and Castaldi Declarations and overrules the objections.

25
26
27
28

The chronology of events in this bankruptcy case as stated by the parties in their respective papers is important to consider.  The evidence indicates that the Law Firm was consulted by the Debtor in possession on two occasions in this case about potential representation, initially, in or about April 2015, and then, on or about December 2, 2015.

On both of these occasions, the person who consulted the Law Firm for the Debtor was Douglas Chrismas, Debtor's president and sole shareholder, about potential representation, but also in the second consultation, attorneys from Levene Neale Bender Yoo & Brill, LLP (LNBYB), Debtor's general bankruptcy counsel, provided information about Debtor to the Law Firm.

On the first occasion or consultation in April 2015, Debtor through Chrismas consulted the Law Firm about potential representation of Debtor on appeals of the decisions of this court relating to landlord-tenant law and related bankruptcy law disputes with Debtor's landlord, AERC, pending before the United States Court of Appeals for the Ninth Circuit. Although Chrismas told the Law Firm that it would be representing Ace Gallery New York, which is allegedly a nominee entity controlled by Chrismas to siphon off funds belonging to Debtor and its bankruptcy estate, Chrismas meant Debtor because it was the only relevant entity having appeals relating to its leased premises pending before the Ninth Circuit. Ultimately, Debtor did not retain the Law Firm.

Because as discussed previously, there is no evidence that the Law Firm provided Debtor with legal advice or services in the first consultation, there was no direct relationship between the attorneys, the Law Firm, and the former client, Debtor, to raise the presumption that material confidential information passed to the Law Firm. In situations like this "[w]here preliminary consultation with a potential client does not result in the attorney's formal retention, disqualification is appropriate only where the putative client can show the consultation 'resulted in disclosure of confidential information or that it would be reasonable to infer such disclosure.'" Tuft and Peck, *Rutter Group California Practice Guide: Professional Responsibility,* ¶ 4:168, *citing and quoting, Med-Trans Corp, Inc. v. City of California City,* 156 Cal.App.4th at 667, 68 Cal.Rptr.3d at 26; and *Marriage of Zimmerman,* 16 Cal.App.4th 556, 564-565, 20 Cal.Rptr.2d 132, 137-138 (1993).

In this regard, the court disagrees with the Plan Agent's analysis that it must be determined first whether a "substantial relationship" exists between the Law Firm's earlier representation of the former client and its current representation of the new client and that only then it can be determined whether the relationship between the Law Firm and the former client was direct or not direct. In fairness to the Plan Agent, his analysis is based on the approach apparently set forth by the court in *In re Muscle Improvement, Inc.,* 437 B.R. at 394-396. The court in this case differs with the court in *Muscle*

16

*Improvement, Inc.,* in that this court believes that in a situation like this one, where there is no direct relationship between the attorney and the former client because the attorney did not provide legal advice or services to the former client, the court should not apply the presumption that the attorney acquired confidential information relevant to the current representation in the former representation "in the absence of an adequate showing that the attorney was in a position vis-à-vis the client to likely have acquired confidential information material to the current representation," and only then, if the answer is affirmative, the court would determine whether the subject matter of the current representation is substantially related to the earlier representation of the former client under the "substantial relationship" test. *Jessen v. Hartford Casualty Ins. Co.,* 111 Cal.App.4[th] at 710-711. The court believes that this approach just described is what the California case law calls for as stated in *Jessen v. Hartford Casualty Ins. Co.,* 111 Cal.App.4[th] at 710-711, the case relied upon by the court in *Muscle Improvement, Inc.,* 437 B.R. at 394-396. As the court in *Jessen v. Hartford Casualty Ins. Co*., stated, "when ruling upon a disqualification motion in a successive representation case, the trial court must first identify where the attorney's former representation placed the attorney with respect to the prior client. If the court determines that the placement was direct and personal, this facet of [*H.F. Ahmanson & Co. v. Salomon Brothers, Inc., supra]* is settled as a matter of law in favor of disqualification and the only remaining question is whether there is a connection between the two successive representations, a study that may not include an 'inquiry into the actual state of the lawyer's knowledge' acquired during the lawyers' representation of the former client." *Jessen v. Hartford Casualty Ins. Co.,* 111 Cal.App.4[th] at 710-711, *citing, H.F. Ahmanson & Co. v. Salomon Brothers, Inc.,* 229 Cal.App.3d at 1453. The Plan Agent has the sequence of analysis backwards in apparent reliance on *Muscle Improvement*, but that is erroneous because it is not consistent with the California case law as set forth in *Jessen*. Moreover, in the situation where the relationship between the attorney and the former client is indirect, first analyzing the question of whether there is a substantial relationship between the subject matters of the prior and current representations is heavily biased in favor of disqualification because if it is determined that there is such a relationship between the subject matters, then the "irrebuttable" presumption arises that the material confidential information was disclosed arises, favoring disqualification, but then afterwards, the

relationship between the attorney and the former client needs to be analyzed as either direct or indirect in order to determine whether the presumption arises to begin with, which makes the disqualification analysis more complex and more vulnerable to bias than it should be.  In this court's view, it is simpler and more straightforward to consider first in the disqualification analysis whether there was a direct or indirect relationship between the attorney and the former client as set forth in *Jessen.*

Because the relationship between the Law Firm and the former client, Debtor, was not direct in the first consultation since the Law Firm did not provide Debtor with legal advice or services, the court determines that the presumption that the Law Firm received confidential information material in the current representation in the former representation regarding the landlord-tenant litigation involving Debtor's landlord, AERC, does not apply. *Jessen v. Hartford Casualty Ins. Co.,* 111 Cal.App.4th at 710-711, *citing, H.F. Ahmanson & Co. v. Salomon Brothers, Inc.,* 229 Cal.App.3d at 1453.  The court must now determine whether the Plan Agent as the party seeking disqualification has made an adequate showing that confidential information was disclosed to the Law Firm relevant to the current representation in the former representation involving the AERC dispute or whether it is reasonable to infer that there was such disclosure, specifically whether as part of its consultation with Debtor through Chrismas, such disclosure was made of confidential information relevant to the current representation of the new client, 400 South La Brea, LLC, a defendant in litigation in this bankruptcy case in which the Plan Agent as the representative of Debtor's post-confirmation bankruptcy estate is the party plaintiff. *Id.*  If the court determines that the Plan Agent has made such an adequate showing, the court must determine whether there is a connection, i.e., a substantial relationship, between the two representations.  *Id.*

In the litigation between the Plan Agent and 400 S. La Brea, LLC, as set forth in the Plan Agent's operative complaint, the Fourth Amended Complaint in an adversary proceeding in this bankruptcy case, the Plan Agent alleges *inter alia* that Debtor's insider, Chrismas, caused Debtor to divert funds of Debtor's bankruptcy estate to 400 S. La Brea, LLC, to pay rent on a lease of real property owned by 400 S. La Brea, LLC, housing not Debtor, but the Ace Museum, an entity controlled by Chrismas, and that the diverted funds are avoidable fraudulent, preferential and postpetition transfers recoverable from 400 S. La Brea, LLC.  *See* 11 U.S.C. §§ 544, 547, 548(a)(1)(A) and (B), 549, 550 and

18

551; California Civil Code §§ 3439.01(a)(1) and (2) and 3439.05.  Regarding the Law Firm's first consultation with the former client, Debtor, the court has examined the evidence submitted by the parties in their respective papers, and the court determines that the evidence does not establish the attorneys of the Law Firm who had contact with Debtor through Chrismas and Debtor's general bankruptcy counsel, LNBYB, in the first consultation regarding the landlord-tenant and related bankruptcy law dispute with Debtor's landlord had actual knowledge of material confidential information relating to the current representation.  As to the first consultation, the Plan Agent's evidence consists of declarations from attorneys at LNBYB, Beth Ann R. Young and Kurt Ramlo, Debtor's general bankruptcy counsel, produced communications from the Law Firm consisting of 7 pages of email strings, a 13-page draft employment agreement from the Law Firm to Debtor relating to the first consultation, and a written conflicts of interest waiver signed by Chrismas.  (The Plan Agent in the motion refers to 709 pages of documents in the Produced Communications produced by the Law Firm in response to the Plan Agent's subpoena, but only offers about 30 pages from these 709 pages, a small fraction of the total pages, in support of the motion.  *See* Richardson Declaration at 1-2 and exhibits attached thereto.)

The Plan Agent in its moving papers does not state what actual confidential information was disclosed to the Law Firm from the first consultation.  As indicated by the moving papers, the Plan Agent relied upon the presumption that confidential information was disclosed to the Law Firm, which as just discussed, is inapplicable here because the relationship between the Law Firm as the attorneys and the Debtor as the former client is not direct because the Law Firm did not render any legal advice or services to Debtor.  Moreover, the Plan Agent in his moving papers has stated that he may not know all of the "confidential" information disclosed to the Law Firm by Chrismas or LNBYB for Debtor.

The declarations from LNBYB attorneys Young and Ramlo indicated that they participated in at least one telephone conversation in June 2015 with Ronald Rus, an attorney at the Law Firm, regarding Debtor's pending appeals regarding Debtor's landlord, AERC, and the legal and factual issues regarding Debtor's position on the appeals, but these declarations did not sufficiently show that any material confidential information relating to the Law Firm's current representation regarding the fraudulent, preferential and postpetition transfer claims against 400 S. La Brea, LLC, was disclosed

in such telephone conversation.  The several emails in the 7-page email strings in April and August 2015 refer to conversations between Attorney Rus with the Law Firm, and Chrismas regarding potential representation of Ace Gallery New York (i.e., Debtor) by the Law Firm on the appeals in the landlord-tenant and related bankruptcy disputes with Debtor's landlord, including an email comment by Rus to a lawyer at another law firm, who apparently referred Chrismas to the Law Firm, stating that he (Rus) had "lengthy conversations" with Chrismas regarding the landlord-tenant dispute.  But this evidence does not show that Rus or the Law Firm had actual knowledge of material confidential information from the Debtor in the first consultation relating to the current representation regarding the fraudulent, preferential and post-petition transfer claims against 400 S. La Brea, LLC, relating to funds allegedly diverted from Debtor to pay for rent on leased premises on a different property leased by Ace Museum, not Debtor.  The conflicts waiver signed by Chrismas apparently at the request of the Law Firm does not on its face suggest that the Law Firm had confidential information material to the second representation, and while it might be considered as such because the logic goes that if it was needed, it would not have been requested and obtained, it might equally considered that the Law Firm was being prudent to request and obtain such a waiver to avoid any doubt of any conflict of interest.  The evidence is insufficient for the court to find that the Law Firm actually received material confidential information relevant to the current representation or for it to reasonably infer that the Law Firm had material confidential information from the Debtor in the first consultation relating to the current representation because there is no discernable relationship between the prior representation involving the landlord-tenant dispute with Debtor's landlord at Debtor's business premises and the current representation involving alleged diversion of Debtor's funds to a different landlord of a different property leased by an entity, not Debtor, so that such information would have been relevant to the second representation.

        Moreover, the Plan Agent has not shown that there is a substantial relationship between the subject matters of these representations which are different and unrelated because they involve different landlords, different properties, and different factual and legal issues, and as discussed above, the Plan Agent has not shown what material confidential information from the first consultation on landlord-tenant issues regarding different property was disclosed to the Law Firm.  The first representation was a

consultation involving the landlord-tenant and related bankruptcy dispute with Debtor's landlord, specifically involving the issue of whether Debtor could assume its lease with the landlord under the Bankruptcy Code after Debtor breached the lease prepetition and the landlord terminated the lease.  The second representation involved the fraudulent, preferential and post-petition transfer claims of Debtor's bankruptcy estate from the alleged diversion of Debtor's funds allegedly by Chrismas to 400 S. La Brea, LLC, the landlord of the premises leased by Ace Museum, another Chrismas controlled entity, but not Debtor.  In the first representation, the nature and extent of the Law Firm's involvement was minimal because the Law Firm was only consulted by Debtor about potential representation, but was not retained, and there is no evidence that the Law Firm rendered any advice or services to Debtor.  The declarations of Attorneys Rus and Castaldi that the consultation discussions were preliminary, only regarded potential representation and was terminated because the Law Firm determined that it could not accept the engagement due to conflict of interest are uncontroverted.  The Plan Agent has not satisfactorily explained how any confidential information relating to the landlord-tenant dispute in the first representation would be material to the fraudulent, preferential and postpetition transfer claims against a different landlord for a different property, involving different factual and legal issues, to support a "substantial relationship" to disqualify the Law Firm from taking the second representation of 400 South La Brea, LLC.  Based on the foregoing analysis, the court determines that the Law Firm's first consultation with Debtor does not provide a basis for disqualification from representation of 400 S. La Brea, LLC, in this case.

On the second occasion or consultation in December 2015, Debtor through Chrismas consulted the Law Firm about potential representation of Debtor as its general bankruptcy counsel to replace the existing counsel, Levene Neale Bender Yoo & Brill, LLP (LNBYB).  Ultimately, Debtor did not retain the Law Firm.  Again, because as discussed previously, there is no evidence that the Law Firm provided Debtor with legal advice or services in the first consultation, there was no direct relationship between the attorneys, the Law Firm, and the former client, Debtor, to raise the presumption that material confidential information passed to the Law Firm.  Also, again in situations like this "[w]here preliminary consultation with a potential client does not result in the attorney's formal retention, disqualification is appropriate only where the putative client

can show the consultation 'resulted in disclosure of confidential information or that it would be reasonable to infer such disclosure.'"   Tuft and Peck, *Rutter Group California Practice Guide: Professional Responsibility,* ¶ 4:168, *citing and quoting, Med-Trans Corp, Inc. v. City of California City,* 156 Cal.App.4[th] at 667, 68 Cal.Rptr.3d at 26; and *Marriage of Zimmerman,* 16 Cal.App.4[th] 556, 564-565, 20 Cal.Rptr.2d 132, 137-138 (1993).

Because the relationship between the Law Firm and the former client, Debtor, was not direct in the second consultation since the Law Firm did not provide Debtor with legal advice or services, the court determines that the presumption that the Law Firm received confidential information material in the current representation in the former representation regarding the potential representation of Debtor as its general bankruptcy counsel does not apply.  *Jessen v. Hartford Casualty Ins. Co.,* 111 Cal.App.4[th] at 710-711, *citing, H.F. Ahmanson & Co. v. Salomon Brothers, Inc.,* 229 Cal.App.3d at 1453.  The court must now determine whether the Plan Agent as the party seeking disqualification has made an adequate showing that confidential information was disclosed to the Law Firm relevant to the current representation in the former representation involving the potential representation as Debtor's general bankruptcy counsel or whether it is reasonable to infer that there was such disclosure, specifically whether as part of its consultation with Debtor through Chrismas and LNBYB, Debtor's existing general bankruptcy counsel, such disclosure was made of confidential information relevant to the current representation of the new client, 400 South La Brea, LLC, a defendant in litigation in this bankruptcy case in which the Plan Agent as the representative of Debtor's post-confirmation bankruptcy estate is the party plaintiff.  *Id.*  If the court determines that the Plan Agent has made such an adequate showing, the court must determine whether there is a connection, i.e., a substantial relationship, between the two representations.  *Id.*

The context of the second consultation is important to consider because in December 2015 when the consultation occurred, Debtor and the Creditors' Committee were already involved in the contested plan confirmation dispute in which Debtor and the Committee had proposed competing plans even before the first consultation in April 2015.  By May 2015, Debtor and Chrismas filed objections to the Committee's plan, and the Committee had initiated the avoidable fraudulent, preferential and post-petition transfer litigation against Chrismas and his controlled entities, which is the subject of the second representation.  *See* Amended Complaint, Docket Number 11, Adv. No. 2:14-ap-

01771 RK, filed on January 22, 2015 (Committee's amended complaint against Ace Museum and Chrismas).  By virtue of the confirmed plan of reorganization in this case, which was proposed by the Committee over Debtor's objection, the Plan Agent is the successor-in-interest to Debtor as the administrator of the bankruptcy estate, and it is on the basis of this relationship, the Plan Agent asserts that it is the putative client from the initial representation.  The Plan Agent is the successor-in-interest to the Committee in prosecuting the litigation in the second representation against Chrismas and 400 S. La Brea, LLC, which was added as a party defendant, a year after the second consultation.  However, until the Committee's plan was confirmed, which ousted Chrismas from management of Debtor's estate, Chrismas was the representative of the estate and had control and supervision of Debtor's counsel, then, LNBYB.  Despite some settlement negotiations between Debtor and Chrismas on one hand and the Committee on the other hand, these parties had different and adverse interests at the time of the Law Firm's consultations with Debtor.  In the litigation between the Plan Agent and 400 S. La Brea, LLC, as set forth in the Plan Agent's operative complaint, the Fourth Amended Complaint in an adversary proceeding in this bankruptcy case, the Plan Agent alleges *inter alia* that Debtor's insider, Chrismas, caused Debtor to divert funds of Debtor's bankruptcy estate to 400 S. La Brea, LLC, to pay rent on a lease of real property owned by 400 S. La Brea, LLC, housing the Ace Museum, an entity controlled by Chrismas, and that the diverted funds are avoidable fraudulent, preferential and postpetition transfers recoverable from 400 S. La Brea, LLC.

Regarding the second consultation, the court has examined the evidence submitted by the parties in the respective papers, and the evidence does not establish that the Plan Agent has made an adequate showing that material confidential information was disclosed to the Law Firm relevant to the current representation in the former representation involving the potential representation as Debtor's general bankruptcy counsel or whether it is reasonable to infer that there was such disclosure.  The Plan Agent in its moving papers does not state what actual material confidential information was disclosed to the Law Firm from the second consultation.  As indicated by the moving papers, the Plan Agent had relied upon the presumption that there was confidential information disclosed to the Law Firm, which is inapplicable here because the relationship between the Law Firm as the attorneys and the Debtor as the former client is

not direct because the Law Firm did not render any legal advice or services to Debtor. Moreover, the Plan Agent in his moving papers has stated that he may not know all of the "confidential" information disclosed to the Law Firm by Chrismas or LNBYB for Debtor.

As to the second consultation, the Plan Agent's evidence that the material confidential information relevant to the current representation was disclosed to the Law Firm in the former representation in the second consultation or that it is reasonable to infer such disclosure consists of declarations from two attorneys, Beth Ann R. Young and Kurt Ramlo, of LNBYB, Debtor's former general bankruptcy counsel, the produced communications from the Law Firm consisting of the same 7 pages of email strings as for the first consultation, the same 13-page draft employment agreement from the law firm to Debtor relating to the first consultation, and the same written conflicts of interest waiver signed by Chrismas.

Some of this evidence was previously discussed concerning the first consultation. The several emails in the 7-page email strings refer to conversations between Ronald Rus, an attorney at the Law Firm, and Chrismas regarding potential representation of Ace Gallery New York (i.e., Debtor) by the Law Firm on the appeals in the landlord-tenant and related bankruptcy disputes with Debtor's landlord, including an email comment by Rus to a lawyer at another law firm, who apparently referred Chrismas to the Law Firm, stating that he (Rus) had "lengthy conversations" with Chrismas regarding the landlord-tenant dispute. But this email evidence does not show that Castaldi, Rus or the Law Firm had actual knowledge of material confidential information relating to the current representation regarding the fraudulent transfer and postpetition claims against 400 S. La Brea, LLC, relating to taking over as general bankruptcy counsel for Debtor. As stated previously, the conflicts waiver signed by Chrismas apparently at the request of the law firm does not on its face suggest that the law firm had confidential information material to the second representation, and while it might be considered as such because the logic goes that if it was needed, it would not have been requested and obtained, it might equally be considered that the Law Firm was being prudent to request and obtain such a waiver to avoid any doubt of any conflict of interest.

The primary evidence in support of the Plan Agent's argument that material confidential information was actually disclosed to the Law Firm in the second consultation or that it is reasonable to infer was such disclosure is set forth in the declarations of

Attorneys Beth Ann R. Young and Kurt Ramlo with LNBYB, the law firm that was Debtor's existing general bankruptcy counsel.  Attorneys Young and Ramlo stated that they were told that the Law Firm was replacing their firm, LNBYB, as general bankruptcy counsel for Debtor, and based on this understanding, provided information to the Law Firm on behalf of Debtor for the transition of representation of Debtor from LNBYB to the Law Firm.  Of the two declarations of Ms. Young and Mr. Ramlo, Ms. Young's declaration presents the more serious concern since she stated that during her telephone conversations on December 4 and 7, 2015 with Ms. Castaldi of the Law Firm in the former representation, the second consultation regarding potential representation as replacement general bankruptcy counsel for Debtor, that she and Ms. Castaldi "discussed the critical issues then pending in the Debtor's Bankruptcy Case and imminent dates and deadlines, including the appeal of the litigation with the AERC landlord as well as the various positions of other interested parties in the Bankruptcy Case, the adversary proceedings that the Debtor and Committee were litigating and the status of the then pending settlement proposal from Eric Wilson for a consensual joint plan of reorganization and related matters" and that "[a]lthough I am not in a position to reveal the specific details about confidential information that was exchanged in those telephone calls with Ms. Castaldi without risking a breach or waiver of the Debtor's confidential information, my recollection of these calls is that we engaged in substantial discussions including my providing intimate details regarding the Debtor's case, the Debtor's litigation with AERC, the Debtor's valuable purchase options on multiple real estate parcels, Ace Museum's obligations owing to the Debtor, the pending plan confirmation proceedings, and other then-ongoing litigation, all of which involved the dissemination of information pertaining to overall case strategy, the Debtor's finances, and other such information, which I would not have disclosed to Ms. Castaldi but for the belief that Ms. Castaldi, Mr. Rus and BrownRudnick would be stepping in as Debtor's counsel in Debtor's Bankruptcy Case." Young Declaration at 2-3.

The problem with these assertions is that the assertions do not state what material confidential information was actually disclosed.  As stated by Tuft and Peck in *Rutter Group California Practice Guide: Professional Responsibility,* ¶ 4:178, "[w]hile the party seeking disqualification need not disclose the actual confidential information, there must be some showing of the nature of the communications or a statement of how they relate

to the current representation." *Id., citing, Elliott v. McFarland Unified School District,* 165 Cal.App.3d 562, 572, 211 Cal.Rptr. 802, 808 (1985); *Smith, Smith & Kring v. Superior Court (Oliver),* 60 Cal.App.4th 573, 578, 70 Cal.App.2d 507, 509 (1997); and *Costello v. Buckley,* 245 Cal.App.4th 748, 756, 199 Cal.Rptr.3d 891, 897 (2016).  Conclusory assertions are insufficient to support disqualification of attorneys based on a prior representation.  *Id., citing, Elliott v. McFarland Unified School District,* 165 Cal.App.3d at 572, 70 Cal.Rptr. at 808.  As stated previously, the California Court of Appeal in *Marriage of Zimmerman* considered whether confidential information was or was not disclosed during an initial consultation and determined that confidential information was not disclosed based on the following factors: (1) the attorney did not represent the putative client other than in the most preliminary, insubstantial and peripheral manner;  (2) the attorney performed no work for the putative client; (3) although the attorney may have offered initial impressions, the attorney was not called upon to formulate a legal strategy; (4) no actual confidential disclosures were claimed by the putative client; and (5) the nature of the relationship between attorney and the putative client was such that no confidential information material to the current dispute would normally have been imparted to the attorney.  *Marriage of Zimmerman,* 16 Cal.App.4th at 564-565, 20 Cal.Rptr.2d at 137-138, *cited in,* Tuft and Peck, *Rutter Group California Practice Guide: Professional Responsibility,* ¶ 4:169, *also citing, Med-Trans Corp., Inc. v. City of California City,* 156 Cal.App.4th at 667 and n.7, 68 Cal.Rptr.3d at 26 and n.7.  As to a number of the subject matters described by Ms. Young in her communications with Ms. Castaldi of the Law Firm, the Debtor's litigation with its landlord, AERC, the Debtor's valuable purchase options on multiple real estate parcels, the pending plan confirmation proceedings and the pending settlement proposal of Creditor Eric Wilson regarding a possible joint plan of reorganization, the evidence of the *Zimmerman* factors indicates that (1) there is no evidence that the Law Firm represented Debtor, the putative client, other than in the most preliminary, insubstantial and peripheral manner; (2) there is no evidence that the Law Firm performed no work for Debtor, the putative client; (3) there is no evidence that the Law Firm was called upon to formulate a legal strategy for Debtor; (4) the Plan Agent does not claim that actual confidential disclosures to the Law Firm were made on behalf of Debtor, the putative client, since the Plan Agent did not identify any such actual disclosures in his moving and reply papers; and (5) the nature of the

relationship between the Law Firm and the putative client, Debtor, was such that no confidential information material to the current dispute would normally have imparted to the Law Firm because the subject matters of the prior consultation, the AERC landlord-tenant dispute, the Debtor's real estate purchase options, the plan confirmation proceedings and Creditor Wilson's settlement proposal for a joint plan, have no bearing or materiality to the Plan Agent's fraudulent, preferential and postpetition transfer claims against 400 S. La Brea, LLC, and other parties, including Chrismas and his controlled entities, such as Ace Museum, relating to the alleged diversion of Debtor's assets to Chrismas, Ace Museum and 400 South La Brea, LLC.

As to a number of the other subject matters described by Ms. Young in her communications with Ms. Castaldi of the Law Firm, "the critical issues then pending in the Debtor's Bankruptcy Case and imminent dates and deadlines, including . . . the various positions of other interested parties in the Bankruptcy Case," and "intimate details regarding the Debtor's case . . . Ace Museum's obligations owing to the Debtor . . . and other then-ongoing litigation," the evidence of the *Zimmerman* factors indicates as to the first four factors that (1) there is no evidence that the Law Firm represented Debtor, the putative client, other than in the most preliminary, insubstantial and peripheral manner; (2) there is no evidence that the Law Firm performed no work for Debtor, the putative client; (3) there is no evidence that the Law Firm was called upon to formulate a legal strategy for Debtor; and (4) the Plan Agent does not claim that actual confidential disclosures to the Law Firm were made on behalf of Debtor, the putative client, since the Plan Agent did not identify any such actual disclosures in his moving and reply papers.

The fifth *Zimmerman* factor as to some of these matters perhaps presents a closer case for disqualification in that the nature of the relationship between the Law Firm and the putative client, Debtor, was such that it may have been possible confidential information material to the current dispute would normally have imparted to the Law Firm because the subject matters of the prior consultation, "the critical issues then pending in the Debtor's Bankruptcy Case and imminent dates and deadlines, including . . . the various positions of other interested parties in the Bankruptcy Case," and "intimate details regarding the Debtor's case . . . and other then-ongoing litigation", and "overall case strategy," theoretically could have some bearing or materiality to the Plan Agent's fraudulent, preferential and postpetition transfer claims against 400 S. La Brea, LLC, and

other parties, including Chrismas and his controlled entities, such as Ace Museum, relating to the diversion of Debtor's assets to Chrismas, Ace Museum and 400 S. La Brea, LLC, but the court determines that the wording of these matters ("critical issues then pending in Debtor's bankruptcy case," "imminent dates and deadlines," "the various positions of other interested parties in the Bankruptcy Case," and "intimate details regarding the Debtor's case and other then on-going litigation") is too generalized and conclusory, and thus meaningless because there is no way to tell if there is any material relationship to the subject matter of the current representation relating to the Plan Agent's fraudulent, preferential and postpetition transfer claims based on alleged diversion of Debtor's assets to 400 S. La Brea, LLC, and other parties. Ms. Young does not identify the confidential information that she communicated to Ms. Castaldi of the Law Firm based on the attorney's duty of confidentiality to Debtor, her former client, and the Plan Agent does not identify the confidential information that Ms. Young communicated to Ms. Castaldi either because he is relying on the presumption of material confidential information disclosure which does not exist here or he does not know what the information is.

The court in *Jessen* identified specific examples of information that the attorney had in the prior representation that was confidential and material to the current representation of the new client with interests adverse to the former client. *Jessen v. Hartford Casualty Ins. Co.,* 111 Cal.App.4th at 713, *citing Morrison Knudsen Corp. v. Hancock, Rothert & Bunshoft*, 69 Cal.App.4th at 236-237 ("[confidential information includes information concerning similar matters which would be useful to the current client in pressing its current claim, including the 'identity of all the key decision makers,' the 'litigation philosophy,' and the 'organization structure' of the past client, the 'financial impact of pending … claims' against the client, and the existence and amount of insurance coverage]"); *William H. Raley Co. v. Superior Court*, 149 Cal.App.3d 1042, 1047 (1983)("[confidential information includes information received by the attorney from a third party which ' "will be, or may appear to the person or entity [from whom the information was acquired] to be, useful in the attorney's representation in an action on behalf of the client" ' ]"); *Kaselaan & D'Angelo Assocs., Inc. v. D'Angelo*, 144 F.R.D. 235, 244 (D.N.J. 1992)("[present unfair competition claim and former 'employment matters' shared common involvement of former client's employment policies and procedures,

28

hiring and termination criteria, and normal course of action in prosecuting and defending employment claims]"); *Gray v. Commercial Union Ins. Co.*, 191 N.J. Super. 590, 468 A.2d 721, 723-726 (1983)("[attorney who had represented former client in personal injury actions was disqualified from representing new client in action for breach of employment contract against former client; though actions did not involve same legal issues or facts, both representations involved operation of former client's claims department].").  We do not have that situation here because the Plan Agent does not apparently know what that information is, and Ms. Young, the attorney for Debtor, is not saying due to her duty of confidentiality.  One would think that the Plan Agent as the putative client, the successor-in-interest to Debtor, would have asked Ms. Young to tell him so he could make an adequate showing to the court, but that was not evidently done here.

The fifth *Zimmerman* factor as to two particular matters perhaps presents the closest case for disqualification in that the nature of the relationship between the Law Firm and the putative client, Debtor, was such that it may have been possible confidential information material to the current dispute would normally have imparted to the Law Firm because the subject matters of the prior consultation, "intimate details regarding the Debtor's case . . . Ace Museum's obligations owing to the Debtor . . . which involved . . . the Debtor's finances" theoretically could have some bearing or materiality to the Plan Agent's fraudulent, preferential and postpetition transfer claims against 400 S. La Brea, LLC, and other parties, including Chrismas and his controlled entities, such as Ace Museum, relating to the diversion of Debtor's assets to Chrismas, Ace Museum and 400 S. La Brea, LLC, but the court determines that the Plan Agent has not made an adequate showing that information that was confidential and that was material to this dispute was actually disclosed to the Law Firm or that it is reasonable to infer that there was such disclosure.  As stated previously, Ms. Young does not identify the confidential information that she communicated to Ms. Castaldi of the Law Firm based on the attorney's duty of confidentiality to Debtor, her former client, and the Plan Agent does not identify the confidential information that Ms. Young communicated to Ms. Castaldi either because he is relying on the presumption of material confidential information disclosure which does not exist here or he does not know what the information is.  The description of the information that Ms. Young provided to Ms. Castaldi of the Law Firm as confidential is general and conclusory and lacks an adequate description in order to assess whether it

was material to the current representation regarding the fraudulent, preferential and postpetition transfer claims that the Plan Agent has against the new client, 400 S. La Brea, LLC, and other parties, including Chrismas and Ace Museum.  The court is hard-pressed to guess how such information is either confidential to Debtor or material because the fraudulent, preferential and postpetition transfer claims as alleged in the Plan Agent's Fourth Amended Complaint regarding the alleged diversion of Debtor's assets were either allegedly made prebankruptcy by check or wire from Debtor's bank accounts, which are not confidential since the transactions were made through a bank, an outside third party, or postbankruptcy allegedly made off Debtor's books by Chrismas invoicing Debtor's customers with instructions to pay his controlled entity, Ace New York, though its bank accounts rather than Debtor's bank accounts.  Fourth Amended Complaint, Adv. No. 2:15-ap-01679 RK, at 11-38.  While the prepetition transfers involved Debtor's finances, it is hard to see that this information is confidential since it involves third party bank transactions.  As to the postpetition transactions, it is hard to see how the transfers were confidential involving Debtor's finances since the transfers were "off the books" as far as Debtor was concerned.  Moreover, as a bankruptcy debtor, Debtor's finances postpetition were subject to this court's supervision under the Bankruptcy Code, Federal Rules of Bankruptcy Procedure, and the court's local rules.  "[T]he debtor is required in the schedules and statement of affairs to make numerous written disclosures under penalty of perjury in connection with the debtor's individual and/or business finances.  In addition, Debtor was required to attend a 11 U.S.C. § 341(a) meeting and submit under oath to examination by the trustee and the debtor's creditors, and creditors have the ability to compel the debtor's attendance at a [Federal Rule of Bankruptcy Procedure] 2004 examination, also made under oath."  March, Ahart, & Shapiro, *Rutter Group California Practice Guide: Bankruptcy*, ¶ 2:115.1 (online ed., December 2017 update); *see also* Federal Rules of Bankruptcy Procedure 1007 and 1008.  Debtor in filing its Chapter 11 bankruptcy petition was required to file schedules of assets and liabilities, a schedule of current income and expenditures, a schedule of executory contracts and unexpired leases and a statement of financial affairs, including disclosure of certain prepetition asset transfers.  *Id.*  As a bankruptcy debtor in a Chapter 11 bankruptcy case, Debtor was also required to file with the court monthly operating reports disclosing all receipts and disbursements for the previous month, a profit and loss

statement and a balance sheet.  11 U.S.C. §§ 704(a)(8), 1106 and 1108; Local Bankruptcy Rule 2015-2(b)(1)(Debtor must "file with the court a copy of each monthly interim statement and operating reporting submitted to the United States trustee from the date the chapter 11 case is commenced until the date a plan is confirmed or the case is dismissed or converted to another chapter under title 11."). Accordingly, because Debtor is required to provide extensive information about its finances in this case, any information about Debtor's finances that the Law Firm may have received from Ms. Young would likely not be confidential because it was already disclosed to the court or is subject to disclosure by law.

The declaration of Attorney Ramlo stated that on December 4, 2015, he received the email from Chrismas notifying him that the Debtor decided to terminate LNBYB's services as counsel for Debtor, that he wanted a "smooth parting" and that Attorney Ronald Rus of the Law Firm would be calling him to discuss the transition, that he prepared substitutions of counsel and forwarded them to Attorney Castaldi at the Law Firm and that he prepared and sent emails to Ms. Castaldi on transition issues.  Ramlo Declaration at 1.  Mr. Ramlo also stated that he researched and drafted a "substantial follow-up email to Ms. Castaldi regarding 'TRANSITION OF CASE TO NEW BANKRUPTCY COUNSEL' that involved 3.4 hours of research and drafting," and a further email "RE APPEAL TASKS AND DEADLINES," as confirmed by my time entries for December 2015 that appear in LNBYB's final fee application, a true and accurate copy of which is Exhibit "A" to the Young Decl.  *See* Exhibit "A" at p. 7. Ramlo Declaration at 1-2.  The remaining portion of the Ramlo Declaration relates to his discussions with Chrismas addressed above regarding the first consultation of the Law Firm with Debtor.  *Id.*

The Ramlo Declaration is generally consistent with the Young Declaration, but by itself does not provide sufficient detail that the information he provided to the Law Firm to show was material confidential information relevant to the Law Firm's representation of 400 S. La Brea, LLC.  The Ramlo Declaration refers to "APPEAL TASKS AND DEADLINES,"  which relate to the pending appeals on the landlord-tenant dispute with Debtor's landlord, AERC, unrelated to the second representation relating to the alleged fraudulent, preferential and postpetition transfers, and the declaration refers to "transition issues," which is consistent with the Young Declaration, but by itself is insufficient to

show that the information he provided to the Law Firm in the former representation of Debtor in the second consultation was material and confidential relating to the Law Firm's current representation of 400 S. La Brea, LLC.

In its written opposition to the motion, the Law Firm argues that "because the Debtor and the Committee have been adversaries throughout the course of this bankruptcy case—including with respect to the claims asserted against 400 SLB—it would have been impossible for any confidential information to have been disclosed to Brown Rudnick **by the Debtor** that could be material to the prosecution or defense of an avoidance action that was later commenced **by the Committee,** and that is now being prosecuted by the Plan Agent."  Opposition at 2-3 (emphasis in original).  In support of this argument that it was impossible for the Law Firm to have received material confidential information relevant to its current representation of 400 S. La Brea, LLC, on the Plan Agent's avoidance claims, it pointed out that the avoidance claims were originally brought by the Committee and not by the Debtor since the claims are against Debtor's insiders, including Chrismas, and that the Law Firm would not have learned confidential information from Debtor or its counsel relevant to the Plan Agent's claims as he is now prosecuting as the successor to the Committee and that as represented to the court in this case, neither the Committee nor the Plan Agent was aware of any claims against 400 S. La  Brea, LLC, until after plan confirmation in March 2016, which was after the Law Firm's second consultation with Debtor and its counsel in December 2015. *Id.*  The court cannot say whether it would have been "impossible" for the Law Firm to have received confidential information during the second consultation with Debtor in December 2015, but it seems unlikely, given the state of the litigation at that time with the Committee and Debtor and its insiders, including Chrismas, having adverse positions on plan confirmation and the avoidance claims, and the circumstances identified by the Law Firm in its opposition.  LNBYB as Debtor's preconfirmation bankruptcy counsel was aligned with Debtor and its insiders, Chrismas, rather than the Committee which was proposing a reorganization plan competing with Debtor and the insiders and which was pursuing the avoidance claims against the insiders and their transferees, Ace Museum and 400 S. La Brea, LLC.  The court finds it hard to identify what material confidential information would have been communicated by Debtor and its insiders during the Law Firm's prior consultations with Debtor which would be confidential and material to its

current representation of 400 S. La Brea, LLC, an alleged transferee aligned with Debtor's insiders in defense of the Committee's, now the Plan Agent's, avoidance claims. The court acknowledges that the Plan Agent is the successor to Debtor by the operation of the confirmed plan, but he is also successor to the Committee in prosecuting the avoidance claims.  In any event, as discussed above, the court has considered the particular circumstances of this case in making a pragmatic decision whether to determine the circumstances here should disqualify the Law Firm, and while the court is highly sensitive to the appearance or presence of impropriety, the court determines that the Plan Agent has not sufficiently shown that the Law Firm received material confidential information from its second consultation with Debtor relevant to the current representation of 400 S. La Brea, LLC, on the fraudulent, preferential and post-petition transfer claims, or that it would be reasonable to infer such.  *See Tivoli, LLC v. Targetti Sankey S.P.A.,* 2015 WL 12669882, slip op. at *7.

Based on the foregoing, the court determines that the Plan Agent has not shown with sufficient evidence that the court can reasonably infer that the Law Firm had material confidential information relating to the current representation because there is no discernable relationship between the prior representation involving the subject matters described in the Young and Ramlo Declarations involving various litigation disputes of Debtor regarding the landlord-tenant dispute with Debtor's landlord, AERC, at Debtor's business premises, plan confirmation proceedings, Debtor's real estate options and the evidence does not support a reasonable inference that the Law Firm obtained material confidential information regarding Ace Museum's obligations to Debtor, and Debtor's bankruptcy case in general relevant to the current representation involving alleged diversion of Debtor's funds to 400 S. La Brea, LLC, and other parties.  Based on the foregoing analysis, the court determines that the Law Firm's second consultation with Debtor does not provide a basis for disqualification from representation of 400 S. La Brea, LLC, in this case.

*///*

*///*

*///*

33

Accordingly, the Plan Agent's motion to disqualify the Law Firm in this case should be denied.  A separate order on the motion consistent with this memorandum decision will be entered concurrently herewith.

###

Date: June 18, 2018

_____

Robert Kwan
United States Bankruptcy Judge